UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NEW JERSEY CARPENTERS VACATION FUND,  :
On Behalf of Itself and All Others Similarly Situated, :
                                Plaintiffs,     :        08cv5093(HB)
                                           :        **OPINION &**
          -against-                         :        **ORDER**
                                           :
HARBORVIEW MORTGAGE LOAN TRUST 2006-4, :
HARBORVIEW MORTGAGE LOAN TRUST 2006-5, :
HARBORVIEW MORTGAGE LOAN TRUST 2006-5, :
THE ROYAL BANK OF SCOTLAND GROUP, plc,  :
GREENWICH CAPITAL FINANCIAL PRODUCTS, :
INC., ROBERT J. McGINNIS, CAROL P. MATHIS,  :
JOSEPH  N. WALSH, III, JOHN C. ANDERSON,    :
JAMES C. ESPOSITO, FITCH RATINGS, MOODY'S :
INVESTORS SERVICE, INC., and THE                      :
McGRAW-HILL COMPANIES, INC.,                           :
                                             :
                              **Defendants.**            :
------------------------------------------------------------------------X
**Hon. HAROLD BAER, JR., United States District Judge:**

      This putative class action, which is rooted in the mortgage-backed securities crisis, addresses an issue of first impression in this Circuit—whether the removal provision of the Class Action Fairness Act of 2005, Pub. L. 109-2, § 4(a), 119 Stat. 9, Feb. 18, 2005 ("CAFA"), trumps the anti-removal provision of Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77a *et seq*. Plaintiffs filed this suit in New York State Supreme Court for violation of Sections 11, 12, and 15 of the Securities Act of 1933, 15 U.S.C. § 77a *et seq*., in connection with issuance of HarborView Mortgage Loan Pass-Through Certificates ("Bonds"), alleging misrepresentations in the Prospectuses and Registration Statements of these bonds.  Defendants—HarborView, the issuer, as well as depositors, investment banks, credit rating agencies—removed the case to this Court, relying on CAFA's jurisdiction and removal provisions 28 U.S.C. §§ 1332(d)(2), 1453(b).

      Plaintiffs now move to remand the case back to State court, contending that it is the Plaintiffs' right to choose its forum as provided in the anti-removal provision of Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a).  Further, Plaintiffs cite the recent California District Court decision, affirmed by the 9th Circuit, *Luther v. Countrywide Home Loans*, 07cv8165, 2008 U.S. Dist. LEXIS 26534 (C.D. Cal. Feb. 28, 2008) *aff'd* 533 F.3d 1031 (9th Cir.

Jul. 16, 2008), which held that CAFA does not trump the anti-removal provision in § 22(a) of the 1933 Act.  A clear split in the Circuits is evidenced by recent holdings in this Circuit.  After a review of the decisions and the legislative history, I am constrained to follow, what at least in my view, comports more closely with the decisions in this Circuit and deny the motion.

## *I. Presumptions and Burden of Proof*

There is a strong presumption against removal jurisdiction and any removal statute is to be construed narrowly, "resolving any doubts against removability."  *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994).  The party seeking removal from State to federal court bears the burden of proving subject matter jurisdiction, but once proven, that burden shifts to the plaintiff to show that an exception to removal applies.  *Brook v. United Health*, 2007 WL 2827808 (S.D.N.Y. Sept. 27, 2007).

## *II. The Statutes in Issue*

On their face, the Securities Act of 1933's anti-removal provision and CAFA's removal provisions are in direct conflict with one another.  The following is a brief background of each statute and its purpose.

A. The 1933 Securities Act § 22(a) Anti-Removal Provision,  15 U.S.C § 77v:

The Securities Act of 1933 provides concurrent jurisdiction for securities cases arising under the Act meaning that a securities plaintiff may file its case in either State or federal court, and if filed in State court, it will not be removed to federal court.  15 U.S.C. § 77v(a).  This concurrent jurisdiction is set out in § 22(a) of the Securities Act of 1933 and reads in relevant part:

> Except as provided in section 77p(c) of this title [i.e. for class actions involving covered securities], no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

15 U.S.C. § 77v(a).  Removal jurisdiction in the federal system is established under 28 U.S.C. § 1441(a), which reads in relevant part:

