THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW JERSEY CARPENTERS VACATION FUND and BOILERMAKER BLACKSMITH NATIONAL PENSION TRUST, *on Behalf of Themselves and All Others Similarly Situated*,<br><br>Plaintiffs,<br><br>*v.*<br><br>THE ROYAL BANK OF SCOTLAND GROUP, PLC, GREENWICH CAPITAL HOLDINGS, INC., GREENWICH CAPITAL ACCEPTANCE, INC., GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., ROBERT J. MCGINNIS, CAROL P. MATHIS, JOSEPH N. WALSH, III, JOHN C. ANDERSON, JAMES M. ESPOSITO, RBS SECURITIES, INC. f/k/a GREENWICH CAPITAL MARKETS, INC., d/b/a RBS GREENWICH CAPITAL, MOODY'S INVESTORS SERVICE, INC. and THE MCGRAW-HILL COMPANIES, INC.,<br><br>Defendants. | Case No.: 08-CV-5093 (HB)<br><br>**ECF CASE** |

**MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION TO INTERVENE BY LEAD PLAINTIFFS, LABORERS' PENSION FUND AND HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNSEL OF CHICAGO AND VICINITY AND <u>MIDWEST OPERATING ENGINEERS PENSION TRUST FUND</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................ 1 | |
| II. | ARGUMENT....................................................................................................... 4 | |
| | A. Intervention as a Matter of Right Under Rule 24(a) Should Be Granted.................................................................................................... 5 | |
| |     1. The Movants Have a Significantly Protectable Interest ................. 5 | |
| |     2. The Court's Ruling on Standing Necessitates the Addition of the Movants .................................................................................. 5 | |
| |     3. The Motion to Intervene is Timely ................................................. 6 | |
| | B. Alternatively, Permissive Intervention Under Rule 24(b) Should Be Granted ........................................................................................... 7 | |
| | C. The Movants' Motion Is Timely................................................................ 8 | |
| |     1. The Issue of Standing Was Not Resolved Until the Court's Order ............................................................................................... 12 | |
| III. | CONCLUSION.................................................................................................. 14 | |

Lead Plaintiffs New Jersey Carpenters Vacation Fund ("Carpenters Fund") and Boilermaker Blacksmith National Pension Trust ("Boilermaker") (collectively, "Lead Plaintiffs") and movants Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Counsel of Chicago and Vicinity ("Chicago Laborers") and Midwest Operating Engineers Pension Trust Fund ("Midwest OE") (collectively, the "Movants") submit this Memorandum of Law in support of their joint motion, pursuant to Fed. R. Civ. P. 24, for an order permitting Chicago Laborers and Midwest OE to intervene as additional named plaintiffs in the above-captioned action.

## I. INTRODUCTION

The Movants purchased Harborview mortgage pass-through certificates (the "Certificates" or "Harborview Certificates") issued by Harborview Mortgage Loan Trust ("Harborview") Series 2006-7, Harborview Series 2006-9, Harborview Series 2006-10 and Harborview Series 2006-14 (collectively, the "Additional Trusts"). *See* the accompanying Declaration of Kenneth M. Rehns in Support of the Movants' Motion to Intervene ("Rehns Decl."), Ex. A ("Chicago Laborers Certification") and Ex. B ("Midwest OE Certification").[1] The Certificates were underwritten and sold by RBS Securities, Inc., f/k/a Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital ("Greenwich Capital") and issued pursuant to two (2) Registration Statements and accompanying Prospectuses filed with the Securities and Exchange Commission (the "SEC") by Greenwich Capital Acceptance, Inc. ("GCA")[2] on March

---

[1] As shown in the Midwest OE Certification, Midwest OE also purchased Certificates in Harborview Series 2007-7. However, Lead Plaintiff Boilermaker, who has already been adjudged to have adequate standing, also purchased Certificates in the Harborview Series 2007-7 Offering. As a result, Harborview 2007-7 is not included in the Additional Trusts.

