UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NEW JERSEY CARPENTERS HEALTH           :
FUND, et al.,                          :
                                       :
           Plaintiffs,                 :
                                       :   08 CV 8781 (HB)
      - against -                      :
                                       :
RESIDENTIAL CAPITAL, LLC, et al.       :
                                       :
           Defendants.                 :   AMENDED
------------------------------------------------------------------x   OPINION AND ORDER
NEW JERSEY CARPENTERS VACATION         :
FUND, et al.,                          :
                                       :
           Plaintiffs,                 :
                                       :   08 CV 5093 (HB)
      - against -                      :
                                       :
THE ROYAL BANK OF SCOTLAND GROUP, PLC, :
et al.,                                :
                                       :
           Defendants.                 :
------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:[1]**

These cases both arise from alleged misrepresentations and omissions in the offering documents for certain mortgage-backed securities the plaintiffs purchased. In brief, the plaintiffs contend that they were misled as to whether proper guidelines and procedures were observed in the origination of the loans and their subsequent securitization. Plaintiffs bring claims under sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k(a), 77*l*(a)(2), 77o (2010).[2]

The background facts and allegations are detailed in two Opinions devoted to the parties' previous motions to dismiss, *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, No. 08 Civ. 5093 (HB), 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) and *New Jersey*

---

[1] Shunit Yaacobi, a 2011 intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

[2] These provisions impose liability on certain participants in a registered securities offering when the publicly filed documents used in the offering contain material misstatements or omissions. *In re Morgan Stanley Information Fund Sec.Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). Section 11 applies to registration statements, and section 12(a)(2) applies to prospectuses and oral communications. 15 U.S.C. §§ 77k(a), 77 *l* (a)(2). Section 15 creates liability for individuals or entities that "control[ ] any person liable" under section 11 or 12. *Id.* § 77 *o*.

1

*Carpenters Health Fund v. Residential Capital, LLC*, No. 08 Civ. 8781 (HB), 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010).  Now before the Court are motions to dismiss a number of parties who were given leave to intervene in an Opinion and Order dated December 22, 2010.

Defendants in Civil Case No. 08-8781 (the "RALI" case)[3] seek dismissal of the entire Consolidated Second Amended Securities Class Action Complaint ("RALI SAC") pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1) and 12(b)(6).  Defendants in Civil Case No. 08-5093 (the "Harborview" case)[4] move to dismiss claims brought by the Intervenors in the Consolidated Second Amended Securities Class Action Complaint ("Harborview SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).[5]  For the reasons that follow, the motions are granted in part and denied in part.

I. DISCUSSION

A. Legal Standard

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief."  *Id.* at 1950.  "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant

---

[3] The RALI defendants are: Residential Capital, LLC; Residential Funding, LLC; Residential Accredited Loans, Inc.; Bruce J. Paradis, Kenneth M. Duncan, Davee L. Olson, Ralph T. Flees; Lisa R. Lundsten, James G. Jones, David M. Bricker; James N. Young, Residential Funding Securities Corporation d/b/a/ GMAC RFC Securities; Goldman, Sachs & Co.; RBS Securities, Inc. f/k/a Greenwhich Capital Markets, Inc. d/b/a RBS Greenwich Capital; Deutsche Bank Securities, Inc.; Citigroup Global Markets, Inc.; Credit Suisse Securities (USA) LLC; Bank of America Corporation *as successor-in-interest to* Merrill Lynch, Pierce, Fenner & Smith, Inc.; UBS Securities, LLC; JPMorgan Chase, Inc. *as successor-in-interest to* Bear Stearns & Co., Inc.; and Morgan Stanley & Co., Inc. (collectively, the "RALI Defendants")

[4] The Harborview defendants are: The Royal Bank of Scotland Group, PLC; Greenwich Capital Holdings, Inc.; Greenwich Capital Acceptance, Inc.; Greenwich Capital Financial Products, Inc.; Robert J. McGinnis; Carol P. Mathis; Joseph N. Walsh, III; John C. Anderson; James M. Esposito; RBS Securities, Inc. f/k/a Greenwich Capital Markets, Inc., d/b/a RBS Greenwich Capital; Moody's Investors Service, Inc.; and The McGraw-Hill Companies, Inc. (collectively, the "Harborview Defendants", and, together with the RALI Defendants, simply "Defendants")

[5] The RALI intervenors are: Police and Fire Retirement System of the City of Detroit ("PFRS"); Orange County Employees Retirement System ("OCERS"); Midwest Operating Engineers Pension Trust Fund ("Midwest OE"); and Iowa Public Employees Retirement System (IPERS) (collectively, "RALI Intervenors").

