UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NEW JERSEY CARPENTERS HEALTH FUND, :
NEW JERSEY CARPENTERS VACATION FUND :
And BOILERMAKER BLACKSMITH NATIONAL :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated, :
                                                 Plaintiffs, :
                                                 :     08 CV 8781 (HB)
    - against - :

RESIDENTIAL CAPITAL, LLC, et al., :
                                                 Defendants. :
------------------------------------------------------------------------x    **OPINION AND ORDER**
NEW JERSEY CARPENTERS VACATION FUND :
And BOILERMAKER BLACKSMITH NATIONAL :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated, :
                                                 Plaintiffs, :
                                               :     08 CV 5093 (HB)
    - against - :

THE ROYAL BANK OF SCOTLAND GROUP, PLC, :
et al., :
                                               Defendants. :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

      Before this Court is an amended motion for class certification submitted by lead plaintiffs for two cases, 08 Civ. 5093 (the "Harborview" case) and 08 Civ. 8781 (the "RALI" case) (collectively "Plaintiffs"), pursuant to Fed. R. Civ. P. 23. Plaintiffs bring claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k(a), 77*l*(a)(2) & 77o, alleging that the defendants in both cases ("Harborview Defendants" and "RALI Defendants") made false and misleading statements in the offering documents of mortgage-backed securities ("MBS") with respect to their compliance with underwriting guidelines. I previously denied class certification in an Opinion and Order of January 18, 2011, because the predominance and superiority requirements under Rule 23(b)(3) were not satisfied, even though all the elements under Rule 23(a) were met. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd*, 2012 WL 1481519 (2d Cir. Apr. 30, 2012). Following the Second Circuit's Summary Order

1

affirming my denial of certification, Plaintiffs, encouraged, I presume, by the Circuit's opinion, submit an amended motion that narrows the class and expands the record. The Circuit wrote, "our review is limited to the class definition that the judge rejected, and to the record as it stood at the time of this motion to certify . . . . without prejudice to further motion practice in the district court." *N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Trust*, Nos. 11-1683-CV, 11-1684-CV, 2012 WL 1481519, at *4 (2d Cir. Apr. 30, 2012). Plaintiffs also ask the Court to certify them as Class Representatives and appoint Cohen Milstein Sellers & Toll PLLC as Class Counsel. Harborview and RALI Defendants oppose on the ground that Rule 23(b)(3) requirements are still not satisfied. For the reasons set forth below, Plaintiffs' motion is GRANTED in all respects but for a single modification that will further narrow Plaintiffs' proposed class to purchasers who bought the security on the date of offering directly from the issuers.

## Discussion

The party seeking class certification, after demonstrating that each of Rule 23(a) threshold requirements is met by a preponderance of the evidence, must also show that the class satisfies one of the subsections of Rule 23(b). *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). In my prior Opinion, I found that Plaintiffs satisfied Rule 23(a) requirements of numerosity,[1] commonality, typicality, and adequate representation in both cases but denied certification because Plaintiffs failed to meet their burden with respect to predominance and superiority under Rule 23(b)(3). 272 F.R.D. at 168. I presume familiarity with that opinion and incorporate my prior analysis and determination regarding Rule 23(a) by reference, and I examine below only whether Plaintiffs' new record and class definitions show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In considering Plaintiffs' amended motion, I am mindful of the Second Circuit's comment, "Perhaps another inference could have been drawn, and perhaps a different inference might be drawn on a renewed motion on a fuller record." 2012 WL 1481519, at *3. Although the Second Circuit has confirmed that "both grants and denials of class certification in MBS litigation may fall within the range of a district court's discretion"[2] and has affirmed my denial based on "particular

---

[1] I disagree with RALI Defendants, who argue that numerosity can no longer be established with respect to RALI 2007-QH4 subclass which has only 22 putative members. The courts in this district have concluded that a class may be certified even if certain sub-classes do not meet the presumptive 40-member requirement. *See In re IndyMac Mortgage-Backed Sec. Litig.*, No. 09 Civ. 4583, 2012 WL 3553083, at *3 (S.D.N.Y. Aug. 17, 2012).

