```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NEW JERSEY CARPENTERS HEALTH FUND,            :
NEW JERSEY CARPENTERS VACATION FUND           :
And BOILERMAKER BLACKSMITH NATIONAL           :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated,                    :
                                              :
                    Plaintiffs,               :
                                              :    08 CV 8781 (HB)
        - against -                           :
                                              :
RESIDENTIAL CAPITAL, LLC, et al.,             :
                                              :
                    Defendants.               :
                                              :
------------------------------------------------------------------------x    OPINION AND ORDER
NEW JERSEY CARPENTERS VACATION FUND           :
And BOILERMAKER BLACKSMITH NATIONAL           :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated,                    :
                                              :
                    Plaintiffs,               :
                                              :    08 CV 5093 (HB)
        - against -                           :
                                              :
THE ROYAL BANK OF SCOTLAND GROUP, PLC,        :
et al.,                                       :
                                              :
                    Defendants.               :
------------------------------------------------------------------------x
```

**Hon. Harold Baer, Jr., District Judge:**

  Before this Court is Plaintiffs' renewed motion to reconsider the Court's prior Orders of March 2010 in two cases, 08 Civ. 5093 (the "Harborview" case) and 08 Civ. 8781 (the "RALI" case) dismissing their claims with respect to the offerings they did not purchase. Plaintiffs argue that the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), *cert. denied*, 2013 WL 1091772 (U.S. Mar. 18, 2013) (No. 12-528) ("*NECA*"), constitutes a significant change in controlling law. We agree. Consequently, Plaintiffs' motion in the Harborview case is GRANTED, and Plaintiffs' motion in the RALI case is GRANTED in part and DENIED in part. The letter motions submitted by Defendants in both cases (respectively, "Harborview Defendants" and "RALI Defendants") for additional briefing on the issue is DENIED.

1

**Background**

In both cases, Plaintiffs assert claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*(a)(2) & 77o, alleging that Defendants made false and misleading statements with respect to the underwriting guidelines in the offering documents of certain mortgage-backed securities ("MBS"). Plaintiffs' motion to reconsider arises out of the Court's prior dismissal of certain offerings made on Article III grounds, *N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp., PLC*, 720 F. Supp. 2d 254 (S.D.N.Y. 2010); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 Civ. 8781, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010), and on the decision in *NECA* which provides an intervening change of controlling law.

In the Harborview case, the First Amended Complaint ("Harborview FAC") asserted claims on behalf of the purchasers of certificates in 15 different offerings issued between April 26, 2006, and October 1, 2007, based on two Registration Statements. In the RALI case, the First Amended Complaint ("RALI FAC") similarly asserted claims on behalf of the purchasers of certificates in 59 different offerings issued in the period between March 2006 and October 2007, also based on two Registration Statements. However, Lead Plaintiffs in both cases had purchased certificates in only some of the offerings. In Orders of March 2010, I held that Lead Plaintiffs had standing with respect to only the offerings whose certificates they had purchased, and I dismissed all but two Harborview offerings[1] and four RALI offerings.[2] 720 F. Supp. 2d at 266; 2010 WL 1257528, at *4.

Approximately four months later, in July 2010, Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago ("Chicago Laborers"), Midwest Operating Engineers Pension Trust Fund ("Midwest Operating"), and Iowa Public Employees' Retirement System (collectively, "Harborview Intervenors") filed motions to intervene in the Harborview case under Fed. R. Civ. P. 24, asserting claims based on six Harborview offerings which had been dismissed.[3] Similarly, in the RALI case, Iowa Public Employees Retirement System, Midwest Operating Engineers Pension Trust Fund, Orange County Employees Retirement System, and Police and Fire Retirement System of the City of Detroit (collectively, "RALI Intervenors") filed motions to intervene based on six dismissed offerings.[4] I

---

[1] Lead Plaintiff New Jersey Carpenters had purchased certificates in the Harborview 2006-4 offering, and Lead Plaintiff Boilermaker Blacksmith National Pension Trust had purchased certificates in the Harborview 2007-7 offering.

