**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

New Jersey Carpenters Vacation Fund and Boilermaker     :
Blacksmith National Pension Trust, On Behalf of         :
Themselves and All Others Similarly Situated,           :
                                                   :   08-CV-5093 (HB)
                                                   :
               Plaintiffs,   :   ECF Case
                                                   :
      -against-                 :
                                                   :
The Royal Bank of Scotland Group, plc, Greenwich        :   **Oral Argument Requested**
Capital Holdings, Inc., Greenwich Capital Acceptance,   :
Inc., Greenwich Capital Financial Products, Inc.,       :
Robert J. McGinnis, Carol P. Mathis, Joseph N. Walsh,   :
III, John C. Anderson, James M. Esposito, RBS           :
Securities Inc. f/k/a Greenwich Capital Markets, Inc.,  :
d/b/a RBS Greenwich Capital, Moody's Investors          :
Service, Inc., and The McGraw-Hill Companies, Inc.,     :
                                                   :
               Defendants.   :

---------------------------------------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFFS'**
**MOTION TO MODIFY THE CERTIFIED CLASS TO ENCOMPASS ADDITIONAL**
**OFFERINGS AND DESIGNATE ADDITIONAL CLASS REPRESENTATIVES**

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

*Attorneys for Defendants The Royal Bank of*
*Scotland Group, plc, RBS Holdings USA Inc. f/k/a*
*Greenwich Capital Holdings, Inc., RBS Acceptance*
*Inc. f/k/a Greenwich Capital Acceptance, Inc., RBS*
*Financial Products Inc. f/k/a Greenwich Capital*
*Financial Products, Inc., RBS Securities Inc. f/k/a*
*Greenwich Capital Markets, Inc., Robert J.*
*McGinnis, Carol P. Mathis, Joseph N. Walsh, III,*
*John C. Anderson, and James M. Esposito*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................... 3

ARGUMENT ........................................................................................................ 6

    I.      STANDARD ON THIS MOTION ........................................................... 6

    II.     PLAINTIFFS HAVE NOT ESTABLISHED THE REQUIREMENTS OF
             RULE 23 ........................................................................................... 6

          A.     Plaintiffs' Modified Class Does Not Satisfy The Commonality
                 Requirement ............................................................................. 6

          B.     Common Questions Do Not Predominate ................................... 9

                 1.     Plaintiffs' Modified Class Reintroduces The Temporal
                        Knowledge Disparities That Mandated Denial Of Plaintiffs'
                        Original Motion ................................................................. 9

                 2.     The Modified Class Includes Uniquely Situated Investors,
                        Raising  Knowledge Issues That Defeat Predominance .............. 12

                 3.     Plaintiffs Have Made No Showing That Damages Can Be
                        Assessed On A Class-Wide Basis ................................... 16

          C.     Class Treatment Is Not Superior ............................................. 18

          D.     The Putative Class Representatives Are Inadequate To Represent
                 The Proposed Class Or Any Subclasses .................................. 21

          E.     Plaintiffs Cannot Establish Numerosity As To Three Offerings .............. 24

CONCLUSION ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 23, 24

*Ansari v. N.Y. Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) ................................................................ 24

*Burka v. N.Y.C. Transit Auth.*, 110 F.R.D. 595 (S.D.N.Y. 1986) ................................................ 22

*Cashman v. Dolce Int'l/Hartford, Inc.*, 225 F.R.D. 73 (D. Conn. 2004) ...................................... 23

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) .............................................................. passim

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977) ........................................... 23

*Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176 (S.D.N.Y. 2005) ............................................... 7

*In re Currency Conversion Fee Antitrust Litig.*, 229 F.R.D. 57 (S.D.N.Y. 2005) ....................... 22

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98CIV.4318, 2000 WL
    1357509 (S.D.N.Y. Sept. 20, 2000) ........................................................................................ 22

*In re Dynex Capital, Inc. Sec. Litig.*, No. 05-cv-1897, 2011 WL 781215 (S.D.N.Y.
    Mar. 7, 2011) ............................................................................................................................ 23

*In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226 (S.D.N.Y. 2012) ............................ 8, 9

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ............................ 6, 10, 11, 15

*In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-md-2017, 2013 WL 440622
    (S.D.N.Y. Jan. 23, 2013) ......................................................................................................... 22

*In re Prestige Brands Holdings, Inc. Sec. Litig.*, No. 05-cv-6924, 2007 WL
    2585088 (S.D.N.Y. Sept. 5, 2007) ............................................................................................ 9

*In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437 (S.D.N.Y. 2013) ....................................... 22

*Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972) ............................................................... 9

*MacNamara v. City of N.Y.*, 275 F.R.D. 125 (S.D.N.Y. 2011) .................................................... 22

*Marisol v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .......................................................... 22, 23, 24

*Mayer v. Oil Field Sys. Corp.*, 803 F.2d 749 (2d Cir. 1986) ...................................................... 10

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ 5653, 2011
    WL 3874821 (S.D.N.Y. Aug. 16, 2011) .................................................................................... 8

*N.J. Carpenters Health Fund v. RALI Series 2006-QO1 Trust*, 477 Fed. App'x 809 (2d Cir. 2012) ................................................................ 4, 10, 11, 15

*N.J. Carpenters Health Fund v. Residential Capital LLC*, 288 F.R.D. 290 (S.D.N.Y. 2013) ........................................................................... 5, 23

*N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011) ......................................................................... passim

