UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NEW JERSEY CARPENTERS HEALTH FUND, :
NEW JERSEY CARPENTERS VACATION FUND :
And BOILERMAKER BLACKSMITH NATIONAL :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated, :
  :
  :
                        Plaintiffs, :
  :      08 CV 8781 (HB)
     - against - :
  :
RESIDENTIAL CAPITAL, LLC, et al., :
  :
                        Defendants. :
  :
------------------------------------------------------------------------x    OPINION AND ORDER
NEW JERSEY CARPENTERS VACATION FUND :
And BOILERMAKER BLACKSMITH NATIONAL :
PENSION TRUST, on Behalf of Themselves and All :
Others Similarly Situated, :
  :
  :
                        Plaintiffs, :
  :      08 CV 5093 (HB)
     - against - :
  :
THE ROYAL BANK OF SCOTLAND GROUP, PLC, :
et al., :
  :
                        Defendants. :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

      Before this Court are motions to modify the certified classes to encompass additional offerings and designate additional class representatives submitted by lead plaintiffs for two cases, 08 Civ. 5093 (the "Harborview" case) and 08 Civ. 8781 (the "RALI" case) (collectively "Plaintiffs"), pursuant to Fed. R. Civ. P. 23(c)(1)(C). Plaintiffs bring claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k(a), 77*l*(a)(2) & 77o, alleging that the defendants in both cases ("Harborview Defendants" and "RALI Defendants") made false and misleading statements in the offering documents of mortgage-backed securities ("MBS") with respect to their compliance with underwriting guidelines. For the reasons set forth below, Plaintiffs' motions to modify the class and designate new class representatives are GRANTED in part and DENIED in part.

1

**DISCUSSION**

"It is well-established that a court has the inherent power and discretion to redefine and modify a class in a way which allows maintenance of an action as a class action." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 241 F.R.D. 435, 438 (S.D.N.Y. 2007) (internal citations and quotation marks omitted); *see also Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) ("[D]istrict court is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted."). In my prior opinions, I found that Plaintiffs satisfied the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, *see N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd*, 2012 WL 1481519 (2d Cir. Apr. 30, 2012)("*N.J. Carpenters I*"), and that the Rule 23(b) requirements of predominance and superiority were met, *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 08 CV 8781 HB, 2012 WL 4865174 (S.D.N.Y. Oct. 15, 2012), *modified in part,* 288 F.R.D. 290 (S.D.N.Y. 2013)("*N.J. Carpenters II"*). Ultimately, in each case, I certified a class of "initial purchasers who bought the securities directly from the underwriters or their agents no later than ten trading days after the offering date." *N. J. Carpenters Health Fund v. Residential Capital, LLC*, 288 F.R.D. 290, 296 (S.D.N.Y. 2013)("*N.J. Carpenters III"*). Plaintiffs' present motions to modify the classes and designate additional class representatives stem from those decisions, as well as this Court's prior decisions on Plaintiffs' and Defendants' Motions for Reconsideration, *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 08 CV 8781 HB, 2013 WL 1809767 (S.D.N.Y. Apr. 30, 2013)("*N.J. Carpenters VI")*; *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 08 CV 8781 HB, 2013 WL 6669966 (S.D.N.Y. Dec. 18, 2013).

I presume familiarity with those opinions and incorporate my prior analysis and determinations regarding Rule 23 (a) and (b) by reference. I examine below only whether the modification of the classes to incorporate the new offerings and the designation of new class representatives impacts those rulings that I have already made with respect to the class certification requirements. In the Harborview case, Plaintiffs seek to add ten new offerings[1] to the two offerings already in the class,[2] and designate two

---

[1] Plaintiffs seek to add HarborView Mortgage Loan Trust ("HVLMT") 2006-7, HVLMT 2006-9, HVLMT 2006-10, HVLMT 2006-11, HVLMT 2006-12, HVLMT 2006-14, HVLMT 2006-5, HVLMT 2006-6, HVLMT 2006-8, HVLMT 2007-1, HVLMT 2007-2 and HVLMT 2007-5. I have already dismissed the HVMLT 2006-8 Offerings and the HVMLT 2006-10 Offerings for lack of standing under *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.,* 721 F.3d 95 (2d Cir. June 27, 2013) ("*IndyMac*") and so have excluded them from further consideration here, leaving ten new offerings. ("proposed Harborview Offerings"). *N.J. Carpenters*, 08 CV 8781 HB, 2013 WL 6669966 (S.D.N.Y. Dec. 18, 2013).