> Except as otherwise provided by an Act of Congress, any civil case brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). The 1933 Act's anti-removal provision in § 22(a) overrides the general removal provision of § 1441(a) because while a federal court would ordinarily have original jurisdiction over a 1933 Act claim, § 22(a) provides that a defendant cannot remove a case if it was properly filed in State court. The 1933 Act's anti-removal provision was amended by the Securities Litigation Uniform Standards Act of 1998. Pub. L. 105-353, 112 Stat. 3227 ("SLUSA"). SLUSA amended § 22(a), the anti-removal provision, by carving out an exception for securities fraud class actions involving covered securities, i.e. securities sold on a national exchange. 15 U.S.C. §§ 77p(c), r(b), v(a).[1]

      Were I to simply rely on § 22(a) of the Securities Act of 1933, this case could not have been removed to this Court, because it does not involve "covered securities." But CAFA, a statute enacted in 2005, conflicts directly with the anti-removal provision of § 22(a) and allows for such a case as this to be removed to federal court.

B. The Class Action Fairness Act of 2005:

      *a. Original Federal Jurisdiction/Removal Statute:*

      CAFA expanded diversity jurisdiction by establishing original jurisdiction in the federal courts for certain class actions that are national or international in scope, 28 U.S.C. § 1332(d)(2); *Estate of Pew v. Cardarelli*, 527 F.3d 25 (2d Cir. 2008). Such cases are removable under 28 U.S.C. § 1453(b). CAFA ensures this expansion by a regime based upon minimal diversity and an aggregate amount in controversy in excess of $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). If a class action meets these minimal requirements, the federal court has original jurisdiction and if initiated in State court as this was, the action is removable. CAFA has a limited set of exceptions to original jurisdiction and removal—Home State, Local Controversy, and Securities and Corporate-governance-based lawsuits are excluded. 28 U.S.C. §§ 1332(d)(3)-(4), (9), (11), 1453(d). Thus, by its clear language, CAFA creates original jurisdiction for and removability of <u>all</u> class actions that meet the minimal requirements and do not fall under one of the limited exceptions.

---

[1] Congress amended the anti-removal provision with SLUSA in 1998 to ensure that cases involving covered securities class actions be heard in federal court in order to close the remaining loopholes left by the Private Securities Litigation Reform Act of 1995, Pub. L. 105-353, which had sought to stem the tide of private securities fraud securities actions in State rather than federal court. 15 U.S.C.§ 78a; *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107 (2d Cir. 2001).

*b. CAFA's Purpose:*

CAFA was enacted to restore the intent of the framers by providing for federal court consideration of interstate cases of national importance under diversity jurisdiction. Pub. L. No. 109-2, § 2(b)(2). There is no question that CAFA, legislation ten years in the making, is sweeping in scope. CAFA was created to expand federal jurisdiction in class actions to address the gaming of the system to avoid litigating in the federal courts and to provide stricter scrutiny of counsel, awards, and settlements. *See* CAFA, S. Rep. 109-14, February 28, 2005.[2] Senator Kohl, an original sponsor of the Senate bill, explained the rationale stating that "[w]hen a problem affects people in many States or involves a national problem, it is only fitting that the case be heard in Federal Court." Senator Herb Kohl, (D-WI), 151 Cong. Rec. S1086-01, S1099 (daily ed. Feb. 8, 2005).

Plaintiffs argue that CAFA's primary concern was coupon settlements. (Pl. R. Mem. 2.) But this is the tail wagging the dog. Congress's overriding concerns in enacting CAFA was to provide a federal forum for interstate class actions in order to ensure what Congress believed would be a fairer outcome for class members as well as defendants. S. Rep. 109-14 at 4-5.

The desire to reform the class action tool sprung from Congress's view that this otherwise helpful device had been co-opted by unscrupulous attorneys who aggressively forum shopped to "magnet" or "magic" State jurisdictions. Representative F. James Sensenbrenner, (R-WI), 151 Cong. Rec. H723-01, 726 (daily ed. Feb. 17, 2005). Senator Grassley put it this way:

> "In addition, the current class action rules are such that the majority of large nationwide class actions are allowed to proceed to State court when they are clearly the kinds of cases that should be decided in Federal Court. . . . "[C]ases involving large sums of money, citizens of many different States, and issues of national concern, have been restricted to State courts even though they have national consequences. Crafty lawyers game the system. Crafty lawyers file these large class actions in certain courts. They are shopping for magnet State courts, and they are able to keep them there."

Senator Charles Grassley, 151 Cong. Rec. S1086-01, S1103 (daily ed. Feb. 8, 2005). *See also* S. Rep. 109-14 at 10.