[2] "RBS" the "RBS Defendants" or the "Defendants" are Royal Bank of Scotland, plc ("RBSG"), RBS Holdings USA, Inc. f/k/a Greenwich Capital Holdings, Inc. ("GCH"), GCA, RBS Financial Products f/k/a Greenwich Capital Financial Products, Inc. ("GCFP")[2], Greenwich Capital, Robert J. McGinnis ("McGinnis"), Carol P. Mathis ("Mathis"), Joseph N. Walsh, III ("Walsh"), John C. Anderson ("Anderson") and James M. Esposito ("Esposito").

31, 2006 (No. 333-130961) (the "2006 Registration Statement"). The approximate aggregate value of the Certificates issued by the Additional Trusts was $10.29 billion.

On May 14, 2008, Lead Plaintiffs filed a Verified Complaint For Violations Of Sections 11, 12 And 15 Of The Securities Act of 1933, 15 U.S.C. § 77a, *et seq*., (the "Securities Act"), ("Initial Complaint") on behalf of all persons who purchased or acquired more than $6.32 billion of Harborview Certificates in three (3) offerings pursuant to the 2006 Registration Statement filed with the SEC by GCA.

On May 19, 2009, Lead Plaintiffs filed an Amended Securities Class Action Complaint ("Amended Complaint") on behalf of all persons or entities who purchased or acquired over $25.78 billion of Harborview Certificates issued by fifteen (15) trusts (the "Amended Complaint Class") pursuant to the 2006 Registration Statement and a second Registration Statement filed with the SEC on March 23, 2007 (No. 333-140279) ("the 2007 Registration Statement," with the 2006 Registration Statement, collectively referred to herein as the "Registration Statements") and later-filed Prospectus Supplements (together with the Registration Statements, the "Offering Documents"). Included among these fifteen trusts named in the Amended Complaint were the Additional Trusts. All persons or entities that purchased or acquired securities issued by the Additional Trusts, including the Movants, were members of the putative class defined in the Amended Complaint.

On March 26, 2010, this Court issued an Opinion & Order sustaining certain of Lead Plaintiffs' claims pursuant to Sections 11, 12 and 15 of the Securities Act of 1933, 15 U.S.C. § 77a, *et seq*., (the "Securities Act") against the Defendants. *See New Jersey Carpenters Vacation Fund, et al., v. The Royal Bank of Scotland PLC, et al.,* No. 08-CV-5093, 2010 U.S. Dist. LEXIS 29711 (S.D.N.Y. Mar. 26, 2010) (the "March 26 Order"). However, while this Court sustained

the claims brought on behalf of the purchasers of certificates issued by the two trusts from which the Lead Plaintiff had purchased, *i.e.*, Harborview Series 2006-4 and Harborview 2007-7, it dismissed, for the Lead Plaintiffs' lack of standing, the remaining claims on behalf of purchasers of securities issued by the remaining thirteen (13) trusts, including the Additional Trusts. *Id*. at *31.

In response to the Court's March 26 Order, Movants, with Lead Plaintiffs, are promptly seeking to intervene as additional named-plaintiffs in the above-captioned action in order to represent the putative class members who purchased Harborview Certificates issued by the Additional Trusts.

Defendants cannot be prejudiced by Movants' intervention as they have been on notice of these claims since the filing of the Initial Complaint in May 2008. Both the Initial Complaint and the Amended Complaint assert claims against the same defendants under the Securities Act based on the same misleading statements a common set of facts. As such, Movants' interest was protected by the prosecution of this Action through the date of the Court's March 26 Order dismissing claims on behalf of purchasers of the Additional Trusts.

At the time the Initial and Amended Complaints were filed, lead plaintiffs in numerous other mortgage-backed securities ("MBS") actions were pursuing a theory of standing identical to that pursued by Lead Plaintiff here and there had not yet been any decisions suggesting that a plaintiff could not act on behalf of a class of purchasers who acquired certificates pursuant to a common registration statement.[3] As a result, the Movants' present motion is timely and in line with the Supreme Court's decision in *American Pipe & Construction v. Utah,* 414 U.S. 538, 553

---

[3] In fact, in one of the earliest decisions addressing this issue, in the *Countrywide* MBS case Judge Pfaelzer found that a plaintiff *did* have standing to represent purchasers from various offerings made pursuant to a common registration statement. *In re Countrywide Fin. Corp. Sec. Litig*., 588 F. Supp. 2d 1132, 1164-65 (C.D. Cal. 2008).