The Harborview intervenors are: Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Counsel of Chicago and Vicinity ("Chicago Laborers"); Midwest OE; and IPERS (collectively, "Harborview Intervenors", and, together with the RALI Intervenors, simply "Intervenors").

fair notice of what the ... claim is and the grounds upon which it rests." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 -120 (2d Cir. 2010) (*quoting Twombly*, 550 U.S. at 555).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.[6]

### B. Claims under section 12(a)(2) are dismissed

The scope of entities that can be liable under section 12 is limited to those who "(1) passed title, or other interest in the security, to the buyer for value, or (2) successfully solicited the purchase of a security, motivated at least in part by a desire to serve his own financial interests or those of the securities' owner."  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (internal quotations marks and brackets omitted).  An additional limitation on section 12 relief requires that to recover, plaintiffs must have purchased their securities from a proper defendant in a public offering.  *See Caiafa v. Sea Containers Ltd.,* 525 F. Supp. 2d 398, 407-08 (S.D.N.Y. 2007), *aff'd*, 331 F. App'x 12 (2d Cir. 2009); *In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005) (*citing Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995).

Intervenors have failed to come up with sufficient allegations that they actually purchased securities from a defendant in a public offering.  *See* RALI SAC ¶¶ 21-24, Harborview SAC ¶¶ 21-23.  When asked directly at oral argument, the best that Intervenors could do was to assert that "we just simply don't know at this point . . . We don't know that they were not bought on the offering. . . there is certainly a very distinct possibility these were part of the offering."  Oral Arg. Hr'g Tr. 28-30, Apr. 1, 2011.  This language just does not meet the statute's requirements, and fails to raise Intervenors' right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.   *See also In re Barclays Bank PLC Sec. Litig*, No. 09 Civ.1989 (PAC), 2011 WL 31548, at *5 (S.D.N.Y. Jan. 5, 2011) (citing citing *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F.Supp.2d 299, 305 (D.Mass.2009) ("If plaintiffs did in fact purchase the Certificates directly from the defendants, they should have said so. An evasive circumlocution does not serve as a substitute.")).

---

[6] "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (internal citations omitted).  However, Defendants do not direct any of their arguments to the Court's subject matter jurisdiction, so their invocation of Rule 12(b)(1) is moot.

In support of their position that their allegations are sufficient, Intervenors rely principally on two cases that appear to define the outer limit of leniency for pleading section 12 claims. In *Public Employees' Retirement System of Mississippi v. Goldman Sachs Group, Inc.*, this Court found that specific allegations of the exact security purchased along with the date of purchase were sufficient to survive a motion to dismiss where the complaint had additionally alleged that plaintiffs "purchased their Certificates *directly* from" defendants who participated in the initial public offering. No. 09 Civ. 1110 (HB), 2011 WL 135821, at *8 (S.D.N.Y. Jan. 12, 2011) (emphasis added). It is true that Intervenors allege the exact security purchased and the date of the purchase. RALI SAC ¶¶ 19-24; Harborview SAC ¶¶ 19-23. However, the music stops there. Intervenors fail to adequately allege a direct purchase from a defendant – the best RALI Intervenors can point to is a paragraph alleging that (1) the securities "were sold" to them between June 28, 2006 and May 30, 2007, and (2) certain defendants underwrote unspecified offerings. RALI SAC ¶ 2. Similarly, Harborview Intervenors allege that certain defendants "underwrote and sold to Plaintiffs . . . 17.74 billion of Mortgage Loan Pass-Through Certificates," and that those certificates "were issued in eight (8) Offerings which took place between April 26, 2006 and October 1, 2007." Harborview SAC ¶ 2. These "conclusory legal allegations unsupported by any factual allegations" are insufficient. *Emps. Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co.*, et al., 09 Civ. 3701 (JGK), 2011 WL 1201520, at *7 (S.D.N.Y. March 30, 2011). The fact that the allegations of purchases by Intervenors, sales by Defendants and sales in offerings all co-exist in the same paragraph fails, without more, to raise an inference that the Intervenors purchased from a defendant in a public offering.