[2] The Second Circuit has more recently commented, "We emphasize that it is by no means a foregone conclusion that, because plaintiff has standing to assert §§ 11 and 12(a)(2) claims on behalf of Certificate-holders from different tranches of Offerings (or within Offerings) backed by loans originated by the same originators, a putative class

2

facts confronting it on the limited record available in this case," it has also noted that other district courts, as well as I, have granted certification in similar MBS cases. *Id.* at *4 (citing *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Group, Inc.*, 280 F.R.D. 130 (S.D.N.Y. 2012) ("*Goldman*"); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, Inc., 277 F.R.D. 97 (S.D.N.Y. 2011) ("*Merrill Lynch*"); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653, 2011 WL 3874821 (S.D.N.Y. Aug. 16, 2011)).[3]

**A. Predominance**

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010) (quotation marks omitted). A plaintiff asserting a claim under Sections 11 and 12(a)(2) must first make a prima facie case by proving that the "offering participant" or "statutory seller" made material misstatements or omissions in the offering documents. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983); 15 U.S.C. § 77*l*(a)(2). Section 15 provides for derivative liability based on Sections 11 and 12(a)(2) for a "control person." While neither Section 11 nor Section 12 requires a culpable mental state, a claim under either section is subject to various defenses, including an affirmative defense based on the plaintiff's knowledge of the untruth or omission at the time of acquisition. *See In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 n.1 (2d Cir. 2007). Underwriter defendants may also avoid liability under the two sections by demonstrating that they conducted due diligence and reasonably believed that the statements were not materially misleading. *See* 15 U.S.C. §§ 77k(b)(3), 77*l*(a)(2).

1. **Expanded Record**

In their amended motion, Plaintiffs expanded the record in an effort, in the Circuit's language, that I might draw "a different inference . . . on a fuller record." 2012 WL 1481519, at *3. In my prior Opinion and Order, I found that individual issues predominated, Defendants having "mustered a good deal of documentary evidence" to show that "different putative class members have different levels of knowledge regarding the underwriting guidelines and practices based on their respective levels of sophistication and time of purchase." *N.J. Carpenters*, 272 F.R.D. at 168. I

---

comprised of such Certificate-holders should be certified. The district court, after reviewing all of the Rule 23 factors, retains broad discretion to make that determination." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 11-2762-CV, 2012 WL 3854431, at *14 (2d Cir. Sept. 6, 2012).

[3] Since the Second Circuit's affirmance, two additional certifications have been granted in this district. *See Tsereteli v. Residential Asset Securization Trust 2006-A8*, No. 08 Civ. 10637, 2012 WL 2532172 (S.D.N.Y. June 29, 2012); *In re IndyMac Mortgage-Backed Sec. Litig.*, 2012 WL 3553083.

3

was particularly troubled by the specific evidence that Western Asset Management Company ("WAMCO"), an investment advisor who had complete discretion over Plaintiff Boilmaker's investments, "knew that loans could be originated with exceptions to underwriting guidelines, and it knew that such loans [] increased the risk of delinquencies and heightened losses" at the time it purchased the 2007–7 Harborview Certificates. *Id.* at 169 (citing Meltzer Decl. Ex. A, at 131:20–132:10). Given such evidence suggesting specific knowledge, as well as general evidence about putative class members' sophistication about MBS, I was concerned that different purchase dates would lead to additional individualized issues given the variation in the amount of available information over time. *Id.*

Now, Plaintiffs have had an opportunity to examine Defendants' documents (most of which were produced after Plaintiffs' first class certification motion was filed, *see* Harboview Einsenkraft Supplemental Decl. Ex. 1; RALI Einsenkraft Supplemental Decl. Ex. 1) and to take depositions of witnesses with knowledge of all communications between Defendants and purchasers regarding the relevant offerings. Haborview Pls.' Reply 2; RALI Pls.' Reply 2. These documents are alleged to include "all communications with investors regarding the offerings at issue," Haborview Pls.' Reply 2, n.7; RALI Pls.' Reply 2 n.7, and coupled with the depositions, they support Plaintiffs' contention that adverse due diligence results and loan files, which could have yielded specific information about underwriting compliance unlike loan tapes that merely convey loan characteristics, were not disclosed to the investors.