[2] Lead Plaintiffs New Jersey Carpenters' Health Fund, New Jersey Carpenters' Vacation Fund, and Boilermaker Blacksmith National Pension Trust had purchased certificates in the following RALI offerings: RALI 2006-QO7, 2007-QS1, 2007-QH4, and 2007-QO4.

[3] Harborview Intervenors had purchased certificates in the following offerings: Harborview 2006-7, 2006-9, 2006-10, 2006-11, 2006-12, and 2006-14.

[4] RALI Intervenors had purchased certificates in the following offerings: RALI 2006-QS18, 2006-QO9, 2006-QS8, 2007-QS1, and 2007-QO2. Mississippi Public Employees' Retirement System also filed a motion to intervene, but it was subsequently dismissed from the action. *See N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 Civ.

granted the movants' motion to intervene in December 2010, which effectively revived the claims based on some of the dismissed offerings. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08 Civ. 8781 & 08 Civ. 5093, 2010 WL 5222127, at *7 (S.D.N.Y. Dec. 22, 2010).  In both cases, Lead Plaintiffs' and Intervenors' complaints were subsequently consolidated and amended in January 2011 to name Intervenors also as Plaintiffs.

On January 3, 2013, the Court denied the Defendants' motions in both cases to dismiss the Intervenors' claims based on the statute of repose, as well as Plaintiffs' motion to reconsider the Court's March 2010 dismissal of certain offerings based on *NECA*, but without prejudice to renewal if the Supreme Court denied the petition for certiorari, *N.J. Carpenters Health Fund v. Residential Capital*, LLC, No. 08 Civ. 8781, 2013 WL 55854 (S.D.N.Y. Jan. 3, 2013), which it did, *NECA*, *cert. denied*, 2013 WL 1091772 (U.S. Mar. 18, 2013) (No. 12-528).  Plaintiffs informed the Court of such denial and renewed their motions for reconsideration in their letter of March 19, 2013.  RALI and Harborview Defendants in response requested the Court's permission for supplemental briefing on the issue.  As the motions were already fully briefed at the time I denied their application, there was, in my view, no need for supplemental briefing, and I decide them below.

## Discussion

Under Fed. R. Civ. Pr. 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties rights and liabilities." Although a motion for reconsideration should not be lightly granted, "an intervening change of controlling law" is a ground for exercising the Court's discretion. *Ayazi v. United Fedn. of Teachers Local 2*, 487 F. App'x 680, 681 (2d Cir. 2012).  Other district courts in this Circuit have already considered and granted motions for reconsideration based on *NECA*. *See, e.g.*, *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653, 2013 WL 357615 (S.D.N.Y. Jan. 23, 2013); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09 Civ. 2137, 2013 WL 139556 (S.D.N.Y. Jan. 11, 2013).

Contrary to this Court's earlier analysis on Plaintiffs' standing vis-à-vis the offerings whose certificates they had not purchased, the Second Circuit held in *NECA* that "'class standing'—that is, standing to assert claims on behalf of purchasers of Certificates from other Offerings, or from different tranches of the same Offering—does not turn on whether [the plaintiff] would have statutory or Article III standing to seek recovery for misleading statements in those Certificates' Offering Documents." 693 F.3d at 158.  Instead, the Circuit held that "a plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of

---

8781 & 08 Civ. 5093, 2011 WL 2020260 (S.D.N.Y. May 19, 2011).

concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." 693 F.3d at 162 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)).  Noting that each offering was "backed by a distinct set of loans issued by a distinct set of originators," the Circuit explained that "in the context of §§ 11 and 12(a)(2) claims alleging misstatements about *origination guidelines* . . . differences in the identity of the originators backing the Certificates matters for the purposes of assessing whether those claims raise the same set of concerns" because the proof of alleged injuries would "center on whether the particular originators of the loans backing the particular Offering from which a Certificate-holder purchased a security had in fact abandoned its underwriting guidelines." *Id.* at 163 (emphasis in original). In short, the Circuit held that "plaintiff has class standing to assert the claims of purchasers of certificates backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates." *Id.* at 148-149.