*N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-5093, 2012 WL 4865174 (Oct. 15, 2012) ............................................... passim

*N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08-cv-8781, 08-cv-5093, 2010 WL 5222127 (S.D.N.Y. Dec. 22, 2010) .......................... 5

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp.*, 709 F.3d 109 (2d Cir. 2013) ..................................................................................... 23

*N.J. Carpenters Vacation Fund. v. Royal Bank of Scot. Grp., plc.*, 720 F. Supp. 2d 254 (S.D.N.Y. 2010) ............................................................... 3

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ............................................................................ 2, 9, 23

*O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*, 559 F. Supp. 800 (S.D.N.Y. 1983) .................................................................................... 23

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) ............................................................................. 21

*Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. at 130 (S.D.N.Y. 2012) .............................................................................. 8

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97 (S.D.N.Y. 2011) ............................................................................... 8

*Rodriguez v. Gates*, No. CV99–13190GAF, 2002 WL 1162675 (C.D. Cal. 2002) .................... 19

*Shayler v. Midtown Investigations, Ltd.*, No. 12 Civ. 4685 (KBF), 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) ................................................... 24

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196 (2d Cir. 2008) ........................................................................... 6

*Tsereteli v. Residential Asset Sec. Trust 2006-A8*, 283 F.R.D. 199 (S.D.N.Y. 2012) ....................................................................................... 8

*UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010) ........................................ 10, 13

*Vasiliow Co., Inc. v. Anheuser-Busch, Inc.*, 117 F.R.D. 345 (E.D.N.Y. 1987) ............................ 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................ 7, 8, 9

## Other Authorities

Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rᴇᴠ.
   97 (2009) ..................................................................................................................... 7

## PRELIMINARY STATEMENT

Plaintiffs' motion to expand the previously certified classes in this case to include purchasers in twelve additional residential mortgage-backed securities ("RMBS") offerings should be denied because the proposed modified class does not satisfy the requirements of Rule 23.  Plaintiffs have not met their burden to come forward with *evidence*—as opposed to averments or allegations—showing that a single unified class should be certified to cover investors in fourteen different offerings, each of which are backed by different mortgage loans issued by different originators using different underwriting guidelines and which were offered at different times.  It is not enough for Plaintiffs to rely upon the Court's prior certification of sub-classes of purchasers in two offerings, which does not support certification of a broader, unified class of investors who purchased certificates in those offerings and twelve other securitizations.

*First*, under recent Supreme Court precedent, Plaintiffs' modified class does not meet Rule 23(a)'s commonality requirement since discovery and presentation of evidence that different originators failed to follow their lending guidelines for different loans backing different securitizations does not present a common question, nor is it susceptible to a common answer.

*Second*, any common issues do not predominate.  Plaintiffs' modified class reintroduces one of the impediments that led this Court to deny Plaintiffs' original motion for class certification and the Second Circuit to affirm that decision, namely that individualized knowledge inquiries would predominate given that putative class members had access to more or less publicly available information depending on the timing of their purchases.  Furthermore, individualized issues specific to particular investors still predominate.  ███████████
██████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████   If any class or

subclasses were certified, Defendants would conduct discovery and present individualized

defenses that these class members had knowledge of the purported misrepresentations and

omissions at issue.  Plaintiffs have also failed to demonstrate that damages can be determined on

a class-wide basis, as is required under *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013)

("*Comcast*"), further defeating predominance.

Third, Plaintiffs have not established that class treatment is superior.  Nine would-be

class members, in addition to Fannie Mae and Freddie Mac, whose investments collectively

account for more than $10 billion of the $25 billion of RMBS certificates at issue here, have

already initiated individual suits.  In other words, *forty percent* of the putative class, by value,

has already opted out, undermining Plaintiffs' argument that class treatment is necessary or

superior.  Individualized knowledge defenses will also transform the action into an

unmanageable series of mini-trials, making class treatment an inferior way to proceed.

Fourth, Lead Plaintiff N.J. Carpenters and Intervenor-Plaintiffs Midwest Operating

Engineers Pension Trust Fund ("Midwest OE") and Iowa Public Employees' Retirement System

("IPERS") are inadequate class representatives as to offerings in which they purchased no

certificates.  Even if they have "class standing" under *NECA-IBEW Health & Welfare Fund v.*

*Goldman Sachs & Co.* ("*NECA*"), the Second Circuit made clear that class treatment does not

automatically follow and requires a different inquiry.  693 F.3d 145, 165 (2d Cir. 2012).  Here,

the proposed class representatives have not shown that they will adequately represent the

interests of class members who purchased in different offerings than they did.  To the contrary, it

is highly likely that conflicts will emerge between investors in different offerings.

2

*Fifth*, Plaintiffs cannot establish that numerosity is met with respect to three of the offerings, in which only a handful of investors purchased certificates.

For these reasons and as discussed further below, Plaintiffs' motion should be denied.

## BACKGROUND

On May 19, 2009, Plaintiffs filed their first amended complaint, asserting claims under Sections 11, 12 and 15 of the 1933 Act relating to their purchases of certificates in certain RMBS offerings. Plaintiffs alleged in that complaint, and continue to allege, that the offering documents for each of the different securitizations contained material misstatements or omissions in their descriptions of the lending practices of the loan originators. On March 26, 2010, the Court granted Defendants' motion to dismiss claims other than those relating to Harborview 2006-4 and Harborview 2007-7 on the grounds that Plaintiffs lacked standing to bring claims on offerings in which they did not personally invest. *N.J. Carpenters Vacation Fund. v. Royal Bank of Scot. Grp., plc.*, 720 F. Supp. 2d 254, 272-73 (S.D.N.Y. 2010).