institutional investors, Iowa Public Employees Retirement Systems and Midwest Operating Engineers Pension Trust Fund, as class representatives. The proposed Harborview Offerings were all issued under the same two Registration Statements as were the Original Harborview Offerings. *See* ¶ 1 Harborview Consolidated Third Amended Complaint ("HTAC"). Additionally, all offerings were underwritten and sold by the same entity, RBS, and all offerings had the same Sponsor, Seller and Depositor. *See* HTAC ¶¶ 2, 3, 6. In the RALI case, Plaintiffs seek to add thirteen new offerings[3] to the four RALI offerings already in the class,[4] and to designate Local 74 USWU Welfare Fund as a class representative. The proposed RALI Offerings were all issued pursuant to the same two Registration Statements filed with the SEC by RALI. *See* ¶ 1 RALI Consolidated Third Amended Complaint ("RTAC"). Additionally, all offerings were underwritten and sold by Citigroup, Goldman Sachs & Co. or UBS, and all offerings had the same Sponsor, Seller and Depositor. *See* RTAC ¶ 3. In RALI, Plaintiffs also propose a new class definition based on the current expanded factual record. At the outset, as I reread Defendants' papers and this opinion, I was reminded of a thought ascribed to Albert Einstein, it goes like this, insanity is doing the same thing over and over and expecting different results.

1. Rule 23(a) Requirements
   A. Numerosity

In each of my prior opinions, I have held that plaintiffs satisfied numerosity. See *N.J. Carpenters I*, F.R.D. 160, 163-164 (S.D.N.Y. 2011); *N.J. Carpenters II,* 08 CV 8781 HB, 2012 WL 4865174 at *1 (S.D.N.Y. Oct. 15, 2012) *modified in part,* 288 F.R.D. 290 (S.D.N.Y. 2013). Here, where the classes have been expanded, Plaintiffs plainly meet numerosity requirements. Defendants in both cases argue differently, they contend that each individual offering constitutes a subclass and looked at that way, numerosity fails. Not so. *See N. J. Carpenters II,* 08 CV 8781 HB, 2012 WL 4865174 at *1 n. 1 (S.D.N.Y. Oct. 15, 2012), *N.J. Carpenters III,* 288 F.R.D. 290 (S.D.N.Y. 2013). Defendants suggest that in my prior order I certified subclasses, again not so. While my prior opinion was clear, to dispel any

---

[2] The current class includes HVLMT 2006-4 and HVLMT 2007-7 ("Original Harborview Offerings").
[3] Plaintiffs seek to add RALI 2007-QO2, RALI 2006-QS8, RALI 2006-QS18, RALI 2006-QO10, RALI 2007-QS5, RALI 2006-QS7, RALI 2006-QS11, RALI 2007-QS4, RALI 2006-QS9, RALI 2007-QS7, RALI 2007-QH2, RALI 2007-QH5, RALI 2007-QH6, RALI 2006-QO3, RALI 2007-QH3, RALI 2007-QS2, RALI 2006-QO5, RALI 2006-QO6 and RALI 2006-QS15. I have recently decided that the Deutsche Bank AG Offerings RALI 2006-QS18, RALI 2007-QO2, RALI 2006-QS11, RALI 2006-QS9, RALI 2007-QS4, and RALI 2007-QS-7 do not have standing post-*IndyMac* and so have excluded them from further consideration here, leaving thirteen new offerings ("proposed RALI Offerings"). *N.J. Carpenters*, 08 CV 8781 HB, 2013 WL 6669966 (S.D.N.Y. Dec. 18, 2013)
[4] Currently, the class includes purchasers of Certificates in the RALI 2007-QS1, RALI 2007-QH4, RALI 2007-QO4, and RALI 2006-QO7 ("Original RALI Offerings").

misunderstanding, I'll put it in italics this time: *I certified one class in each case*. *N.J. Carpenters III,* 288 F.R.D. 290, 296 (S.D.N.Y. 2013). ("I adopt Plaintiffs' proposal and modify the class definition in both cases as follows: initial purchasers who bought the securities directly from the underwriters or their agents no later than ten trading days after the offering date."). This is now the third time that I have articulated my view on numerosity. Indeed, the numerosity of the class has only increased with the inclusion of additional offerings; thus Plaintiffs in both cases continue to satisfy this requirement.