Congressional sponsors of the bill repeatedly emphasized the breadth of CAFA, while insisting that each exception must be construed narrowly, such that cases with nationwide impact

---

[2] The Second Circuit found the language in CAFA ambiguous, especially with respect to the exceptions in § 1332(d)(9), and thus, chose to read the wording together with the statutory context and legislative history. *Estate of Pew v. Caradelli*, 527 F.3d 25, 30 (2d Cir. 2008).

4

are to be heard in federal court. S. Rep. 109-14 at 45; Rep. Sensenbrenner, 151 Cong. Rec. H723-01, H727-H730 (Feb. 17, 2005). Representative Goodlatte expressed this sentiment so as to leave little doubt as to the intent of Congress:

> The bottom line is that new section 1332(d) is intended to substantially expand Federal court jurisdiction over class actions, not to create loopholes. This provision should be read broadly, with a strong preference that interstate class actions should be heard in a Federal court if properly removed by a defendant.

Rep. Bob Goodlatte, 151 Cong. Rec. H723-01, H730 (Feb. 17, 2005).[3]

Admittedly, some of the concerns of CAFA are not present here: New York, where this action was originally filed, is not a faraway jurisdiction [it's not one of the notorious magic jurisdictions like Madison County, Illinois] with which these Defendants have no connection. Other facets of the case at bar demonstrate why removal is appropriate. While Plaintiffs' counsel did not plead State law causes of action, it did plead claims under the 1933 Act, and only such claims, in an attempt to avoid removal.[4] The Plaintiffs filed three separate actions this year with the same allegations against different principal Defendants in New York State Supreme Court, each of which has been removed to the Southern District of New York.[5] The Plaintiffs explicitly recognize that its claims address head on an issue of national, if not global, importance—the mortgage-backed securities crisis.[6] (Compl. ¶¶ 3, 34, 65.) The three allegedly fraudulent offerings currently total $1.84 billion, $1.62 billion and $2.86 billion, respectively. (Compl. ¶ 1.) Given the scale of damages and the vital importance of the issues raised by the case to the national economy, this case fits easily within the goals expressed in the debates that resulted in CAFA legislation.

---

[3] There are limitations to mass actions if the gravamen is a local event. 28 U.S.C. § 1332(d)(11).

[4] In *California Public Employees' Retirement Systems v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004), the Second Circuit described the *WorldCom* plaintiffs as having "craftily" drafted the complaint under the 1933 Securities Act to avoid federal jurisdiction.

[5] Without casting aspersion on this Plaintiff's motives for filing three cases more or less simultaneously, Congress established the filing of so-called "copycat" cases in the same or different jurisdictions as a factor for the court to consider in both the Local Controversy and Home State exceptions to CAFA original jurisdiction. 28 U.S.C. § 1332(d)(3), (4); *see* S. Rep. 109-14 at 5. While the securities and corporate governance exceptions in § 1332(d)(9) do not include such a factor to determine jurisdiction or removability, the fact that securities plaintiffs and their counsel file successive actions addressing the same issues echo the repeated Congressional concerns about nationwide impact and abusive filings.

[6] "Currently, the United States is ensnared in a financial crisis arising from undisclosed subprime lending practices and the issuance by financial firms of trillions of dollars of securities purportedly backed or collateralized with such undisclosed defective loans." (Compl. ¶ 34.)

5

*III. Does CAFA Override the Securities Act of 1933 Anti-Removal Provision?*

The Plaintiffs argue that CAFA does not override the Securities Act anti-removal provision, and that even if it did, this case falls under one of CAFA's exceptions, §1332(d)(9)(C), which excepts from federal jurisdiction a class action that relates to the "rights, duties and obligations arising out of a security." 28 U.S.C. § 1332(d)(9)(C). Defendants instead and among other arguments contend that CAFA, passed in 2005, trumps the anti-removal provision of the Securities Act of 1933 because the statutes' conflicting language brings into play the Rule of Recency, and thus CAFA passed in 2005 controls. (*See* Def Opp. Mem. 14-15 (citing *In re Inosphere Clubs, Inc.*, 922 F.2d 984, 991 (2d Cir. 1990).)