(1974), and its progeny. Moreover, other courts recently faced with similar situations have allowed additional plaintiffs to be added to cure the standing deficiencies.[4] That is the proper result here as well.

## II. ARGUMENT

"Federal Rule of Civil Procedure 24 provides for intervention either as of right or with the permission of the Court." *Deutsche Bank Trust Co. Ams. v. Elliott Int'l, L.P.*, 2009 U.S. Dist. LEXIS 121204, at *3 (S.D.N.Y. Dec. 14, 2009). The right to intervene is unconditional when there is either: (1) a federal statute conferring such unconditional right; or (2) the party has an interest in the property or transaction subject to the action and the disposition of the action might impair or impede the party from protecting that interest, unless the party is already adequately represented by other parties in the action. *See* Fed. R. Civ. P. 24(a). The right to intervene is permissive when there is either: (1) a federal statute conferring such conditional right; or (2) the party's claim and the action at issue have a common question of law or fact. *See* Fed. R. Civ. P. 24(b).

While Fed. R. Civ. P. 24(c) requires the filing of a pleading identifying the claims for which intervention is sought, in this case, the Movants seeks to intervene to protect certain claims which are already included in the Complaint. Accordingly, should intervention be granted, the Movants propose additions to the existing Complaint which essentially reflect the Movants' interests in the action. *See* Rehns Decl., Ex. C (redlined version of relevant paragraphs of the Complaint showing proposed additions).

---

[4] *See In re Wells Fargo Mortgage-Backed Certificates Litig.*, Civ. No. 09-01376 (SI), 2010 U.S. Dist. LEXIS 39825 (N.D. Cal. Apr. 22, 2010); *King County, Wash. v. IKB Deutsche Industrie-Bank AG, et al.,* Civ. No. 09-8387 (SAS), 2010 U.S. Dist. LEXIS 48999 (S.D.N.Y. May 18, 2010).

### A. Intervention as a Matter of Right Under Rule 24(a) Should Be Granted

In the Second Circuit, a movant can intervene as of right under Rule 24(a) when the party has an interest in the property or transaction subject to the action and the disposition of the action might impair or impede the party from protecting that interest, unless the party is already adequately represented by other parties in the action. *See* Fed. R. Civ. P. 24(a). The Movants meet all of the criteria for intervention as of right.

#### 1. The Movants Have a Significantly Protectable Interest

In order to establish a protectable interest sufficient to intervene as of right, a movant must establish that the interest asserted is "direct, substantial, and legally protectable." *Brennan v. New York City Board of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (requiring a "significantly protectable interest")).

As stated in the Chicago Laborers' and Midwest OE Certifications, Rehns Decl., Exs. A-B, the Movants purchased Certificates that were issued by the Additional Trusts pursuant to the false or misleading Offering Documents and was damaged thereby. This monetary interest is legally protectable and is the same interest that had previously been represented by Lead Plaintiffs in the above-captioned action prior to the Court's March 26 Order. As such, pursuant to Fed. R. Civ. P. 24(a), the Movants have a significantly protectable interest relating to the transactions that are the subject of this action.

#### 2. The Court's Ruling on Standing Necessitates the Addition of the Movants

In the March 26 Order, this Court held that Lead Plaintiffs lack standing to bring claims on behalf of investors who purchased certificates issued by, among others, the Additional Trusts. *See* March 26 Order at *31 ("and therefore Plaintiffs' claims with regard to offerings they did not purchase are dismissed for lack of standing."). The Movants, by contrast, did in fact purchase

Certificates offered by the Additional Trusts and can act as an additional-named plaintiff and a proposed class representative on behalf of itself and other investors who purchased certificates issued by the Additional Trusts.