Intervenors also point to this Court's refusal to dismiss a complaint that alleged that the plaintiffs had "purchased the Certificates 'pursuant to' the relevant Offering Documents, that is, in the relevant offerings. . . . that defendants 'solicited, sold and distributed' the Certificates, that they purchased a specified number of Certificates on specified dates (some of which corresponded to the initial offering dates) at specified prices, [and] that specific Underwriter Defendants were associated with each individual offering . . . ." *IndyMac Mortg.-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 502 (S.D.N.Y. 2010). Here, purchases were made months or even years after the public offerings. *See* RALI SAC ¶¶ 19-24, 32; Harborview SAC ¶¶ 21-23, 38. Unlike in *IndyMac*, the purchase dates here do not correspond to the offering dates and thus cannot be read to provide the necessary inference that the purchases were made in the public offerings. Because Intervenors have failed to

allege any facts to show that they purchased directly from Defendants in a public offering, their section 12 claims are dismissed.[7]

### C. Failure to state a claim under section 15

The allegations of control in the RALI SAC are insufficient to sustain RALI Intervenors' section 15 claims. Section 15 requires allegations of (1) a primary violation of the Securities Act and (2) "control" by the defendant. *Rombach v. Chang*, 355 F.3d 164, 178 (2d Cir. 2004); 15 U.S.C. § 77*o*. "Control in this context is not the mere ability to persuade, but almost always means the practical ability to *direct* the actions of people who issue or sell securities." *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005) (internal quotations omitted).

The RALI SAC alleges that Residential Funding Securities Corporation ("RFSC"), Goldman, Sachs & Co., Deutsche Bank Securities, Inc., Citigroup Global Markets, Inc., and UBS Securities, LLC (collectively, the "Underwriter Defendants"), were "controlling persons" of those defendants who are otherwise liable under sections 11 and 12, and that they had the "power to influence, and exercised that power and influence" to cause violations of sections 11 and 12. RALI SAC ¶ 252. These are the same conclusory allegations brought in the RALI First Amended Complaint that were found insufficient to state a claim under section 15. *See* DE 58 at 12. I previously accepted the allegation that RFSC may have exercised some degree of control as a subsidiary of defendant Residential Capital, LLC. However, the new RALI SAC fails to improve on its ancestors' anemic section 15 allegations. Upon further consideration I conclude that the RALI SAC provides insufficient factual allegations even as to RFSC. *See* SAC ¶¶ 45-50. The allegations that the RALI Underwriter Defendants exercised sufficient control are purely conclusory, *see* SAC ¶¶ 252-53, and the section 15 claims against them are dismissed.

### D. Diminution in Market Value Constitutes a Cognizable Loss

RALI Defendants argue that RALI Intervenors' section 11 claim related to offering 2007-QS1 should be dismissed because they continue to hold their certificates and to receive the full monthly principal and interest payments; the mere decline in the certificates' market value, they posit, is not an injury for section 11 purposes.[8] Harborview Defendants argue more broadly that all Section 11 and 12 claims should be dismissed for essentially the same reason: Intervenors cannot

---

[7] While the RALI Defendants made this argument on their initial motion to dismiss claims by the named plaintiffs, *see* RALI Dkt. No. 39 at 5, those claims relate to purchases that are separate and apart from those addressed here.

[8] RALI Defendants also make this argument with regards to OCERS's investment in 2006-QO6; however OCERS has conceded that its claims as to 2006-QO6 have been released. RALI Pl.'s Opp'n at 3 n.9. OCERS's claims related to that offering are dismissed.

allege an injury based solely on a decline in secondary market value when they were warned of the risks of an illiquid market.

While a plaintiff need not plead damages under Section 11, it must "satisfy the court that [it] has suffered a cognizable injury under the statute." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 246 (S.D.N.Y. 2004).  As a matter of law, an allegation that an "investment has declined in value … is a cognizable loss for the purposes of Section 11." *Emps.' Ret. Sys. of the Gov't of the Virgin Islands*, 2011 WL 1201520 at *13; *see also*, *NJ Carpenters v. DLJ Mortg. Capital, Inc.*, No. 08-5633 (PAC), 2010 U.S. Dist. LEXIS 47512, at *14 (S.D.N.Y. March 29, 2010) (rejecting the notion that actionable damages in a Section 11 claim can only exist when investors fail to receive a "pass-through" of cash flows).  Here, the Harborview Intervenors allege specific facts supporting the position that Chicago Laborers sold its holdings in 2006-10 and 2006-14 at a loss; Midwest OE sold its holdings in 2006-7, 2006-9, and 2007-7 at a loss; and IPERS sold its holdings in 2006-9 and 2006-11 at a loss.  *See* Harborview Pl.'s Opp'n at Sched. A; Decl. of Kenneth M. Rehns, Ex. A., July 30, 2010 (08cv5093 Dkt. No. 118-1); Decl. of Kenneth M. Rehns, Exs. A, B., July 12, 2010; (08cv5093 Dkt. Nos. 104-1, 104-2).  IPERS's holdings in 2006-12 and 2007-QS1 have declined in value.  Harborview SAC ¶¶ 73-74.  RALI SAC ¶ 19.  These allegations of injury are sufficient at the pleading stage.