In considering this new information, I am guided by the Second Circuit's language that "the question before us (as it was before the district court) is not the *merits* question of whether defendants have shown purchasers' knowledge, but the *certification* question of whether common liability issues predominate over individual knowledge defenses." 2012 WL 1481519, at *2. Thus my task is simply to reconsider whether on the expanded record individual issues continue to predominate over common issues. *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (instructing that a district court's obligation to make determinations by resolving factual disputes is "not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement."). Now that the record reveals that class members were similarly situated with respect to Defendants' due diligence results and access to loan files, I am persuaded that Defendants' affirmative defenses may not be as individualized as I had previously concluded. *See Tsereteli*, 2012 WL 2532172 at *6 ("While predominance requires a more rigorous showing than does commonality, it does not require a plaintiff to show that there are no individual issues.") (quotation marks omitted); *see also Pub. Emps.' Ret. Sys. of Miss.*, 277 F.R.D. at 111. In particular, Plaintiffs' new record assuages my prior concern based on "a good deal of documentary evidence" demonstrating WAMCO's level of knowledge at the time it purchased the 2007–7 Harborview Certificates, 272 F.R.D. at 169, now the record shows that even the most

sophisticated class members did not have access to the actual due diligence results and loan files for the certificates at issue and are therefore likely to be subject to the same knowledge and due diligence defense.

### 2. Revised Class Definition

As the Second Circuit noted, I previously "found the balance tipped in favor of the individual issues not only because of the evidence of purchaser knowledge, also because of the cumbersome class definitions proposed in both cases." 2012 WL 1481519, at *3. Plaintiffs, in turn, have narrowed their proposed class in both cases by excluding: (1) anyone who purchased on or after the date of the first downgrade or the first material downgrade of the certificates after the offering; (2) Fannie Mae and Freddie Mac; and (3) Defendants and related parties. Haborview Pls.' Supp. 1; RALI Pls.' Supp. 1. In my view, while Plaintiffs' new class definitions are an improvement from their prior request that the Court certify "[a]ll persons who purchased" the certificates at issue and were "damaged thereby," *N.J. Carpenters*, 272 F.R.D. at 162, the classes could be narrowed with respect to the timing of purchase, as explained below.

While Defendants object that other sophisticated investors still remain in the class, I explained in *Goldman*, another MBS case before this Court, that my denial of certification in this case "rested on a finding of individual investor knowledge that was informed not only by the sophistication of class members and differences in the availability of information over time, but other, more specific evidence as well," noting in particular that I was concerned about Freddie Mac and Fannie Mae's extensive involvement in the structuring of the 2006-4 and 2007-7 offerings at issue in the Harborview case. 280 F.R.D. at 137. Therefore, the continued inclusion of sophisticated investors alone is not fatal to the predominance analysis.

With respect to the timing issue, however, I note that Plaintiffs represented to the Second Circuit at oral argument "that 'most of' or 'ninety percent' of the purchasers of each security bought on the date of issue directly from the issuers," leading the Second Circuit to remark that "a narrower class definition focused on this more readily identifiable, more homogeneous group" was available. 2012 WL 1481519, at *3. Plaintiffs, in this amended motion, have nonetheless chosen "first downgrade" or "first material downgrade" as the class cutoff date based on the theory that "[t]he downgrade, arguably, is tied to the underwriting because the downgrades . . . were dramatic when there was a new methodology for rating . . . taking into account the loosened underwriting practices that were not previously disclosed." Oral Arg. Tr. 14:5-9 Sept. 6, 2012. While there is some merit to Plaintiffs' argument, I cannot help but wonder why Plaintiffs have not modified their classes more narrowly as the Second Circuit suggested, given the Circuit's acknowledgement that "the defendants would have stronger or weaker evidence of purchaser knowledge depending on purchase timing . . . . Furthermore, because of the differences in purchase timing, the chosen class definition also removed the possibility that the knowledge defense could be adjudicated on a class basis using

common publicly available evidence." 2012 WL 1481519, at *3. Unlike in *Goldman*, which involved a single offering in March 2006 and one originator, the RALI case covers 59 separate offerings from March 28, 2006, to October 9, 2007, while the Harborview case covers 15 offerings involving multiple originators from April 26, 2006, through October 1, 2007. 280 F.R.D. at 132. Given the sheer number of offerings at issue, the timing issue, while not dispositive in itself with respect to predominance, presents a particular challenge to class cohesiveness in these two cases. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