**A.  The Harborview Case**

In the Harborview case, Plaintiffs move the Court to reinstate the claims of the purchasers of the 12 out of 13 dismissed offerings.  Plaintiffs argue that like *NECA*, the Harborview case also involves identical defendants, the same two shelf registration statements, and loans originated by common originators.  Plaintiffs specifically point out that: (1) six of the 12 offerings share Countrywide Home Loans ("Countrywide") as the originator with Plaintiff New Jersey Carpenters' 2006-4 offering; (2) two offerings share American Home Mortgage ("AHM") and Bank United as originators with Intervenor Plaintiffs Midwest Operating's 2006-7 offering and Chicago Laborers' 2006-10 and 2006-14 offerings; and (3) two other offerings share AHM as the originator with Plaintiff Boilermaker's 2007-7 offering. Pls.' Supp. 5-7.  In turn, the Harborview FAC alleged that Countrywide, AHM, and Bank United systematically disregarded the underwriting guidelines. *See* Harborview FAC ¶¶ 69-84, 198-209, 85-92, 210-216, 108-120, 224-227.

Defendants agree with Plaintiffs that the application of the *NECA* holding makes the five offerings that share Countrywide as an originator viable. Harborview Defs.' Opp. 13.  With respect to the other seven offerings, however, Defendants disagree. *Id*.  They argue that *NECA* does not apply to the 2007-1 offering because its prospectus supplement contained "certain disclosures regarding the then-deteriorating U.S. housing market;" interestingly, Defendants concluded not to explain what those disclosures were. *Id.* at 12.  With respect to 2007-2 and 2007-5 offerings, Defendants argue that the 2007-7 prospectus supplement makes no representations about the common originator AHM, while Defendants argue that the 2006-7, 2006-8, 2006-10, and 2006-14 offerings inappropriately rely on Intervenors for the common originator even though Intervenors were not in the FAC, which was the subject of the March 26, 2010 Order. *Id.* at 9-10.

Plaintiffs' motion with respect to all 12 offerings is granted; Defendants' attempt to exclude the seven offerings is unpersuasive.  As Defendants are aware, I denied Defendants' motion to

dismiss Intervenors' claims in the January 3, 2013 Order, and Defendants do not explain why under *NECA* or otherwise, the Court should distinguish the originators of loans backing Intervenors' offerings, since it is undisputed that the Intervenors too are Plaintiffs. Similarly, Defendants do not explain why the risk disclosure in the 2007-1 prospectus supplement or lack of specific representations about AHM in the 2007-7 prospectus supplement is relevant under the holding in *NECA*, which reads in part that "plaintiff has standing to assert the claims of purchasers of certificates backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates." 693 F.3d at 148-149.

**B. The RALI Case**

The RALI Plaintiffs move the Court to reinstate the claims on the remaining 55 offerings. Plaintiffs argue that *NECA* applies because these offerings, like the four whose certificates Plaintiffs purchased, were all sponsored and issued by Defendants Residential Funding Corp. and Residential Accredited Loans, Inc., even though the 59 offerings were underwritten by ten different underwriters.[5] Plaintiffs also note that 57 of the RALI offerings share Homecomings Financial Networks, Inc. ("HFN"), which is the principal originator of the offerings purchased by Lead Plaintiffs, as the principal originator of the mortgage loans. RALI Pls.' Supp. 5. With respect to the two remaining offerings, RALI-2007-QH1 and 2006-QH1, Plaintiffs state that no specific originators were identified, but the prospectus supplements state that Residential Funding's underwriting guidelines were applied to all 59 offerings.[6] RALI Pls.' Supp. 9, n.7. The RALI FAC, in turn, specifically alleged the underwriting practices of HFN and the disregard of underwriting guidelines by Residential Funding. RALI FAC ¶¶ 219-32, 205-32.

RALI Defendants attempt to distinguish this case from *NECA* based on the ten different, unaffiliated underwriters, since in *NECA*, all of the offerings were sponsored, issued, and underwritten by the same defendants. RALI Defs.' Opp. 15. Defendants also argue that *NECA* is not applicable because there are two different registration statements and because the offerings involve different time periods, types of mortgages, and underwriting guidelines.