On July 15, 2010, Plaintiffs sought certification of a class comprising all investors who purchased certificates at any time in Harborview 2006-4 and 2007-7. On January 18, 2011, this Court denied certification, holding that Plaintiffs failed to satisfy Rule 23(b)(3)'s predominance and superiority requirements. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011) ("*N.J. Carpenters I*").[1] Specifically, the Court concluded that Defendants had presented substantial evidence demonstrating that differences in putative class members' knowledge of the loan origination practices at issue would require individualized inquiries. The evidence showed that putative class members potentially had divergent

---

[1] Defendants' incorporate and reassert, without repeating herein, their arguments and evidence in opposition to Plaintiffs' prior class certification motions.

knowledge of those practices, based on (i) their activities investing or participating in RMBS securitizations, and (ii) variations in publicly available information depending on the timing of their purchase, leading to individualized inquiries relevant to Defendants' knowledge defense.

The Second Circuit, after granting interlocutory review, affirmed *N.J. Carpenters I* on April 30, 2012. *N.J. Carpenters Health Fund v. RALI Series 2006-QO1 Trust*, 477 Fed. App'x 809 (2d Cir. 2012) ("*N.J. Carpenters II*"). On the question of predominance, the Circuit stated:

> Under the proposed class definition[] . . . , the district court found that purchasers of each security who purchased at different times would have had available different levels of public information. Because public information could constitute circumstantial evidence of individual purchaser knowledge, the defendants would have stronger or weaker evidence of purchaser knowledge depending on purchase timing. Such predicted variation supported the judge's conclusion that individual knowledge inquiries would be required. Furthermore, because of the differences in purchase timing, the chosen class definition also removed the possibility that the knowledge defense could be adjudicated on a class basis using common publicly available evidence.

*Id.* at 814. The Second Circuit's affirmance was without prejudice to Plaintiffs renewing their motion in the district court on a fuller record and/or for a narrower class. *Id.* at 814-15.

Plaintiffs subsequently moved to certify a class comprising investors in Harborview 2006-4 and 2007-7 who purchased certificates before their first credit rating downgrade. On October 15, 2012, the Court granted Plaintiffs' motion, finding that Plaintiffs had established that no putative class member had access to the loan files for the thousands of loans backing the certificates, and did not receive the results of loan-level "reunderwriting" due diligence that Defendants conducted on loans backing the certificates. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-5093, 2012 WL 4865174 (Oct. 15, 2012) ("*N.J. Carpenters III*"). The Court ruled that this "likely" meant that class members would be subject to the same knowledge defenses. *Id.* at *3. However, consistent with its initial opinion and in accordance

4

with the Second Circuit's affirmance, the Court created two subclasses and narrowed their periods to minimize "the timing issue." *Id.* at *3-4. The Court defined the two subclasses as comprising "initial purchasers who bought the securities directly from the underwriters or their agents no later than ten trading days after the offering date." *N.J. Carpenters Health Fund v. Residential Capital LLC*, 288 F.R.D. 290, 296 (S.D.N.Y. 2013) ("*N.J. Carpenters IV*").

On April 30, 2013, this Court granted Plaintiffs' motion for reconsideration of its March 26, 2010 order dismissing from the original complaint for lack of standing all but two of the offerings, based on an intervening change of law, namely the Second Circuit's decision in *NECA*. This Court's ruling reinstated six previously-dismissed offerings. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08-cv-8781, 08-cv-5093, 2013 WL 1809767 (S.D.N.Y. Apr. 30, 2013). Earlier, on December 22, 2010, the Court had granted the motion to intervene of three additional plaintiffs, including Midwest OE and IPERS. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, Nos. 08-cv-8781, 08-cv-5093, 2010 WL 5222127 (S.D.N.Y. Dec. 22, 2010). That decision had effectively reinstated six other previously-dismissed offerings. The twelve offerings reinstated on December 22, 2010 and April 30, 2013 are collectively referred to as the "Reinstated Offerings."

On May 13, 2013, Plaintiffs filed their Corrected Consolidated Third Amended Securities Class Action Complaint (the "Complaint" or "TAC"), asserting claims on Harborview 2006-4 and 2007-7 and the Reinstated Offerings. Plaintiffs now move to "modify" the subclasses the Court previously certified for the Harborview 2006-4 and 2007-7 offerings, to create a single unified class comprising those investors as well as investors in the Reinstated Offerings who purchased directly from the underwriter or its agents within ten trading days of each offering (the

"Modified Class").  Plaintiffs further move to appoint N.J. Carpenters, Midwest OE, and IPERS as class representatives.

## ARGUMENT

### I.  STANDARD ON THIS MOTION

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast*, 133 S. Ct. at 1432.  Plaintiffs bear the burden of proving by a preponderance of the evidence that the requirements of Rule 23 have been met and that class certification is warranted.  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–03 (2d Cir. 2008).  The court must assess all the evidence and make findings of law and fact.  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("[T]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met."); *see also Comcast*, 133 S. Ct at 1432 (holding that plaintiff must affirmatively "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)").  Plaintiff must also satisfy the requirements of Rule 23(b)(3) through "evidentiary proof."  *Comcast*, 133 S. Ct at 1432.