### B. Commonality

Similarly, while I have found that Plaintiffs satisfied commonality in each of my prior class certification decisions, Defendants argue that commonality is now defeated; again, not so. In *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)("*Wal-Mart*"), the Court wrote, "What matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."(ellipsis and emphasis in original)(internal quotation marks and citations omitted). Here, Plaintiffs have demonstrated that the common questions at issue, Defendants' compliance with underwriting guidelines and due diligence requirements and nondisclosure of adverse information, will "generate common answers apt to drive the resolution of the litigation." *Id.* Indeed, as Judge Rakoff noted in another MBS case, "the Supreme Court's clarifying language in *Wal-Mart* has no effect on the commonality determination in this case. The common questions presented by this case—essentially, whether the Offering Documents were false or misleading in one or more respects—are clearly susceptible to common answers." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 106 (S.D.N.Y. 2011)("*Merrill Lynch*"). The addition of new offerings and new class representatives does not disturb this analysis. Thus, consistent with my prior class certification opinions, commonality is satisfied.

### C. Typicality

I have previously held that typicality was satisfied, *N.J. Carpenters I*, 272 F.R.D. 160, 165-168 (S.D.N.Y. 2011), *aff'd*, 2012 WL 1481519 (2d Cir. Apr. 30, 2012), and neither the proposed Offerings nor the new class representatives changes my consideration of this issue.[5]

---

[5] Indeed, Defendants in neither case dispute that Plaintiffs have established typicality.

### D. Adequacy

#### i. Harborview

Harborview Defendants argue that the class representatives will not adequately represent class members who purchased certificates in other offerings. However, in my prior decisions, I have made clear that this difference alone does not defeat adequacy as long as conflicts or antagonism do not exist between class members and representatives:

> The requirement of adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). A district court must inquire whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecomm. Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir.2009). "In order to defeat a motion for certification [any conflict of interest] must be fundamental." *Id.* I already found that the adequacy prong was satisfied in my prior Opinion, 272 F.R.D. at 164–5, and see no reason why I should change this analysis.

*N. J. Carpenters III*, 288 F.R.D. 290, 296 (S.D.N.Y. 2013). Here, again, I see no reason, nor have Defendants offered any, why I would reconsider my view on this matter. The proposed Harborview Offerings involve the same Defendants and allege the same conduct as the Original Harborview Offerings, thus their inclusion in the class creates no new conflicts. Proposed class representatives Iowa Public Employees Retirement Systems and Midwest Operating Engineers Pension Trust Fund purchased Certificates in HVMLT 2006-11 and HVMLT 2006-7, respectively, each within the ten days of the offering. Indeed, the inclusion of additional class representatives who made purchases in different offerings strengthens the adequacy of representation; thus, this requirement continues to be satisfied.

#### ii. RALI

In RALI, Plaintiffs have proposed Local 74 USWU Welfare Fund ("USWU Welfare") as an additional class representative. USWU Welfare purchased Certificates in the RALI 2007-QO2 Offering, an offering underwritten by Deutsche Bank AG. I recently held that Deutsche Bank AG offerings, including RALI 2007-QO2, do not have standing following the Second Circuit's decision in *IndyMac*. *N.J. Carpenters*, 08 CV 8781 HB, 2013 WL 6669966 (S.D.N.Y. Dec. 18, 2013). Accordingly, USWU Welfare cannot be a class representative because it is no longer a member of the class. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 101 (2d Cir. 2007) ("[T]o have standing to

sue as a class representative it is essential that a plaintiff must be a part of that class . . . ")(internal citations and quotation marks omitted).