The Supreme Court ruled in *Radzanower* that: "When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976). Following *Radzanower*, the *Luther* Court held that the Securities Act anti-removal statute <u>cannot</u> be overridden by CAFA because the Securities Act is more specific, and even if CAFA came later, no explicit statement had been made in CAFA to repeal Section 22(a) of the Securities Act of 1933. *Luther*, 533 F.3d at 1034. The question then is the effect of CAFA on the 1933 Act's anti-removal provisions.

Plaintiffs argue under *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003) that a securities plaintiff has an absolute right to sue in state court regardless of what CAFA says. But this was not the holding in *Breuer*. There the Supreme Court held that the Fair Labor Standards Act, a federal statute that was silent on removal, was distinguishable from other statutes, like the Securities Act of 1933, which explicitly barred removal to federal court of cases arising under the Act. Furthermore, this Circuit has explicitly found that cases pled under the 1933 Act can be removed even if brought in State court. *California Public Employees' Retirement Systems v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004); *In re Global Crossing, Ltd. Securities Litig.*, 02cv910, 2003 WL 21659360 (S.D.N.Y. Jul. 15, 2003).

In *Worldcom*, the Second Circuit reconciled the conflicting removal provisions of the Bankruptcy Code and the anti-removal provisions of the 1933 Securities Act. *WorldCom, Inc.*, 368 F.3d 86.[7] *See also In re Global Crossing*, 2003 WL 21659360. The *WorldCom* Court

---

[7] The Second Circuit affirmed the District Court's denial of plaintiffs' motion to remand the case to state court. The plaintiffs were pension funds who brought securities fraud claims against the Chapter 11 debtor's officers and

6

found that the bankruptcy removal provisions in 28 U.S.C. §§ 1452(a) and 1334 and the anti-removal provision in § 22(a) of the 1933 Securities Act were in direct conflict, and that both were specific and narrowly-tailored.  The first provides for removal of cases in or related to bankruptcy; the second precludes removal of securities cases arising under the 1933 Act.  Both of the statutes are narrowly drawn in comparison to the general removal statute of 28 U.S.C. § 1441, which permits <u>any</u> civil case filed in State court to be removed to federal court provided that the federal court would have subject matter jurisdiction of the case.

Since the provisions directly conflict and each is narrowly drawn, the Court looked at the Securities Act as amended by SLUSA and the overall purpose of the Bankruptcy Code.  While SLUSA did not touch § 22(a)'s bar on removal of *individual* Securities Act claims, it did make federal court the <u>exclusive</u> venue for class actions alleging fraud in the sale of covered securities. *WorldCom*, 368 F.3d at 98 (citing *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107-08 (2d Cir. 2001).  In addition, the Court also found compelling § 1452(a)'s design to further Congress's purpose of centralizing bankruptcy litigation in a federal forum.  *WorldCom*, 368 F.3d at 103.

The Court found that Congress did not manifest an intent to alter the bankruptcy code's removal provision when it amended the 1933 Act in 1998 with SLUSA.  Instead, the Court looked to the central purpose of the bankruptcy code to centralize bankruptcy litigation in a federal forum and this purpose overrode the anti-removal provision for the securities claim, thereby precluding remand.  *WorldCom*, 368 F.3d at 103, 105-06.

Further, comparing the general removal provision of 28 U.S.C. § 1441(a) and the bankruptcy removal provision § 1452(a), the *WorldCom* Court noted that the former contains an express exception for all cases that Congress specifically excludes.  Section 1441(a) states that

> "*except as otherwise expressly provided by Act of Congress*, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants. . ."

28 U.S.C. § 1441.  The bankruptcy removal provision contains no such limiting language. *WorldCom*, 368 F.3d at 106.  Since Congress decided to leave that language out of § 1452(a),

---

directors. The Second Circuit noted that the pension funds "carefully crafted" their complaint to solely allege claims under the 1933 Act to be able to invoke its anti-removal provision. *Worldcom*, 368 F.3d at 91. Underwriters and Directors of WorldCom removed the case to federal court arguing that the claims were "related to" WorldCom's bankruptcy. This "careful crafting" to avoid federal jurisdiction is one of the problems explicitly identified and targeted by CAFA.

there is a presumption that Congress acted intentionally to treat the statutes differently and give sweeping removal power for bankruptcy cases. *WorldCom*, 368 F.3d at 106.