### 3. The Motion to Intervene is Timely

The concept of "[t]imeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are "(1) how long the [movant] had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the [movant] if the motion is denied; and (4) any unusual circumstances mitigating for or against a finding of timeliness." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

Here, the instant motion is being submitted soon after the Court's Order. Prior to that time, it appeared that the Movants' interests and those of the purchasers of Certificates issued by the Additional Trusts were adequately represented by Lead Plaintiffs.[5] After reviewing the March 26 Order and considering its effect, Movants made the decision that intervention in this Action was necessary to protect their interests and those of the purchasers of Certificates issued by the Additional Trusts, discussed their intervention with Counsel, received the necessary approvals to move forward, and now submit the instant motion.

Second, there will be no prejudice to the existing parties if the Movants are allowed to represent the interests of the purchasers of Certificates issued by the Additional Trusts. Since Lead Plaintiffs, which join this motion, sought to, but was unable to, represent these purchasers, allowing the Movants to do so now would further Lead Plaintiffs stated interests, not harm them.

---

[5] The basis for this belief is further discussed in Section C, *infra*.

As to the Defendants, they have had notice of the claims the Movants seek to prosecute since the filing of the Initial Complaint, all of which are identical to each of the offerings.

Further, allowing intervention now will benefit all parties and preserve judicial resources. See Section II.A.4 *infra*. By granting the Movants' motion to intervene now, the parties and the Court will have a single class action move forward on an existing pre-trial schedule for class certification. If the Movants' motion is denied, and such decision is either appealed or a new action is brought including those claims, the parties will likely be subjected to duplicative discovery on both those claims and the existing claims in this Action. That duplicative discovery would cause a significant waste of both the parties' and judicial resources.[6]

Lastly, absent intervention, the Movants and the purchasers of Certificates issued by the Additional Trusts' interests will not be represented in the above-captioned action and would adversely affect and potentially prejudice both the Movants, and those other purchasers of Certificates issued by the Additional Trusts whose interests would not otherwise be protected in this litigation.

### B. Alternatively, Permissive Intervention Under Rule 24(b) Should Be Granted

Additionally, Rule 24(b) "permits intervention in the discretion of the court where the movant 'has a claim or defense that shares with the main action a common question of law or fact.'" *Galindo v. UBS Int'l Inc.*, 2010 U.S. Dist LEXIS 16737, at *6 (S.D.N.Y. Feb. 24, 2010) (quoting Fed. R. Civ. P. 24(b)(1)(B)). "In exercising its discretion, the court must consider

---

[6] In evaluating the Motion the Court should also consider the novelty of the standing issues as an "unusual circumstance[] mitigating for … a finding of timeliness." *Pitney Bowes, Inc.*, 25 F.3d at 70. As described fully in Section II.C.2., below, the standing issues that exist in this case and in several of the similar cases that the Court relied upon in its Order, are relatively novel. As a result of the emerging nature of these issues this joint motion should be considered timely as it was made promptly in response to the Court's ruling on the disputed standing issue.

whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Movants' claims, and those of the purchasers of Certificates issued by the Additional Trusts, are essentially identical to those of the Lead Plaintiffs, *i.e.*, they are the claims the Lead Plaintiffs sought to pursue. As these claims were originally set forth in the same Amended Complaint under the same factual and legal theories and against the same defendants as the claims remaining in the above-captioned action, there are common questions of law and fact. Such common questions of law and fact include: (i) whether the Defendants violated the Securities Act; (2) whether the Offering Documents issued by Defendants to the investing public omitted and/or misrepresented material facts about the underlying mortgage loans comprising the pools; and (3) to what extent the members of the Amended Complaint Class and the purchasers of Certificates issued by the Additional Trusts have sustained damages and, if so, what is the proper measure thereof.

As noted above, the Movants seek to re-assert claims that Defendants have been aware of since the filing of the Initial Complaint. There will be no undue delay in the action if the Movants are permitted to intervene. All that the Movants seek to do is fulfill the standing requirements put forth by the Court in the March 26 Order. Indeed, the effect of any minor delay that may result in granting this Motion will be substantially outweighed by the benefit of having all affected purchasers of Certificates issued by the Additional Trusts represented in this action once again.