However, Harborview Defendants' motion to dismiss IPERS's section 11 and 12 claims related to offerings 2006-10 and 2007-7 must be granted because certificates purchased in those offerings were sold at a profit.  *See* Decl. of Kenneth M. Rehns Ex. A, July 30, 2010 (Dkt. No. 118-1)(08cv5093);  *In re AOL Time Warner*, 381 F. Supp. 2d at 245-246 (dismissing Section 11 and 12 claims where plaintiff failed to allege an injury); *see also Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 2011 WL 135821, at *9.

### E.  Claims arising from the purchase of 2006-QS8 are timely

Claims under Section 11 and 12(a)(2) of the '33 Act are subject to a one-year statute of limitations, which begins to run upon "the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. RALI Defendants assert that PFRS's claims relating to the 2006-QS8 offering must be dismissed as

6

time-barred because PFRS failed to bring them within one year of being on inquiry notice.[9] However, the Supreme Court recently rejected the use of inquiry notice to determine when the limitations period for a securities fraud claim begins. *See Merck & Co. v. Reynolds*, 130 S. Ct 1784, 1797 (2010). The Court clarified that the clock starts to tick when "a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Merck*, 130 S.Ct. at 1798 (internal citations omitted). Applying *Merck*, the Second Circuit elaborated that a fact is not deemed discovered until a "plaintiff would have sufficient information about that fact to adequately plead it in a complaint … with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, --- F. 3d ----, 2011 WL 677404 at *4 (2d Cir. Feb. 28, 2011). *See also In re Wachovia Equity Sec. Litig.*, 09 Civ. 4473 (RJS) slip op. at 31 (S.D.N.Y. Mar. 31, 2011) (applying *Merck* to claims under Sections 11 and 12(a)(2) of the '33 Act).

      RALI Defendants fail to show that a reasonably diligent plaintiff would have discovered the facts constituting the violation over a year before bringing this action, or by May 18, 2008. They posit three bases for the purported discovery: (i) delinquency rates for 2006-QS8 approached 15%; (ii) Bear Stearns had collapsed just days before PFRS's investment; and (iii) Fitch, two weeks before PFRS's investment, put the relevant securities on ratings watch for possible downgrades. The first basis relies on Plaintiffs' theory, asserted in the RALI SAC, that high delinquency rates indicate a failure to adhere to underwriting guidelines. Defendants argue that, by its own logic, PFRS should have been aware of the alleged misstatements concerning underwriting practices. However, Plaintiffs' theory is merely a theory. The only substantiated correlation cited exists between high delinquency rates and misstatements in the original loan applications – *not* misstatements in the offering documents for securities made up of the original loans. *See* RALI SAC ¶ 68. This is not enough for me to conclude that PFRS should have discovered the facts amounting to misstatements and omissions in the 2006-QS8 offering documents. *City of Pontiac*, 2011 WL 677404 at *4.

      It is an even further reach to suggest that a possible ratings downgrade and the collapse of Bear Stearns should have caused PFRS to discover the misstatements or omissions in the offering documents for 2006-QS8. *Id*. Even if these facts would have been sufficient to put PFRS on

---

[9] In securities fraud cases, inquiry notice arises when "circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." *Staehr v. Hartford Fin. Serv. Group, Inc.*, 547 F.3d 406, 411 (2d Cir. 2008).

inquiry notice, that would not have started the statue of limitations. *Merck*, 130 S.Ct. at 1798; *City of Pontiac*, 2011 WL 677404 at *3.

### F. Knowledge does not defeat Intervenors' claims

RALI Defendants assert that RALI Intervenors' Section 11 and 12(a)(2) claims related to offerings 2006-Q06, 2006-Q09, 2006-QS8, 2006-QS18, 2007-Q02, and 2007-Q0S1 (the "Knowledge Offerings") must be dismissed because RALI Intervenors had knowledge of the high delinquency rates at the time they purchased the certificates. A plaintiff may not prevail on a securities fraud claim under Sections 11 or 12 if a defendant proves that at the time of the securities purchase, the plaintiff "knew of [the] untruth or omission" alleged as the basis for recovery. 15 U.S.C. §§ 77k(a), 77*l*(a)(2); *In re Barclays*, 2011 WL 31548, at *10.

As with their inquiry notice argument, RALI Defendants rely on allegations in the RALI SAC that delinquency rates exceeding 3.2% indicate a systematic disregard of underwriting guidelines. They contend that because the RALI Intervenors purchased from the Knowledge Offerings more than four months after the offering date, when the delinquencies reported on the then available monthly statements were above 3.2%, RALI Intervenors had knowledge of the "untruths or omissions" in the guidelines and may not recover under Section 11 or 12(a)(2).