### 3. Conclusion as to Predominance

I am persuaded by the expanded record that Defendants' affirmative defenses may not be as individualized as I previously found but nonetheless find Plaintiffs' new class definitions still cumbersome. As a result, I exercise my discretion to modify the class under Rule 23(c) and certify a narrower class of purchasers who bought the security on the date of offering directly from the issuers. "It is well-established that a court has the inherent power and discretion to redefine and modify a class in a way which allows maintenance of an action as a class action." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 241 F.R.D. 435, 438 (S.D.N.Y. 2007) (quotation marks omitted); *see also Sumitomo Copper Litig. v. Credit Lyonnais Rouse*, *Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) ("[D]istrict court is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted."); *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 180 (S.D.N.Y. 2005) (modifying the plaintiffs' proposed class definition *sua sponte*); 7AA Wright & Miller, *Federal Practice and Procedure* § 1785.4 (3d ed.) (citing cases).

## B. Superiority

Rule 23(b)(3) also requires this Court to determine whether a class action would be superior to other means of adjudication by considering: (1) the interest of the class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation already commenced by or against class members; (3) the desirability of concentrating the litigation in a particular forum; and (4) difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). In my prior Opinion, I expressed concern over the "obstacles to the management of the litigation" because the Court might have to hear "significant individualized evidence . . . on each purchasers' knowledge and damages" based on "the proposed classes." 272 F.R.D. at 170. I am now less concerned about the manageability of the case given the narrower class definitions and Plaintiffs' expanded record, which assures me that many affirmative defenses could also be subject to generalized proof. *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) (noting "it is well-established that the fact that damages may have to be ascertained on an

individual basis is not sufficient to defeat class certification.") (citation omitted). While it is true that the classes continue to include sophisticated investors and that putative class members in these two cases may appear as defendants in other MBS litigation, I note that the courts of this district, including this Court, have spelled out the advantages of class action treatment in similar securities cases, and these advantages are equally applicable here. *See Goldman*, 280 F.R.D. at 141; *see also IndyMac*, 2012 WL 3553083 at *10; *Merrill Lynch*, 277 F.R.D. at 120 (finding existence of sophisticated and/or institutional investors within the putative class not dispositive).

## Conclusion

I have considered the parties' remaining arguments and find them to be without merit. Because I am persuaded that Plaintiffs' expanded record provides a sufficient basis for me to find that common issues predominate over individual ones once the class is further narrowed to those who bought the securities on the date of offering directly from the issuers, Plaintiffs' amended motion for class certification is GRANTED in accordance with this decision. Plaintiffs are appointed Class Representatives, and Cohen Milstein Sellers & Toll PLLC as Class Counsel,[4] subject to its submission of an additional memorandum.[5] The parties in both cases are also ordered to confer and submit a new pre-trial scheduling order within 10 days from the date hereof. The Clerk of the Court is instructed to close the two motions and remove them from my docket.

SO ORDERED
October 15, 2012
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

---

[4] In certifying class counsel, a court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g). Cohen Milstein has significant experience and knowledge with the relevant laws and procedure, RALI Rehns Decl. Ex. 3, has been litigating this action, and is committed to continuing its representation so as to effectively represent the class.

[5] These conclusions are subject to the Court being satisfied with Class Counsel's memorandum, to be submitted within five days from the date of this Order, informing the Court about the relevance of the trial team's diversity in this particular case based on the nature of the dispute and the diversity of the class, so far as it is known. The Class Counsel may also provide the Court with specific information about the diversity of the trial team to the extent that they think it relevant. *Cf. Blessing v. Sirius XM Radio Inc.*, No. 09 Civ. 10035, 2011 WL 1194707, at *12 (S.D.N.Y. Mar. 29, 2011); *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y. 2007).

7