I am not persuaded by Defendants' arguments that concern the registration statements, time periods, types of mortgages, and underwriting guidelines, as Defendants fail to explain why or how those considerations would be relevant under *NECA*, perhaps because they cannot. The Second Circuit in its opinion emphasized the common originators for the "same set of concerns" analysis. 693 F.3d at 148-149. On the other hand, I agree with the RALI Defendants that under *NECA*, Plaintiffs may have class standing with respect to the offerings involving underwriters who did not

---

[5] The case has been stayed with respect to the issuer and the sponsor, who are both undergoing Chapter 11 reorganization.

[6] Plaintiff also explains that HFN was "a wholly-owned subsidiary of Residential Funding and all of HFN's loans were originated in accordance with Residential Funding's underwriting standards." RALI Pls.' 4, n.4.

underwrite Plaintiffs' offerings.  The first step of the class standing analysis under *NECA* is to determine whether the plaintiff has suffered an actual injury as a result of the defendant's illegal conduct, and this step is not satisfied here because the underwriter defendants are not identical. 693 F.3d at 162.  Such an inquiry is appropriate given the Second Circuit's recent holding that "whether or not Rule 23 would permit a plaintiff to represent a class against non-injurious defendants cannot affect the plaintiff's Article III standing to sue the non-injurious defendants." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012).  It is only at the second step of the class standing analysis, after finding Article III standing, that the district court is to examine whether "such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by *the same defendants*." *NECA*, 693 F.3d at 162 (emphasis added).  Although Plaintiffs are correct that the Second Circuit held that "the same set of concerns" is implicated in the MBS context to the extent that the certificates share the same loan originators, but there, the language was in a different context to wit: "suing the three Goldman Sachs entities that issued, underwrote and sponsored every Certificate from all 17 Trusts . . . . [and]  the same three defendants are alleged to have inserted nearly identical misrepresentations into the Offering Documents associated with *all* of the Certificates, whose purchasers plaintiff seeks to represent." *Id.* at 162 (emphasis in original).  In this case, to the extent that the underwriter defendants are different and Plaintiffs' actual injury is a result of only some underwriters' alleged illegal conduct, class standing under *NECA* is inappropriate. *See* 7 AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1785.1 (3d ed.) (commenting that the plaintiff's representative status under Rule 23 cannot cure the standing defect arising from the named plaintiff's injury which is attributable to only one of the defendant class members).

      Having denied Defendants' earlier motion to dismiss Intervenors' claims in my January 3, 2013 Order, I find that Plaintiffs have class standing only with respect to the offerings that share FHM as an originator and were underwritten by the same defendants: UBS, Citigroup, Goldman Sachs & Co., and GMAC/RFC Securities, the underwriters of the offerings purchased by Lead Plaintiffs, as well as Lehman Brothers and Deutsche Bank AG, the underwriters of the offerings purchased by Intervenors.  Relying on *NECA*, I must deny class standing for the 16 offerings underwritten by Bank of America/Merrill Lynch, Credit Suisse, JP Morgan/Bear Stearns, Morgan Stanley, or RBS.  Further, there is no class standing under *NECA* with respect to RALI 2007-QH1 and RALI 2006-QH1 even though they were underwritten by Goldman Sachs & Co. because Plaintiffs have not identified the same originators to meet the "same set of concerns" analysis. *See N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc*., No. 08 Civ. 5653, 2013 WL 357615, *8 (S.D.N.Y. Jan. 23, 2013) (holding that there is "no 'similar set of concerns' as to alleged misstatements regarding underwriting guidelines of originators generally where the common originator is not disclosed in the relevant offering materials").  As a result, I reinstate 37 of the 55

dismissed offerings in the March 2010 Order.

## Conclusion

I have considered the parties' remaining arguments and find them to be without merit. Harborview Plaintiffs' motion for reconsideration is GRANTED, and RALI Plaintiffs' motion for reconsideration is GRANTED in part and DENIED in part as set out above. The letter motions seeking for additional briefing is DENIED.

SO ORDERED
April 30, 2013
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.

7