### II.  PLAINTIFFS HAVE NOT ESTABLISHED THE REQUIREMENTS OF RULE 23

#### A.  Plaintiffs' Modified Class Does Not Satisfy The Commonality Requirement

Plaintiffs mistakenly argue that this Court's prior determination that Rule 23's commonality requirement was satisfied for earlier proposed subclasses is conclusive as to their proposed Modified Class.  Pls.' Br. at 3 (citing *N.J. Carpenters I*, 272 F.R.D. at 164).  At the time of the Court's prior ruling, the law in this Circuit in the securities class action context was that "where putative class members have been injured by similar material misrepresentations," commonality was satisfied.  *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y.

2005).  In its prior certification rulings, this Court held that this relatively low standard was satisfied, stating that "Plaintiffs easily demonstrate that their claims share common questions of both law and fact with absent class members."  *N.J. Carpenters I*, 272 F.R.D. at 164.

Subsequently, the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes* clarified that the commonality test is *not* satisfied by "the raising of common questions—even in droves," since "'[a]ny competently crafted class complaint literally raises common 'questions''" such as whether the defendants violated the same provision of law and "[w]hat remedies should [the class] get?"  131 S. Ct. 2541, 2551 (2011) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131-32 (2009)).  Rather, "[w]hat matters" for Rule 23 commonality is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation," and for there to be "common answers," class members' claims must "depend upon a common contention" whose "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*. at 2551 (quotation omitted).  As the Supreme Court concluded, where there is no central issue that cuts across every class member's claim, or where a central issue is not capable of resolution through common evidence, commonality is lacking and no class can be certified.  *Id*. at 2551, 2555-57.

In arguing here that common issues abound across the Modified Class with the addition of twelve new offerings, Plaintiffs advance several generic and broad questions such as "whether Defendants violated the Securities Act," "whether the Offering Documents . . . misstated material facts about the underlying mortgage loans" and "to what extent the members of the Class have sustained damages and the proper measure of damages."  Pls.' Br. at 12.  Under *Wal-Mart*, however, "[r]eciting these questions *is not sufficient* to obtain class certification."  131 S. Ct. at 2551 (emphasis added).  "What matters" is whether those questions are capable of

generating common answers across every offering, and can be resolved in "one stroke" through

class-wide evidence.  *Id.* (quotation omitted).  Here, in a single unified class, they cannot.

The new offerings, which Plaintiffs improperly try to shoehorn into a single class, are

each backed by different loans, some from a different mix of originators.  In fact, two of the new

offerings—Harborview 2006-8 and 2006-10—do not contain a single loan from Countrywide or

American Home, the primary originators of loans backing the two offerings as to which

subclasses have been certified.  As to those offerings and others that Plaintiffs seek to add to the

class, there simply is no common evidence that will resolve "in one stroke" the core questions in

this case of whether, as to each of the fourteen different offerings presently at issue, the

description of originators' lending guidelines in each set of offering materials was misleading.

*Wal-Mart*, 131 S. Ct. at 2556-57.

Plaintiffs are also mistaken that a finding of commonality as between different offerings

would be "in accord" with decisions by other district courts in this Circuit granting certification

of RMBS investor classes.  Pls.' Br. at 11 n.9, 12 n.12.  To the contrary, this Court's decision in

*Goldman Sachs* and the decisions in *Tsereteli* and *DLJ* are irrelevant here as each of those cases

involved only *one* offering.  *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280

F.R.D. at 130, 133 (S.D.N.Y. 2012); *Tsereteli v. Residential Asset Sec. Trust 2006-A8*, 283

F.R.D. 199, 205 (S.D.N.Y. 2012); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No.

08 Civ 5653, 2011 WL 3874821, at *1 (S.D.N.Y. Aug. 16, 2011).  The only district court cases

even remotely relevant are *In re IndyMac Mortgage-Backed Securities Litigation*, 286 F.R.D.

226 (S.D.N.Y. 2012)  and *Public Employees' Retirement System of Mississippi v. Merrill Lynch

& Co., Inc.*, 277 F.R.D. 97 (S.D.N.Y. 2011) ), the former of which involved offerings backed by

loans from only one originator (whereas here there are dozens) and therefore in no way support

Plaintiffs' contention that claims relating to offerings backed by loans from *different* originators satisfies the commonality test. *In re IndyMac*, 286 F.R.D. at 230 . Further, both *IndyMac* and *Merrill*, in finding commonality, provided little, if any, analysis and based their holdings on the pre-*Wal-Mart* decisions in *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972) and *In re Prestige Brands Holdings, Inc. Securities Litigation*, No. 05-cv-6924, 2007 WL 2585088, at *2 (S.D.N.Y. Sept. 5, 2007), two non-RMBS cases that involved misstatements in a *single* prospectus. Neither of those cases supports Plaintiffs' argument that alleged misstatements in different prospectus supplements concerning different lending practices applied to different loans raises a common issue that can be resolved in one stroke through common evidence.

Finally, Plaintiffs are wrong that this Court's determination that they have "class standing" under *NECA* is "just another way of saying there are questions of law or fact common to the class." Pls.' Br. at 11-12 (quotation omitted). In *NECA*, the Second Circuit "emphasize[d] that it is by no means a foregone conclusion that, because plaintiff has standing to assert . . . claims on behalf of Certificate-holders from different . . . Offerings . . . , a putative class compromised of such Certificate-holders should be certified." 693 F.3d at 165. Here, Plaintiffs have failed to show that with the proposed addition of investors in twelve new offerings, purported issues of "central" importance to the Modified Class exist and can be resolved collectively through joint evidence. *Wal-Mart*, 131 S. Ct. at 2551.