However, the proposed RALI Offerings may be represented by the current class representative New Jersey Carpenters Health and Vacation Funds ("New Jersey Carpenters Funds"). I have already held that New Jersey Carpenters Funds are adequate representatives and the proposed RALI Offerings do not change my analysis. *N.J. Carpenters I*, 272 F.R.D. 160, 164 (S.D.N.Y. 2011), *aff'd*, 2012 WL 1481519 (2d Cir. Apr. 30, 2012). In addition, as I have explained with respect to Harborview, the fact that the New Jersey Carpenters Funds did not purchase certificates in all of the offerings at issue does not destroy adequacy because no conflict or antagonism between class members and representatives has been shown.

### 2. Rule 23(b) Requirements
#### A. Predominance

I have previously held that while individualized analysis may arise, particularly with respect to certain affirmative defenses, class-wide issues predominate. *See N.J. Carpenters II*, 08 CV 8781 HB, 2012 WL 4865174 (S.D.N.Y. Oct. 15, 2012), *modified in part*, 288 F.R.D. 290 (S.D.N.Y. 2013). Defendants argue that with the inclusion of the proposed Offerings, temporal and knowledge differences between class members will be exacerbated, defeating predominance. Of course, with new offerings added to the class, there are more offering dates at issue. However, modifying the class to encompass additional offerings does not change the ten-day timeframe that I determined effectively limited the scope of the class.

Defendants also suggest that class members may have had individualized knowledge because of news stories concerning mortgage backed securities and because some class members are sophisticated investors. However, each of these arguments is flawed. First, publicly available news stories do not create individualized knowledge. *See, e.g., Merrill Lynch*, 277 F.R.D. at 116 ("While Defendants cite to generic news reports regarding the mortgage-backed securities market, these reports do not directly focus on the Certificates here at issue," and finding that these news reports had not created inquiry notice). Indeed, even assuming that the news reports provided some knowledge to investors, this information is "subject to generalized proof." *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 239 (S.D.N.Y. 2012)(*"IndyMac")*; *see also Merrill Lynch*, 277 F.R.D. 97, 119 (S.D.N.Y. 2011)("to the extent Defendants argue that actual knowledge can be inferred from the slew of

newspaper articles and public reports they have submitted to the Court, this again is an issue subject to generalized proof.") While in my initial class certification decision, I was concerned that predominance was defeated by individualized knowledge, *N.J. Carpenters I*, 272 F.R.D. 160, 168-70 (S.D.N.Y. 2011) *aff'd sub nom. N.J. Carpenters*, 477 F. App'x 809 (2d Cir. 2012), on an expanded record I was satisfied that individual knowledge did not destroy predominance because "even the most sophisticated class members did not have access to the actual due diligence results and loan files for the certificates at issue and are therefore likely to be subject to the same knowledge and due diligence defense." *N.J. Carpenters II*, 08 CV 8781 HB, 2012 WL 4865174 (S.D.N.Y. Oct. 15, 2012) *modified in part*, 288 F.R.D. 290 (S.D.N.Y. 2013). As Defendants have failed to produce materials that disturb this analysis, the proposed Offerings do not change my finding that predominance is satisfied.

### B. Superiority

I have previously found that classwide treatment is the superior method for adjudicating the issues raised in these cases. *N. J. Carpenters II,* 08 CV 8781 HB, 2012 WL 4865174 at *5 (S.D.N.Y. Oct. 15, 2012). Defendants in both cases now argue that because some class members have opted out of the class, superiority is defeated. Should such an argument be credited, few class actions would ever reach the trial room. These cases are good examples of how far-fetched this argument appears to be. Defendants do not dispute that only nine investors have opted out of the Harborview case. Harborview Defs.' Opp. Mem. at 19-20.[6] Similarly, there is no dispute that only fifteen investors have opted out of the RALI case. RALI Defs.' Opp. Mem., Hall Decl. Ex. 29. Notwithstanding these opt outs, hundreds of investors remain in each case. *See* Harborview Pls.' Reply Mem., Eisenkraft Decl. Ex. 4; RALI Pls. Reply Mem. at 9. These few opt-outs do not defeat superiority. Indeed, the fact that so many investors remain in these lawsuits militates in favor of adjudicating the issues as class actions. Thus, superiority is satisfied.