Similarly, here, one could argue that CAFA, which targets only diversity cases that are class actions, also has sweeping removal power and like the bankruptcy removal provisions, CAFA's sole limitations are those exclusively listed in the defined exceptions such as Home State, Local Controversies, and the three securities and corporate governance exceptions. *WorldCom*, 367 F.3d at 99. Had Congress wanted to treat CAFA like the general removal statute of § 1441(a) and leave intact other statutory regimes, it could easily have done so.

Most importantly, earlier this year, the Second Circuit in *Estate of Pew v. Cardarelli*, 527 F.3d 25 (2d Cir. 2008) compared CAFA and SLUSA with respect to the question of federal jurisdiction and removal. It stated that:

> [r]eview of SLUSA and CAFA confirms an overall design to assure that the federal courts are available for all securities cases that have national impact (including those that involve securities traded on national exchange), without impairing the ability of state courts to decide cases of chiefly local import or that concern traditional statute regulation of the state's corporate creatures.

*Pew*, 527 F.3d at 32. Subject to CAFA's exceptions "diversity jurisdiction is created under CAFA for all large, non-local securities class actions." *Id.*

These circumscribed exceptions coupled with the overriding purpose of CAFA to provide for federal court jurisdiction in cases of national importance illustrate the intent of Congress to include within the reach of CAFA all securities class actions except for those set forth in the § 1332(d)(9) exceptions. *Id.* Consequently, CAFA overrides the Securities Act's anti-removal provision because this case involves exactly the type of case CAFA was concerned about—a large, non-local securities class action dealing with a matter of national importance, the mortgage-backed securities crisis that is currently wreaking havoc with the national and international economy. Thus, this case is removable under § 1453(b), unless subject to an exception.

## IV. The CAFA Exception: §§ 1332(d)(9)(C) 1453(d)(3):

Because CAFA overrides § 22(a) of the Securities Act of 1933 and Defendants have shown that the case meets CAFA's removal requirements, the burden shifts to the Plaintiffs to show whether a CAFA exception applies. Plaintiffs have invoked the CAFA exception to original jurisdiction and removal under §§ 1332(d)(9)(C), 1453(d)(3). Defendants respond that,

8

under *Pew*, § 1332(d)(9)(C) is inapplicable because that exception does not include claims for securities fraud.

CAFA created three limited securities- and corporate governance-related exceptions to jurisdiction and removal, which are found in 28 U.S.C. §§ 1332(d)(9)(A)-(C), 1453(d)(1)-(3). They provide that a class action is not removable to federal court if it:

1) involves <u>covered securities</u> - § 1332(d)(9)(A);
2) involves corporate governance - § 1332(d)(9)(B); or
3) **relates to the rights, duties (including fiduciary duties) and obligations relating to or created by or pursuant to any security - § 1332(d)(9)(C).**[8]

Congress decided that CAFA would not apply "to claims involving covered securities or corporate governance litigation." S. Rep. 109-14 at 49. Consistent with Congress's aim to interpret CAFA broadly, as reflected in the legislative history, all of CAFA's exceptions are to be interpreted narrowly. The Senate Judiciary Committee and House Chair of the Judiciary Committee explained the purpose and how the securities and corporate governance exceptions in § 1332(d)(9) were to be interpreted:

> The Committee intends that this exemption be narrowly construed. By corporate governance litigation, the Sponsors mean only litigation based solely on (a) State statutory law regulating the organization and governance of business enterprises such as corporations, partnerships, limited partnerships, limited liability companies, limited liability partnerships, and business trusts; (b) State common law regarding the duties owed between and among owners and managers of business enterprises; and (c) the rights arising out of the terms of the securities issued by business enterprises.

S. Rep. 109-14 at 45; *see also* Rep. Sensenbrenner, 151 Cong. Rec. H723-01, H729. With respect to § 1332(d)(9)(A), the Senate Report explains that "[b]ecause Congress has previously enacted legislation governing the adjudication of [claims concerning covered securities], it is the

---

[8] The §§ 1332(d)(9) and 1453(d) CAFA exceptions to original jurisdiction and removal states that a class action litigation "shall not apply to any class action that solely involves a claim
   (A) concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 7[7]p(f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E);
   (B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized, or
   (C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1) and the regulations issued thereunder)."
28 U.S.C. §§ 1332(d)(9)(A)-(C), 1453(d)(1)-(3).

Committee's intent not to disturb the carefully crafted framework for litigating in this context." *Id.* at 50.