### C. The Movants' Motion Is Timely

Claims brought pursuant to Sections 11 and 12 of the Securities Act are subject to a one-year statute of limitations running from the date of discovery of the untrue statements or omissions and a three-year statute of repose running from the date the securities were offered to

the public. *See* 15 U.S.C. § 77m. These limitations periods were tolled by the filing of the initial and Amended complaints[7] pursuant to *American Pipe & Construction v. Utah,* 414 U.S. 538, 553 (1974), and its progeny.

In *American Pipe*, the Supreme Court "established that commencement of a class action tolls the applicable statute of limitations as to all members of the class." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n.13 (1974) (citing *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)). "[T]he Supreme Court has repeatedly stated [the American Pipe tolling rule] . . . [and] [w]e see no reason not to take this statement at face value." *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) ("Because members of the asserted class are treated for limitations purposes as having instituted their own actions, at least so long as they continue to be members of the class, the limitations period does not run against them during that time.").

Moreover, "several courts have held that *American Pipe* is appropriately applied to motions to intervene or amended complaints filed to substitute a proper class representative with standing prior to a decision on class certification." *CalPERS v. Chubb Corp.*, Civ. No. 00-4285 (GEB) 2002 U.S. Dist. LEXIS 27189, *89 (D.N.J. June 26, 2002) *aff'd*, 394 F.3d 126 (3d Cir. 2004) (citing cases). *See In re National Australia Bank Sec. Litig.*, No. 03-CV-6537 (BSJ) 2006 U.S. Dist. LEXIS 94163, *19 (S.D.N.Y Nov. 8, 2006). In *National Australia Bank,* two classes of plaintiff shareholders – one foreign and one domestic – brought claims of securities fraud under Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") alleging that defendant National Australia Bank Limited ("NAB") had made false and misleading statements

---

[7] The Intervenors claims based on the Additional Trusts "relate back" to the filing of the Initial Complaint on May 14, 2008. *See* Fed. R. Civ. P. 15(c)(2) (an amended pleading relates back when "[t]he claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrences set forth or attempted to be set forth in the original pleading."); the March 26 Order, at *33 (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86-87 (2d Cir. 1999)) ("An amended pleading will relate back if 'adequate notice of the matters raised in the amended pleadings has been given to the opposing party within the statute of limitations by the general facts situation alleged in the original pleading.'").

regarding NAB's financial health in connection with the sale of American Depository Receipts ("ADRs") of NAB's ordinary shares on the New York Stock Exchange. Plaintiffs' complaint was filed one week before the expiration of the two-year statute of limitations proscribed by the Exchange Act. In dismissing the lead domestic plaintiffs' claims for failure to allege damages, the court granted plaintiffs leave to substitute a lead domestic plaintiff. 2006 U.S. Dist. LEXIS 94163, at *5.

Following the dismissal, defendants objected to plaintiffs' request for 60 days to file an amended pleading naming a new lead domestic plaintiff, asserting that as the result of the recommencement of the statute of limitations period after the court's decision and order, plaintiffs' claims were now time-barred. In rejecting defendants' argument, the court held that where a motion to dismiss has been granted based on lead plaintiff's lack of standing, the "statute of limitations remains tolled for an intervening potential class members to continue the class action." *Id.* at *18. *See also In re Flag Telecom Holdings, Ltd. Securities Litigation*, 352 F. Supp. 2d 429 (S.D.N.Y. 2005).[8] In doing so, the court stated that *American Pipe* "and the governing principles articulated in the certification context apply with equal force here, and require continued tolling." *Id*. The court explained:

> The Lead Domestic Plaintiff's dismissal was based on the inadequacy of his individual claim*, i.e.,* his failure to allege damages, not because there was something inherently wrong with the claims of other ADR purchasers whom he