For purposes of this motion to dismiss, the RALI Intervenors' lack of knowledge is presumed, and RALI Defendants bear the burden of proving otherwise. *See In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205-206 (S.D.N.Y. 2003). While there may be "cases in which the facts pled demonstrate that the purchaser must have known the truth," this is not one of them. *Id.* at 206. Defendants cite to monthly reports about the Knowledge Offerings that disclosed high delinquency rates, as well as cautionary words from ratings agencies in connection with the origination of the underlying loan pools. Without more, these facts do not prove that the RALI Intervenors "knew of" the alleged misrepresentations concerning underwriting standards. 15 U.S.C. §§ 77k(a), 77*l*(a)(2). This Court has declined to impute knowledge of fraud to plaintiffs who were aware of declining stock prices. *See Global Crossing*, 313 F. Supp. 2d at 206. Put another way, RALI Defendants provide no convincing basis to conclude that rising delinquency rates or adjusted rating methodologies such as those alleged here defeat the knowledge prong in section 11 or 12(a)(2). For these reasons and those discussed in connection with the inquiry notice arguments, RALI Defendants' motion to dismiss claims related to the Knowledge Offerings must be DENIED.

### G.  The repurchase, cure or substitute clause provides no escape hatch

Harborview Defendants note that the offering documents do not purport to verify the accuracy of loan information; rather they state that if information is incorrect the originator will repurchase, cure or substitute any non-conforming loans upon request.  They argue that, as a result, Harborview Intervenors should have pled a failure to repurchase, cure or substitute loans in accordance with the offering documents.  This argument employs principles of contract law that are inapposite in the context of '33 Act claims, not least because issuers "are subject to 'virtually absolute' liability under section 11, while the remaining potential defendants under sections 11 and 12(a)(2) may be held liable for mere negligence."  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010).  Liability is *not* predicated on compliance with contractual obligations.

Harborview Defendants rely on a Fifth Circuit decision, *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 389 (5th Cir. 2010), to support their position.  That case is distinguishable because the misstatements were in the underlying "mortgage loan pools", not in the Offering Documents as is the case here, and the overwhelming majority of courts in this Circuit have rejected the *Lone Star* approach.  *See, e.g.*, *Emps.' Ret. Sys. of the Gov't of the Virgin Islands*, 2011 WL 1201520, at *11;  *City of Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, No. 08 Civ. 1418 (LDW), 2010 U.S. Dist. LEXIS 137290, *17-19 (E.D.N.Y. Dec. 23, 2010).

### H.  Failure to allege reliance does not defeat Harborview Intervenors' claims

A section 11 plaintiff must prove reliance if it purchases the subject securities "after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement . . . ."  15 U.S.C. § 77k(a)(5).  Harborview Defendants argue that a number of "Distribution Summaries" they released are the equivalent of an "earning statement" and triggered a requirement to plead reliance.  Their argument is unpersuasive because the regulations that define "earning statement" are specific and do not appear to contemplate the kind of Distribution Summaries at issue here.  *See* 17 C.F.R. 230.158.  Nor can Harborview Defendants point to any judicial decision finding that Distribution Summaries such as those here are adequate stand-ins.  The Distribution Summaries do not constitute earning statements because they fail to include the "information required" for the traditional earning statements.  *See In re WorldCom, Inc. Secs. Litig.*, 219 F.R.D. 267, 289 (S.D.N.Y. 2003).  The motion to dismiss for failure to plead reliance is DENIED.

## II.     CONCLUSION

For the foregoing reasons, the motions to dismiss are GRANTED to the extent that Intervenors' section 12 claims are dismissed, RALI Intervenors' Section 15 claims against the Underwriter Defendants are dismissed, IPERS's claims related to Harborview offerings 2006-10 and 2007-7 are dismissed, and OCERS's claims related to RALI offering 2006-Q06 are dismissed. Having considered Defendants' remaining arguments and found them unavailing, the motions to dismiss are otherwise DENIED.

The Mississippi Public Employees' Retirement System ("MissPERS") indicated that it would agree to withdraw should the Court grant OCERS's motion to intervene. *See* 08cv8781 Dkt. No. 109, 1 n.2. OCERS was granted leave to intervene, and although MissPERS did not formally move to withdraw, it is hereby dismissed.

The Clerk of the Court is instructed to close the relevant motions (08cv8781 Dkt. No. 126) (08cv5093 Dkt. No. 152).

SO ORDERED
April 19, 2011
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

10