**B.    Common Questions Do Not Predominate**

**1.    Plaintiffs' Modified Class Reintroduces The Temporal Knowledge Disparities That Mandated Denial Of Plaintiffs' Original Motion**

Plaintiffs have not carried their burden of showing that common questions predominate. Their motion is based on the false premise that the Court previously certified a single unified class of investors in the Harborview 2006-4 and 2007-7 offerings, rather than subclasses of

9

investors in each offering.  *See* Pls.' Br. at 1 n.1.  But the previously "certified class" was in fact

two distinct subclasses, one for each of the two offerings at issue.  *N.J. Carpenters III*, 2012 WL

4865174, at *1 n.1 (highlighting that the Court was certifying a "subclass" for each offering).

Plaintiffs acknowledged as much in correspondence with the Court.  Ex. 1 at 2 (discussing the

"Harborview 2006-4 subclass" and the "Harborview 2007-7 subclass").[2]

      Subclasses were necessary to ameliorate the "timing issue" that, among other things, led

this Court to deny Plaintiffs' initial motion and the Second Circuit to affirm that decision, on the

grounds that individualized issues concerning particular investors' knowledge predominated over

questions common to the proposed class.[3]  *N.J. Carpenters II*, 477 Fed. App'x  at 813-14; *N.J.

Carpenters I*, 272 F.R.D. at 168; *cf. UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d

Cir. 2010).  This Court and the Second Circuit concluded that investors who purchased their

certificates at different times had access to different publicly available information and thus were

subject to individualized knowledge defenses.  *See N.J. Carpenters II*, 477 Fed. App'x at 814

("[B]ecause of the differences in purchase timing, the chosen class definition . . . removed the

possibility that the knowledge defense could be adjudicated on a class basis using common

publicly available evidence."); *N.J. Carpenters I*, 272 F.R.D. at 169-70 (same).  On Plaintiffs'

renewed motion for class certification, this Court again rejected Plaintiffs' months-long class

period and instead certified two subclasses limited to "initial purchasers who bought the

---

[2] Unless otherwise specified, "Ex. __" refers to the exhibits attached to the Declaration of Alan C. Turner in Support of Defendants' Memorandum of Law in Opposition to Lead Plaintiffs' Motion to Modify the Certified Class to Encompass Additional Offerings and Designate Additional Class Representatives, submitted contemporaneously herewith.

[3] Defendants are not liable to investors who knew about originators' lending practices that were allegedly misstated in or omitted from the offering documents.  *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 43-44 (2d Cir. 2006) ("*IPO*"); *Mayer v. Oil Field Sys. Corp.*, 803 F.2d 749, 756 (2d Cir. 1986).

securities directly from the underwriters or their agents no later than ten trading days after the offering date." *N.J. Carpenters IV*, 288 F.R.D. at 296.

Plaintiffs now seek to certify a class comprising a far larger population of investors who bought certificates in ten-day trading periods following twelve additional offerings. Plaintiffs' Modified Class thus revives the timing issue that this Court's prior certification order sought to address, by forcing into a single unified class investors who purchased certificates at different times over an eighteen-month period. Investors in any particular ten-day trading period would have more or less publicly available information than investors in other ten-day trading periods depending on what information became public in between. These temporal differences in knowledge are illustrated in timelines submitted with this motion, showing information that became public at different times as to different originators whose loans back multiple offerings at issue in this action. *See* Ex. 2 (timeline showing information relating to Countrywide); Ex. 3 (same as to American Home); Ex.4 (same as to Downey).

At the certification stage, the Court is required to determine not the *merits* of Defendants' knowledge defense, but rather "the *certification* question of whether common liability issues predominate over individual knowledge defenses." *N.J. Carpenters II*, 477 Fed. App'x at 813 (2d Cir. 2012) (citing *IPO*, 471 F.3d at 43–44 & n. 14). In other words, it is not Defendants' burden under Rule 23 to prove that putative class members had actual knowledge of the alleged misrepresentations or omissions; rather, Plaintiffs must show that the question of whether putative class members had knowledge will be the subject of generalized, not individual proof. Here, Plaintiffs have not done so, and their Modified Class comprising fourteen different ten-day trading periods reintroduces the temporal knowledge disparities that previously required denial of certification, thus defeating their assertion that common issues predominate here.

**2.      The Modified Class Includes Uniquely Situated Investors, Raising Knowledge Issues That Defeat Predominance**





---

[4] This inquiry may involve mixed questions of fact and law, which also may defeat predominance where, as here, such questions are unique to a subset of class members.  *See UFCW*, 620 F.3d at 131 (common "legal . . . questions" must predominate for class to be certified).



*see also N.J. Carpenters I*, 272
F.R.D. at 168-69 ("Defendants have mustered a good deal of documentary evidence imputing knowledge
to Western Asset Management Company, which was Plaintiff Boilermaker's investment advisor").