### 3. Damages

Defendants also argue that Plaintiffs have failed to establish an appropriate damages formula. Defendants assert that the recent Supreme Court decision *Comcast Corporation v. Behrend,* 133 S. Ct. 1426 (2013)("*Comcast*"), requires a new damages analysis here. However, as I have already recognized,

---

[6] Lawsuits brought by Fannie Mae and Freddie Mac are excluded, as they have been specifically excluded from the class. *See* Harborview Pls.' Notice of Motion at 1, n. 1 (Dckt. No. 224).

section 11(e) of the Securities Act sets out the proper method for calculating damages in this case. *N.J. Carpenters I*, 272 F.R.D. 160 at 167 (S.D.N.Y. 2011), *aff'd*, 2012 WL 1481519 (2d Cir. Apr. 30, 2012). While *Comcast* requires that "any model supporting a plaintiff's damages case must be consistent with its liability case," *Comcast*, 133 S. Ct. at 1433(internal citations and quotation marks omitted), and this analysis is not limited to the anti-trust context, *see Wang v. Hearst Corp.*, 2013 WL 1903787 (S.D.N.Y. May 8, 2013), it is inapposite here, where damages reflect liability by statutory formula.

### 4.     RALI's Proposed Class Definition

In the RALI case, Plaintiffs seek to revise their class definition to consist of "all purchasers of certain RALI MBS Certificates pursuant or traceable to the Offerings who purchased on or before October 17, 2007, the date of the first downgrade of RALI Certificates (the 'Downgrade Date')." Pls. Supp. Mem. at 1. Interestingly, this is a class definition that I have previously rejected. *N.J. Carpenters II*, 08 CV 8781 HB, 2012 WL 4865174 (S.D.N.Y. Oct. 15, 2012) *modified in part,* 288 F.R.D. 290 (S.D.N.Y. 2013). The concerns that governed my earlier decision remain. The number of offerings at issue here, particularly with the thirteen proposed RALI Offerings, will create a class with seventeen offerings. Plaintiffs argue for this new definition, which expands the class for several months beyond the ten-day-class currently certified, on the grounds that (1) investors traded almost $6.8 billion in RALI certificates between the 11th trading day (when the class currently closes) and the Downgrade Date; (2) there is no evidence that any purchaser had individualized knowledge; and (3) the offerings were traded at an average weighted price of 98.46 – very close to 100, indicating no discount had been applied. Plaintiffs also assert that the recent Second Circuit decision in *In re: US Foodservice Inc. Pricing Litigation*, No. 12-1311-cv, 2013 U.S. App. LEXIS 18141 (2d Cir. Aug. 30, 2013)("*US Foodservice*") supports their position that class members' purchases of offerings at inflated prices constitute circumstantial evidence that the purchasers did not have evidence of the alleged misstatements. While *US Foodservice* may strengthen Plaintiffs' position with respect to investor knowledge, it does not require the large class expansion that Plaintiffs propose. Indeed, I am not convinced that such a significant expansion of the class is warranted at this time, or that such an expansion would not disrupt other class certification requirements.

## CONCLUSION

I have considered the parties' remaining arguments and find them to be without merit. Because the proposed Offerings[7] in both Harborview and RALI comport with the class certification requirements under Rule 23(a) and (b), as I articulated these requirements in my prior decisions, the class in each case is expanded to include those offerings. In Harborview, Iowa Public Employees Retirement Systems and the Midwest Operating Engineers Pension Trust Fund are added as Class Representatives. Plaintiffs' motions for class modification and designation of new class representatives are GRANTED, except to the extent that Local 74 USWU Welfare Fund is not designated as a class representative in the RALI case. The Clerk of the Court is instructed to close the two motions and remove them from my docket.

**SO ORDERED**
December 27, 2013
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.

---

[7] Excluding those offerings which do not have standing under the Second Circuit's *IndyMac* decision. *See N.J. Carpenters*, 08 CV 8781 HB, 2013 WL 6669966 (S.D.N.Y. Dec. 18, 2013).