The Second Circuit in *Pew* analyzed the securities and corporate governance exceptions in § 1332(d)(9). There plaintiffs represented individuals who purchased money market certificates—unsecured, fixed-interest debt instruments—and the complaint alleged violation of Section 11(a) of the 1933 Act for fraudulent misrepresentations in the issuer's financial statements. *Pew*, 527 F.3d 25. After the *Pew* defendants removed the action, plaintiffs amended their complaint to plead the same acts of concealment under New York's consumer fraud law, N.Y. Gen. Oblig. L. § 349.[9] While Plaintiffs here argue that *Pew* is distinguishable because it did not plead a cause of action under the Securities Act of 1933, the Circuit's analysis is nonetheless analogous to the case at bar.[10] The *Pew* plaintiffs sought to remand their case to State court relying on § 1332(d)(9)(C) of CAFA, which excepts from federal jurisdiction class actions under § 1332(d)(2) that solely involve claims that:

> relate to the rights, duties (including fiduciary duties), obligations relating to or created by or pursuant to any security.

28 U.S.C. § 1332(d)(9)(C).

The *Pew* plaintiffs argued that this exception covered any claim that involved securities, but the Second Circuit rejected this overly inclusive interpretation. The Court held that 28 U.S.C. § 1332(d)(9)(C) could not be read broadly to cover <u>all</u> securities related claims because that would render the terms of limitation in § 1332(9)(C) meaningless. It would also render the other securities related exception, § 1332(d)(9)(A), which excludes original jurisdiction for covered securities, completely superfluous. *Pew*, 527 F.3d at 31. The terms "rights, duties and obligations" operate as terms of limitation; they have a specific and limited meaning and it cannot mean that a plaintiff has the right to except from CAFA any cause of action that relates to a security. *Id.* Similarly, the words "relating to or created by or pursuant to" were also words of limitation that would be rendered meaningless if all securities case were excluded from CAFA. *Id.* Since "duties" expressly includes "fiduciary duties," which commonly reflects duties owed

---

[9] The *Luther* district court did not reach the applicability of the CAFA exception § 1332(d)(9)(C), notwithstanding the plaintiffs' pleadings that sought the exception. *Luther*, 2008 U.S. Dist. LEXIS 26534, at *10, n.6.
[10] Admittedly, *Pew* is not directly on point because Plaintiffs' original complaint, which originally included 1933 Act securities fraud claims, was refiled solely as a consumer claim; thus, the Court did not address whether CAFA trumps §22(a). *See Luther*, 533 F.3d at 1034 dismissing applicability of *Pew* in light of fact that *Pew* did not analyze §22(a). The original securities claims were dismissed for failure to state a claim.

10

by persons, Congress, we believe, intended to distinguish "obligations" and "rights"— obligations are those created by instruments (since this would distinguish the term from duties), and rights are those of security-holders to whom the duties and obligations run. *Id.*

The *Pew* Court then looked to the legislative history for further support of its statutory interpretation, because it found CAFA's wording imperfect. *Pew*, 527 F.3d at 30, 32-33. The Court held that under § 1332(d)(9)(C), claims that relate to the rights, duties and obligations of securities "appl[y] only to suits that seek to enforce the terms of the instruments that create and define securities and to duties imposed on persons who administer them." *Id.* at 33. The Senate Judiciary Committee explained that it meant this exception to be limited to claims "based solely on "the rights arising out of the terms of the securities issued by business enterprises" and that "§ 1332(d)(9) . . . is also intended to cover disputes over the meaning of the terms of a security, which is generally spelled out in some formative document of the business enterprise, such as a certificate of incorporation . . . ." S. Rep. 109-14 at 45. The *Pew* Court found that this exception included claims "such as how interest rates are to be calculated, and so on," but not claims for securities fraud, such as the claims before me. *Pew*, 527 F.3d at 33.

As the claims here do not implicate the terms or meaning of the HarborView Certificates, and under the Second Circuit's holding in *Pew*, CAFA's § 1332(d)(9)(C) exception does not apply to securities fraud claims like the ones alleged here, no CAFA exception applies in this case. Since CAFA's main provision trumps § 22(a) of the Securities Act, and no exception applies, remand of the case must be denied.

## CONCLUSION

Based on the foregoing, the Plaintiffs' motion to remand is DENIED. A revised Pretrial Scheduling Order will be circulated by the Court.

SO ORDERED
New York, New York
September 24, 2008

/s/ Harold Baer
U.S.D.J.

11