---

[8] In *Flag,* the court rejected defendants' argument that *American Pipe* tolling does not apply where the original plaintiff lacked standing. 352 F. Supp. 2d at 454-46 *abrogated on other grounds*, 574 F.3d 29 (2d Cir. 2009). There, the original plaintiff's claim for violation of Section 12(a)(2) of the Securities Act of 1933 was dismissed because that plaintiff had purchased Flag securities in the secondary market and thus did not have §12(a)(2) standing. *Id*. at 454. After being granted leave to replead, the original plaintiff filed a new complaint naming a new plaintiff, Norman Hunter, who had purchased securities directly in Flag's initial public offering. *Id*. at 455. The defendants argued that, although naming Hunter "may have . . . cured the defect" with the original plaintiff's standing, Hunter's claims were time barred by the three year statute of repose and tolling under *American Pipe* should not apply. *Id*. at 454-55. The court rejected this argument, holding that "the failure to apply the *American Pipe* rule to cases where a class action complaint was dismissed for lack of standing undermines the policies underlying Rule 23 and is inconsistent with the Court's reasoning in *American Pipe*." *Id*. at 455 n.19.

purported to represent. As explained above, these considerations are what prompted the Court to grant leave to substitute a new lead domestic plaintiff in the first place. Because there is nothing wrong with the ADR claim itself, it should proceed as a class action. On balance, any prejudice to the Defendants is outweighed by the prejudice to the putative domestic plaintiffs if the limitations period did not remain tolled.

*Id*.

Similarly, in *CalPERS,* the original class representative, CalPERS, filed a securities class action complaint on behalf of holders of stock issued by two defendant companies, Chubb and Executive Risk. *Id*. at *1. The original complaint, which was filed fifteen days prior to the expiration of the limitations period, listed CalPERS as sole named plaintiff even though it did not own any Executive Risk shares. *Id*. at *82-83. After the limitations period ended, John Teeple, an Executive Risk stock holder, moved to become a named plaintiff in the action. *Id*. at *83. The defendants argued that "the assertion of [the claims against Executive Risk] by CalPERS, which did not have standing to raise those claims, did not toll the statute of limitations for putative class members such as Teeple, who would have standing to bring such a claim." *Id*. The court rejected defendants' argument, and held that *American Pipe* tolling applied:

> This Court can conceive of little difference between the situation here and that in *American Pipe*. Here, Teeple was a putative class member as defined in the Complaint and thus, his inclusion protects the interests of all other putative class members as *American Pipe* intended. To rule otherwise would create a situation similar to that which the Supreme Court sought to eliminate in *American Pipe*, that is putative class members would be forced to file motions to intervene prior to the expiration of the statute of limitations and in advance of the decision on class certification to protect their interests.

*Id*. at *92-93 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 203 (S.D.N.Y. 1992)); *see also In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 377 (D. Mass. 1987) ("[T]he fact that a class action is disallowed because the class representative lacks 'standing' does not, *per se*, prevent application of the *American Pipe* tolling rule.") (quoting *Rose v. Ark. Valley Envtl. & Util. Auth.*, 562 F. Supp. 1180, 1193 (W.D. Mo. 1983)).

Here, the situation necessitates tolling of Movants' claims. The motion to intervene was promptly filed after this Court's opinion dismissing the claims on behalf of purchasers from the Additional Trusts that had previously been part of the Amended Complaint Class. The instant motion does not involve "new claims." *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354-55 (1983) (J. Powell, *concurring*) ("[T]he defendant normally is not prejudiced by tolling of the statute of limitations. It is important to make certain, however, that *American Pipe* is not abused by the *assertion of claims that differ from those raised in the original class suit*.") (emphasis added). Given that the great weight of applicable authority supports intervention and tolling under these circumstances, and the absence of any prejudice to the Defendants, this Motion for intervention should be granted.

### 1. The Issue of Standing Was Not Resolved Until the Court's Order

The apparent standing of the Lead Plaintiffs to represent all purchasers on offerings made pursuant to the same registration statements was founded on the language of Section 11, which authorizes the filing of an action on behalf of all purchasers "[i]n case any part of the *registration statement* contained an untrue statement of material fact." 15 U.S.C. § 77k(a). (emphasis added). Recent authority supported this interpretation of the statute. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1164-65 (C.D. Cal. 2008) (holding that purchasers of securities in offerings made through a prospectus supplement, pursuant to an initial shelf registration statement, could serve as representatives for purchasers from other offerings, "[s]o long as (1) the securities are traceable to the same initial shelf registration and (2) the registration statements share common 'parts' that (3) were false and misleading at each effective date.").