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

According to Plaintiffs, this kind of "specific evidence" is irrelevant, since in Plaintiffs' view the only way putative class members could have gained *actual knowledge* of the misrepresentations was by examining the thousands of underlying loan files relevant to each securitization (containing loan applications, mortgage notes, credit reports, and the like) or by receiving due diligence reports from Defendants.  *See* Pls.' Br. at 18-20.  This logic fails.  *First*, Defendants need not establish on this motion that putative class members had actual knowledge. Proving actual knowledge is for trial, not class certification, just as the Second Circuit held in *N.J. Carpenters II*.  477 Fed. App'x at 813.  At the class certification stage, it is *Plaintiffs*' *burden* to show that common, class-wide questions capable of generating common answers will predominate over the individualized inquiries into knowledge that will inevitably be required here ██████████████████████████████████████████████████ *IPO*, 471 F.3d at 43-44; *N.J. Carpenters II*, 477 Fed. App'x at 813.

*Second*, Plaintiffs have not shown that access to loan files or to Defendants' due diligence on those loans are the only methods by which putative class members could have learned about the lending practices that were allegedly misstated.  ██████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ Just as this Court

previously concluded that Fannie Mae and Freddie Mac's involvement in two of the offerings gave "rise to a reasonably reliable inference that they possessed at least some knowledge of underwriting practices," so too do the facts relating to other putative class members ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████  *N.J. Carpenters I*, 272 F.R.D. at 169.[6]

### 3. Plaintiffs Have Made No Showing That Damages Can Be Assessed On A Class-Wide Basis

In *Comcast*, the Supreme Court held, contrary to this Court's conclusion in *N.J. Carpenters I*, 272 F.R.D. at 167, that to certify a Rule 23(b)(3) class the plaintiff must provide a methodology for proving damages on a class-wide basis, otherwise "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."  133 S. Ct. at 1433.  In so holding, the Supreme Court rejected the premise that "*any* method of measurement is acceptable so long as it can be applied classwide."  *Id.* (emphasis in original).  Rather, as *Comcast* held, a plaintiff must advance a methodology that differentiates between damages caused by the defendant's allegedly unlawful conduct and "damages that are not the result of the wrong," *id.* at 1434, and certification is only appropriate if, among other things, the court is satisfied after a "rigorous analysis" that plaintiff's methodology "measure[s] only those damages attributable to" plaintiff's theory of liability such that damages are "susceptible of measurement across the entire class."  *Id.* at 1433.

---

[6] Plaintiffs cite the Court's statement that "the record shows that even the most sophisticated Class members did not have access to the actual due diligence results and loan files for the certificates at issue and are therefore likely to be subject to the same knowledge and due diligence defense."  *N.J. Carpenters III*, 2012 WL 4865174, at *3 (quoted in Pls.' Br. at 19).  But the Court is now confronted with a different proposed class, different putative class members, and a different record, and it should not automatically find predominance satisfied solely because it did so in the past based on a different record.

Here, Plaintiffs utterly fail to make that showing or provide any methodology for determining damages of investors in each class of certificates.  They have submitted no expert or any other evidence concerning a damages methodology for the twelve offerings they seek to add.

Plaintiffs mistakenly contend that the existence of a statutory damages formula in Section 11(e) of the Securities Act excuses presentation at the class certification stage of a damages model that satisfies the standard set forth in *Comcast*.  Pls.' Br. at 12 n.11.  Even if it could be described as a damages methodology or model, which it is not, Section 11(e) does not satisfy *Comcast* because the statutory formula does not "measure only those damages attributable to" defendants' alleged misconduct while weeding out "damages that are not the result of the wrong," as *Comcast* requires.  133 S. Ct. at 1433-34.  Thus, Plaintiffs' bare reliance on Section 11(e)'s statutory formula presents the same problems the Supreme Court held defeated class treatment in *Comcast*.  133 S. Ct. at 1431, 1433.[7]  Since it is *Plaintiffs' burden* at the certification stage to advance a uniform damages model that can assess on a class-wide basis the harm from Defendants' alleged conduct, and Plaintiffs have made no effort to do so here, this Court should deny certification.

### C.  Class Treatment Is Not Superior

On Plaintiffs' original motion for class certification, this Court found that Plaintiffs had not established that class treatment would be superior since, among other reasons, the proposed class "consist[ed] of large, institutional and sophisticated investors with the financial resources and incentive to pursue their own claims."  *N.J. Carpenters I*, 272 F.R.D. at 170; *see also id.* ("To determine whether class treatment is the superior form of adjudication, a court may consider (1) the interest of the class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation already commenced by or

---

[7] Furthermore, damages under Section 11(e) are determined by the "value" of a security, which is not the equivalent of market price, even where a market exists.  *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048-49 (2d Cir. 1995).  And here, the offering materials expressly warned investors that there would be "no assurance that a secondary market will develop following the issuance and sale of the securities" and that, even if a market did develop, investors "may not be able to sell [their] securities when [they] wish to or at the price [they] want."  Ex. 37 at 39 (Harborview 2006-14 Prospectus).

against class members; (3) the desirability of concentrating the litigation in a particular forum;

and (4) difficulties likely to be encountered in the management of a class action.").  This has

indeed been borne out with respect to the Harborview offerings at issue in this action, as to

which *eleven* investors have already initiated individual actions asserting claims on more than

*$10 billion dollars* of certificate purchases.  In other words, investors whose claims represent

*forty percent* of the roughly $25 billion original principal balance covered by the proposed class

have already eschewed class treatment as inferior to their own individual suits.  *See Rodriguez v.*

*Gates*, No. CV99–13190GAF, 2002 WL 1162675, at *12 (C.D. Cal. 2002) ("the existence of

litigation indicates that some of the interested parties have decided that individual actions are an

acceptable way to proceed, and even may consider them preferable to a class action.").