Indeed, in virtually every other MBS class action commenced in the period between 2008 and 2009,[9] the lead plaintiffs presumed that a purchaser who acquired securities pursuant to the common registration statement had standing to represent all purchasers on all the offerings emanating from that registration statement. It was only in 2010 that decisions began to emerge ruling that a purchaser for each offering is required under Article III.

In *In re Wells Fargo Mortgage-Backed Certificates Litig*, Civ. No. 09-01376 (SI), 2010 U.S. Dist. LEXIS 39825 (N.D. Cal. Apr. 22, 2010), Judge Illston found that while there was a purchaser pursuant to each registration statement, a representative mortgage-backed certificate purchaser was required for each individual offering in order to satisfy standing requirements. *Wells Fargo,* 2010 U.S. Dist. LEXIS 39825, *20. In that decision, the court permitted lead plaintiffs to file an amended complaint to add additional plaintiffs who had purchased previously unrepresented certificates. *Id. See also King County, Wash. v. IKB Deutsche Industrie-Bank AG, et al.,* Civ. No. 09-8387 (SAS), 2010 U.S. Dist. LEXIS 48999, *8 (S.D.N.Y. May 18, 2010) (in a class action involving state and common law claims related to the purchase of commercial paper backed by a structured investment vehicle, Judge Scheindlin found that the U.S. commercial note purchasers did not have standing to represent European commercial note purchasers but granted the plaintiffs leave to file an amended complaint adding a European Note purchaser to cure the standing defect.).

If these courts were to adopt a different reasoning, no additional plaintiffs who purchased mortgage-backed certificates would have been permitted to join those actions, since such new

---

[9] *See, e.g., In re Lehman Brothers Secs. and ERISA Litig.,* 684 F.Supp.2d 485, 491 (S.D.N.Y. Feb. 17, 2010) ("Named plaintiffs have purchased in six of the ninety-four offerings. They have not alleged any personal injury stemming from the other eighty-eight. They therefore have no standing to assert those claims."); *N.J. Carpenters v. Residential Capital*, No. 08 CV 8781(HB), 2010 U.S. Dist. LEXIS 32058 (S.D.N.Y. Mar. 31, 2010) (same); *Wells Fargo,* 2010 U.S. Dist. LEXIS 39825, at *20 (same, but granting leave to replead to cure the standing defects). In each of these cases the issue of standing was in dispute and plaintiffs' arguments were supported by multiple authorities.

plaintiffs should have anticipated Judge Illston's or Judge Scheindlin's standing decisions rendered in 2010 and intervened years earlier. Such a result is contrary to the instruction of *American Pipe and National Australia Bank* and should not be adopted here to exclude the intervention of the Movants.

## III. CONCLUSION

For the foregoing reasons, Lead Plaintiff and the Movants respectfully request that the motion to intervene be granted in all respects.

Dated: July 12, 2010
New York, New York

By:    /s/ *Christopher Lometti*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Joel P. Laitman (JL-8177)
Christopher Lometti (CL-9124)
Michael Eisenkraft (ME-6974)
Daniel B. Rehns (DR-5506)
Kenneth M. Rehns (KR-9822)
88 Pine Street, Fourteenth Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

Joshua Devore (*admitted pro hac vice*)
S. Douglas Bunch (SB-3028)
Matthew Kaplan (*admitted pro hac vice*)
1100 New York Avenue NW
Suite 500 West
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Counsel for the Movants and Lead Counsel for the Class*

# CERTIFICATE OF SERVICE

I, Kenneth M. Rehns, counsel for Lead Plaintiffs and Movants, hereby certify that on July 12, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this action.

                                                       /s/   Kenneth M Rehns
                                                        Kenneth M. Rehns