| Investors That Have Already Opted Out | Original Principal Balance |
|---|---|
| ███████ | ████ |
| ████ | ████ |
| █████ | ██████ |
| ████ | █████ |
| ████ | █████ |
| ███████ | █████ |
| █████ | █████ |
| █████ | ████ |



| Investors That Have Already Opted Out | Original Principal Balance |
|---|---|
| ███████ | ████ |
| ████████ | ████ |
| ████████ | ████ |
| ███ | █████ |

On Plaintiffs' original motion, this Court also found that Plaintiffs failed to establish superiority on the ground that the action would prove inefficient and difficult to manage: "Were I to certify the proposed classes the Court would have to hear significant individualized evidence on, among other things, each purchaser's knowledge . . . . The necessity of hearing all this individualized evidence defeats the requisite superiority of class treatment." *N.J. Carpenters I*, 272 F.R.D. at 170. This Court's original reasoning still applies with equal if not greater force because the Modified Class would expand these case management challenges from two offerings to fourteen offerings.



The need to gather and present evidence to substantiate individualized knowledge defenses would expand the scope of discovery to encompass numerous absent class members, complicate dispositive motions with class member-specific arguments, and transform trial into a series of hearings on each class

member's knowledge.[19]  Such a proceeding would be all but unmanageable, defeating the superiority of class treatment.

### D.    The Putative Class Representatives Are Inadequate To Represent The Proposed Class Or Any Subclasses

Plaintiffs seek to appoint N.J. Carpenters, Midwest OE, and IPERS as representatives of investors who purchased in the fourteen offerings at issue.  As the chart below reflects, the putative representatives purchased certificates in only *seven* offerings and, if this Court grants Defendants' pending motion for reconsideration in light of *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) ("*IndyMac*") and dismisses IPERS and Midwest OE's claims as time-barred (as it should), that number drops to just *two* offerings:

| Offering | Putative Representative That Purchased In Offering |
|---|---|
| Harborview 2006-4 | N.J. Carpenters |
| Harborview 2006-5 | None |
| Harborview 2006-6 | None |
| Harborview 2006-7 | Midwest OE (claim time-barred under *IndyMac*) |
| Harborview 2006-8 | None |
| Harborview 2006-9 | Midwest OE & IPERS (both claims time-barred under *IndyMac*) |
| Harborview 2006-10 | IPERS (claim time-barred under *IndyMac*) |
| Harborview 2006-11 | IPERS (claim time-barred under *IndyMac*) |
| Harborview 2006-12 | IPERS (claim time-barred under *IndyMac*) |
| Harborview 2006-14 | None |
| Harborview 2007-1 | None |
| Harborview 2007-2 | None |
| Harborview 2007-5 | None |
| Harborview 2007-7 | Midwest OE[20] |

---

[19] On Plaintiffs' renewed motion for class certification, the Court found that Plaintiffs had established superiority since "the narrower class definitions . . . assure[d] [the Court] that many affirmative defenses could . . . be subject to generalized proof."  *N.J. Carpenters III*, 2012 WL 4865174, at *5.  However, the narrowing of the time period to ten trading days does not alter the fact that the proposed Modified Class includes investors whose knowledge differs and will need to be explored in discovery and at trial.

[20] Putative representative IPERS also purchased certificates in HVMLT 2007-7, but this Court dismissed IPERS's claims with prejudice since it sold its certificates at a profit.

N.J. Carpenters, Midwest OE and IPERS are inadequate to represent investors who purchased in different offerings than they did.  Indeed, courts in this Circuit have long held that where, as here, subclasses are required, a "prerequisite to certification . . . is a finding that the subclass representative is a member of the subclass that he seeks to represent."  *Burka v. N.Y.C. Transit Auth.*, 110 F.R.D. 595, 601 (S.D.N.Y. 1986); *see also In re Currency Conversion Fee Antitrust Litig.*, 229 F.R.D. 57, 64 (S.D.N.Y. 2005) ("because no named plaintiff is a Diners Club cardholder, this Court declines to certify Diners Club subclass."); *MacNamara v. City of N.Y.*, 275 F.R.D. 125, 143-44 (S.D.N.Y. 2011) (denying certification of subclass where plaintiff "experienced no cognizable First Amendment injury" and therefore was neither a member nor an adequate representative of subclass seeking to assert First Amendment claims); *accord Marisol v. Giuliani*, 126 F.3d 372, 378-79 (2d Cir. 1997) (affirming certification but instructing district court to create subclasses in order to "identify (1) the discrete legal claims which are at issue, (2) the named plaintiffs who are aggrieved under each individual claim at issue, and (3) the subclasses that each named plaintiff represents," so that the court can "weed out, and, if necessary, dismiss those claims for which no named plaintiff is an adequate representative."). Simply put, N.J. Carpenters, IPERS and Midwest OE are inadequate to represent investors in other offerings in which they did not invest and would have interests potentially antagonistic to those investors regarding the direction of the litigation and presentation of evidence.[21]

---

[21] Decisions in this district certifying RMBS investor classes are not to the contrary, because the classes comprised only those offerings in which named plaintiffs purchased.  Plaintiffs' other authorities (Pls.' Br. at 15) are largely irrelevant.  *In re Lehman Bros. Securities & ERISA Litigation*, No. 09-md-2017, 2013 WL 440622, at *2-4 (S.D.N.Y. Jan. 23, 2013), *In re Winstar Communications Securities Litigation*, 290 F.R.D. 437  (S.D.N.Y. 2013), and *In re Dreyfus Aggressive Growth Mutual Fund Litigation*, No. 98CIV.4318, 2000 WL 1357509, at *5 (S.D.N.Y. Sept. 20, 2000), each concerned certification of a single class of investors who purchased in one of many offerings of corporate bonds or notes, where the alleged misstatements, unlike here, were the same for each offering.  They do not support a finding that the putative representatives here are adequate to represent investors alleging different misstatements

*(footnote cont. next page)*

To the extent this Court previously determined that N.J. Carpenters could adequately represent investors who purchased certificates in Harborview 2007-7—an offering in which N.J. Carpenters did not invest, *see N.J. Carpenters IV*, 288 F.R.D. at 296—Defendants respectfully disagree with that conclusion and submit that it should not be extended to permit representation of investors in still more offerings in which N.J. Carpenters did not invest.  Such a ruling would be inconsistent with the decisions discussed above that prohibit a putative class representative from representing a subclass of which it is not a member, and is contrary to Supreme Court and Second Circuit authority that a putative class representative cannot adequately represent a monolithic class composed of members with disparate claims that depend on different evidence to prove liability.[22]  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626-27 (1997); *Marisol*, 126 F.3d at 378-79.  Plaintiffs ask this Court to ignore those authorities and hold that the putative class representatives can adequately represent investors in offerings other than those in which

---

concerning different loan pools issued by different originators.  *In re Dynex Capital, Inc. Sec. Litig.*, No. 05-cv-1897, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) is similarly off-point.  There the Court, in assessing typicality, determined that "it would be premature to defeat class certification on the basis that some Plaintiff did not purchase every single security forming the basis of the claims."  *Id.* at *3.  Defendants here do not challenge typicality and the issue certainly is not premature.  The putative representatives have no direct interest in the offerings in which they did not invest and thus under *Marisol* this Court should deny certification as to them.

[22] It also is contrary to the Second Circuit's opinion in *NECA* that a putative representative potentially has "class standing" only as to offerings issued under the *same shelf registration statement* and that raise the "same set of concerns."  *NECA*, 693 F.3d at 148-49; *see also N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp.*, 709 F.3d 109, at 128 (2d Cir. 2013).  N.J. Carpenters purchased certificates in Harborview 2006-4, which was issued under a different shelf registration statement and is backed by different originators' loans than Harborview 2007-7, and thus it lacks class standing to assert claims as to that offering; *a fortiori* it is also an inadequate representative.  *See E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403-04 (1977) (plaintiffs who suffered no injury as a result of defendant's conduct were inadequate class representatives); *Cashman v. Dolce Int'l/Hartford, Inc.*, 225 F.R.D. 73, 90 (D. Conn. 2004) ("because . . . Plaintiffs lack standing to maintain an action on their own behalf, they cannot be considered an adequate party to act as a representative plaintiff in this class action"); *Vasiliow Co., Inc. v. Anheuser-Busch, Inc.*, 117 F.R.D. 345, 348 (E.D.N.Y. 1987) ("[plaintiff] is [inadequate] representative as it lacks standing to assert the claims delineated in the complaint."); *accord O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*, 559 F. Supp. 800, 804 (S.D.N.Y. 1983) ("the standing requirement is basic, and we are unaware of any authority permitting its abrogation even where, as here, there is no reason to doubt the named plaintiff's . . . ability adequately to represent the proposed class").

they purchased.  As both *Amchem* and *Marisol* instruct, the Court must "identify . . . the named plaintiffs who are aggrieved" under each claim and "weed out, and, if necessary, dismiss those claims for which no named plaintiff is an adequate representative," *Marisol*, 126 F.3d at 378-79, rather than ignore the significant differences among claims as to each offering in an attempt to appoint representatives of an unwieldy class as a matter of administrative convenience.  *See Amchem*, 521 U.S. at 627.

**E.      Plaintiffs Cannot Establish Numerosity As To Three Offerings**

If the Court were to split Plaintiffs' proposed unified class into subclasses for each offering, each subclass would have to satisfy, among other things, Rule 23(a)'s numerosity requirement.  *See, e.g.*, *Shayler v. Midtown Investigations, Ltd.*, No. 12 Civ. 4685 (KBF), 2013 WL 772818, at *5-6 (S.D.N.Y. Feb. 27, 2013) (finding subclasses fail to meet numerosity). Plaintiffs cannot do so for the Harborview 2006-6, 2006-11 and 2007-2 offerings.  ███ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████  This falls far short of satisfying Rule 23(a)'s numerosity requirement.  *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) ("Generally speaking, courts will find that the 'numerosity' requirement . . . has not been satisfied when the class comprises 21 or fewer.").

████████████████████████████████████████████████████████████████ ████████████████

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated: New York, New York
        September 13, 2013

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: _____

Thomas C. Rice (trice@stblaw.com)
Alan Turner (aturner@stblaw.com)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants The Royal Bank of
Scotland Group, plc, RBS Holdings USA Inc. f/k/a
Greenwich Capital Holdings, Inc., RBS Acceptance
Inc. f/k/a Greenwich Capital Acceptance, Inc., RBS
Financial Products Inc. f/k/a Greenwich Capital
Financial Products, Inc., RBS Securities Inc. f/k/a
Greenwich Capital Markets, Inc., Robert J.
McGinnis, Carol P. Mathis, Joseph N. Walsh, III,
John C. Anderson, and James M. Esposito*

25