# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW JERSEY CARPENTERS<br>VACATION FUND, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>THE ROYAL BANK OF SCOTLAND<br>GROUP PLC, ET AL.,<br><br>Defendants. | Civ. No. 08-5093-LAP |

## AFFIDAVIT OF JUSTIN R. HUGHES REGARDING
## (A) MAILING OF THE NOTICE AND PROOF OF CLAIM;
## (B) PUBLICATION OF THE SUMMARY NOTICE; AND
## (C) REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE

STATE OF CALIFORNIA    )
                               ) SS.
COUNTY OF MARIN           )

I, Justin R. Hughes, being duly sworn, depose and say:

1.      I am a Vice President of Class Actions at Kurtzman Carson Consultants LLC ("KCC"). My business address is 75 Rowland Way, Suite 250, Novato, California 94945. Pursuant to the Court's July 18, 2014 Order Preliminarily Approving the Settlement, Certifying Settlement Class, Approving Notice to the Class and Scheduling of Final Approval Hearing (the "Preliminary Approval Order"), KCC was authorized to act as the Claims Administrator in connection with the settlement of the above-captioned action.[1] I have personal knowledge of the facts stated herein.

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated April 17, 2014 and/or the Preliminary Approval Order, dated July 18, 2014.

## MAILING OF NOTICE PACKET

2.        Pursuant to the Preliminary Approval Order, KCC has disseminated the Notice of Pendency of Class Action, Preliminary Approval Order, and Proposed Settlement, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim Form and Release (the "Claim Form" and, collectively with the Notice, the "Notice Packet") to potential members of the Settlement Class.

3.        On or before March 19, 2014, KCC received from Cohen Milstein Sellers & Toll PLLC, a list (the "Class List") containing contact information for persons or entities who purchased or otherwise acquired an interest in any certificate in any of the following Harborview Mortgage Loan Trusts: Harborview Mortgage Loan Trust Series ("Harborview") 2006-4, Harborview 2006-5, Harborview 2006-6, Harborview 2006-7, Harborview 2006-8, Harborview 2006-9, Harborview 2006-10, Harborview 2006-11, Harborview 2006-12, Harborview 2006-14, Harborview 2007-1, Harborview 2007-2, Harborview 2007-5 and Harborview 2007-7 (the "Certificates").    The Class List contained data for 2,722 potential Settlement Class Members.

4.        In addition, KCC maintains a proprietary database of 747 known securities brokers, dealers, banks, and other nominees to be used for notifying record holders of settlements (the "Broker Database").

5.        On July 31, 2014, KCC caused 3,469 Notice Packets (corresponding to the 2,722 unique names included on the Class List and the 747 nominees in the Broker Database ("Nominees") to be mailed via First Class mail, postage prepaid, to the

potential Settlement Class Members and nominees.  A sample of the Notice Packet is attached hereto as Exhibit A.

6.     The Notice requested those who purchased or otherwise acquired the Certificates for the beneficial interest of a person or organization other than themselves to, within fourteen (14) days after receipt of the Notice, either (a) send a copy of the Notice Packet to the beneficial owner of such Certificates, or (b) provide the names and addresses of such persons to the Harborview MBS Claims Administrator, P.O. Box 43253, Providence, RI 02940-3253.

7.     As of September 29, 2014, KCC has received 1,060 names and addresses of potential Settlement Class Members (after exact duplicate mailing records were removed) from individuals, brokers, dealers, banks and other nominees requesting Notice Packets to be mailed to such persons. Also, KCC has received requests from brokers and other nominees for 185 Notice Packets to be sent to such brokers and nominees so that they could forward them to their customers. All such requests have been complied with in a timely manner.

8.     As a result of the efforts described above, as of September 29, 2014, KCC has mailed a total of 4,775 Notice Packets.[2]

### PUBLICATION OF THE SUMMARY NOTICE

9.     Pursuant to the Preliminary Approval Order, KCC caused the Summary Notice to be published once in the national edition of The Wall Street Journal and to be transmitted over the PR Newswire on July 30, 2014. Attached hereto as exhibit B are confirmations of publication and transmittal.

---

[2] This figure includes 61 Notice Packets that were initially returned by the United States Postal Service, but re-mailed based on updated addresses provided by the Postal Service.

**TELEPHONE HOTLINE**

10.     KCC established and now maintains a toll-free telephone number (1-866-893-8437) for Settlement Class Members to call and obtain information about the Settlement, request a Notice Packet, and/or seek assistance from a live operator.  As of September 29, 2014, KCC has received a total of 34 calls to the telephone hotline.

**WEBSITE**

11.     In coordination with Lead Counsel, KCC designed and implemented a website, www.HarborviewMBSSettlement.com, dedicated to the Settlement to assist potential Settlement Class Members. The website was operational beginning on July 31, 2014. The website lists the exclusion, objection, and claim filing deadlines, as well as the date and time of the Court's Final Approval Hearing. Copies of the First Class Certification Order, Second Certification Order, Third Amended Securities Class Action Complaint, Settlement Agreement and the Preliminary Approval Order were posted on the website and may be downloaded by potential Settlement Class Members. As of September 29, 2014, the website has received 4,085 hits.

**REPORT ON EXCLUSION REQUESTS RECEIVED TO DATE**

12.     The Notice informed potential Settlement Class Members that requests for exclusion are to be mailed or otherwise delivered, addressed to Harborview MBS Claims Administrator, P.O. Box 43253, Providence, RI 02940-3253, such that they are received by KCC no later than September 30, 2014. The Notice also sets forth the information that must be included in each request for exclusion. As of September 29, 2014, KCC has received 11 requests for exclusion from or on behalf of 96 entities. A list of all exclusion requests received to date is attached hereto as Exhibit C. KCC will

submit a supplemental affidavit after the September 30, 2014 deadline to request exclusion that addresses all requests received.

Justin R. Hughes

SWORN AND SUBSCRIBED before me
this 30th day of September 2014.

Notary Public

ELIZABETH CAPETO
Commission # 1987183
Notary Public - California
Marin County
My Comm. Expires Aug 4, 2016

# Exhibit  A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW JERSEY CARPENTERS VACATION FUND, ET AL., | Civ. No. 08-5093-LAP |
| Plaintiffs, | |
| *v.* | |
| THE ROYAL BANK OF SCOTLAND GROUP PLC, ET AL., | |
| Defendants. | |

**NOTICE OF PENDENCY OF CLASS ACTION, PRELIMINARY APPROVAL ORDER,**
**AND PROPOSED SETTLEMENT, SETTLEMENT FAIRNESS HEARING AND MOTION**
**FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:** Please be advised that your rights may be affected by the above-captioned class action lawsuit pending in this Court (the "Action") if you purchased or otherwise acquired an interest in any certificate in any of the following Harborview Mortgage Loan Trusts: Harborview Mortgage Loan Trust, Series ("Harborview") 2006-4, Harborview 2006-5, Harborview 2006-6, Harborview 2006-7, Harborview 2006-8, Harborview 2006-9, Harborview 2006-10, Harborview 2006-11, Harborview 2006-12, Harborview 2006-14, Harborview 2007-1, Harborview 2007-2, Harborview 2007-5 and Harborview 2007-7.[1]

**NOTICE OF SETTLEMENT:** Please also be advised that lead plaintiffs New Jersey Carpenters Vacation Fund and Boilermaker Blacksmith National Pension Trust (the "Lead Plaintiffs"), and additional named plaintiffs Iowa Public Employees' Retirement System, Midwest Operating Engineers Pension Trust Fund, and Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers District Counsel of Chicago and Vicinity ("Additional Plaintiffs" and, with Lead Plaintiffs, the "Plaintiffs"), on behalf of themselves and the Settlement Class (as defined in ¶ 1 below), have reached a proposed settlement (the "Settlement") of the Action for a total of $275 million U.S. dollars in cash that will resolve all claims in the Action against defendants The Royal Bank of Scotland Group, plc., RBS Financial Products Inc. f/k/a Greenwich Capital Financial Products, Inc., RBS Acceptance Inc. f/k/a Greenwich Capital Acceptance, Inc., RBS Securities, Inc. f/k/a Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, RBS Holdings USA Inc. f/k/a Greenwich Capital Holdings Inc., Robert J. McGinnis, Carol P. Mathis, Joseph N. Walsh, III, John C. Anderson and James M. Esposito (collectively, the "Defendants"), on the terms set forth below.

This Notice explains important rights you may have, including your possible receipt of cash from the Settlement. Your legal rights will be affected whether or not you act. **PLEASE READ THIS NOTICE CAREFULLY!**

1.   **Description of the Action and the Settlement Class**: The proposed Settlement, if approved by the Court, will apply to the following Class (the "Settlement Class"):

> all persons and entities who, at any time, purchased or otherwise acquired an interest in any certificate in any of the following Harborview trusts: Harborview 2006-4, Harborview 2006-5, Harborview 2006-6, Harborview 2006-7, Harborview 2006-8, Harborview 2006-9, Harborview 2006-10, Harborview 2006-11, Harborview 2006-12, Harborview 2006-14, Harborview 2007-1, Harborview 2007-2, Harborview 2007-5 and Harborview 2007-7 (hereinafter the "Certificates"); *except* those Persons that

---

[1]   All capitalized terms that are not defined herein shall have the meaning ascribed to them in the Stipulation and Agreement of Settlement (the "Stipulation").

timely and validly request exclusion from the class pursuant to and in accordance with the terms of the Preliminary Approval Order.  Also excluded from the Settlement Class are (i) the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Federal Housing Finance Agency acting as conservator for either such entity; and (ii) each Defendant, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest, *except* for any Investment Vehicle.

2.  **Statement of Settlement Class's Recovery:** Subject to Court approval, and as described more fully in ¶¶ 48-50 below, Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle all Released Claims against the Defendants in exchange for a settlement payment of $275 million in cash (the "Settlement Amount") to be deposited into an interest-bearing escrow account (the "Settlement Fund") and certain other terms. The Settlement Fund less all Taxes, Tax Expenses, Notice and Administration Costs, and attorneys' fees and Litigation Expenses awarded to Lead Counsel (the "Net Settlement Fund") will be distributed to members of the Settlement Class in accordance with a plan of allocation (the "Plan of Allocation") that will be submitted and approved by the Court. The proposed Plan of Allocation is included in this Notice, and may be modified by the Court without further notice.

3.  **Statement of Average Distribution Per $1,000 in Initial Certificate Value:** The Settlement Fund consists of $275 million plus any interest earned while the funds are held in the escrow account.  Based on the total original principal balances of the Certificates as stated in the prospectus supplements (without subtracting the principal pay downs received on the Certificates, but subtracting the Certificates purchased by the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and Defendants or their affiliates, or the Certificates that were never sold) the estimated average distribution is $16.73 per $1,000 in original principal balance of the Certificates for Ten Trading Day Claimants (defined below); $3.52 per $1,000 in original principal balance of the Certificates for General Claimants (defined below), and $1.97 per $1,000 in original principal balance of the Certificates for Dismissed Claimants (defined below).  Settlement Class Members may recover more or less than this amount depending on, among other factors, when their Certificates were purchased or sold, the amount of principal that has been repaid, the value of the Certificates on the applicable date a claim relating to that Certificate was first asserted in the lawsuit, the number of Settlement Class Members who timely file Proof of Claim Forms, the Plan of Allocation, and their Group status as more fully described below in this Notice.

4.  **Estimate of Average Amount of Recovery:**  The estimate of  "Average Amount of Recovery Fund" (the Settlement Fund less taxes, notice and administration costs and other related expenses) shall be divided among members of the Settlement Class as follows:

    a.  Group 1 will be composed of those Certificate holders (hereinafter the "Ten Trading Day Claimants") who purchased or acquired Certificates in any one of the following twelve Harborview trusts – Harborview 2006-4, 2006-5, 2006-6, 2006-7, 2006-9, 2006-11, 2006-12, 2006-14, 2007-1, 2007-2, 2007-5 and 2007-7 – directly from Defendants or their agents within ten trading days of the date when their Certificates were first publicly offered (the "Ten Trading Day Periods");

    b.  Group 2 will be composed of those Certificate holders (hereinafter, the "General Claimants") who purchased  or acquired Certificates in any one of the following twelve Harborview trusts -  Harborview 2006-4, 2006-5, 2006-6, 2006-7, 2006-9, 2006-11, 2006-12, 2006-14, 2007-1, 2007-2, 2007-5 and 2007-7 – but who either did not purchase their Certificates directly from Defendants or their agents, or who purchased their Certificates outside the Ten Day Trading Periods, or both;

    c.  Group 3 will be composed of those Certificate holders (hereinafter, the "Dismissed Claimants") who purchased or acquired Certificates in either of the following two Harborview Trusts – Harborview 2006-8 and 2006-10.

    Certificateholders in Group 1, or Ten Trading Day Claimants, will receive their proportionate share of $242.5 million of the $275 million settlement or an average of $16.73 per $1,000 of original principal balance of the Certificates before payment of Court-approved attorneys' fees and expenses.

Certificateholders in Group 2, or General Claimants, will receive their proportionate share of $28.75 million or an estimated average of $3.52 per $1,000 of original principal balance of the Certificates before payment of Court-approved attorneys' fees and expenses.

Certificateholders in Group 3, or Dismissed Claimants, will receive their proportionate share of $3.75 million or an estimated average of $1.97 per $1,000 of original principal balance of the Certificates before payment of Court-approved attorneys' fees and expenses.

Settlement Class Members should note, however, that these are only estimates. Settlement Class Members may recover more or less than this amount depending on, among other factors, when their Certificates were purchased or sold, the amount of principal that has been repaid, the amount of principal that has been written off, the estimated value of the Certificates on the date a claim concerning those Certificates was first asserted in the Action as indicated in the table listing the Date of First Suit found at www.HarborviewMBSSettlement.com, the number of Settlement Class Members who submit timely Proof of Claim Forms, and the amount of such claims, and the Plan of Allocation, as more fully described below in this Notice. In addition, the actual recovery of Settlement Class Members may be further reduced by the payment of fees and costs from the Settlement Fund.

You should visit the settlement website, www.HarborviewMBSSettlement.com, to determine which of the three Groups described above your Certificates are in.

Please Note: as set forth in the Plan of Allocation below, only those Settlement Class Members who purchased or otherwise acquired an interest in their Certificate(s) before the date when a claim concerning their Certificate(s) was first asserted in the Action are eligible to potentially recover from the Net Settlement Fund.

5.  **Statement of the Parties' Position on Damages:** The Defendants deny all claims of wrongdoing and deny that they are liable to the Plaintiffs and/or the Settlement Class or that the Plaintiffs or other members of the Settlement Class suffered any injury. Moreover, the parties do not agree on the amount of recoverable damages or the average amount of damages per Certificate that would be recoverable if Plaintiffs were to prevail on each of the claims. The issues on which the parties disagree include, but are not limited to: (1) whether the statements made or facts allegedly omitted were material, false or misleading; (2) whether the Defendants are otherwise liable under the securities laws for those statements or omissions; (3) whether all or part of the damages allegedly suffered by Plaintiffs or members of the Settlement Class were caused by economic conditions or factors other than the allegedly false or misleading statements or omissions; (4) whether Plaintiffs and/or Settlement Class Members knew or had reason to know of any alleged misstatements or omissions; and (5) whether Defendants performed adequate due diligence on the underlying mortgage loans prior to selling the Certificates.

6.  **Statement of Attorneys' Fees and Expenses Sought:** Prior to final distribution of funds, Lead Counsel will apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 19% of the Settlement Fund (or $52,250,000.00), net of Court-approved Litigation Expenses, plus interest earned at the same rate and for the same period as earned by the Settlement Fund. In addition, Lead Counsel also will apply for the reimbursement of certain Litigation Expenses paid or incurred in connection with the prosecution and resolution of the Action in an amount not to exceed $3,000,000 plus interest earned at the same rate and for the same period as earned by the Settlement Fund.  Litigation Expenses may include reimbursement of the expenses of Plaintiffs in accordance with 15 U.S.C. §77z-1a(4).  Based on the total initial dollar value of the Certificates as stated in the prospectus supplements (without subtracting the principal pay downs received on the Certificates), and assuming all purchasers of the initially offered Certificates elect to participate, if the Court approves Lead Counsel's fee and expense application, the estimated average cost is $3.27 per $1,000 in initial certificate value of the Certificates. The actual cost may be more or less than this amount depending on, among other factors, when their Certificates were purchased or sold, the amount of principal that has been repaid, the estimated value of the Certificates on the applicable date claims relating to that Certificate were first asserted in the litigation, the number of Settlement Class Members who timely file Claims, and the Plan of Allocation, as more fully described below in this Notice.

7.  **Identification of Attorneys' Representatives:** Plaintiffs and the Settlement Class are being represented by Cohen Milstein Sellers & Toll PLLC.  Any questions regarding the Settlement should be directed to Joel P. Laitman; Christopher Lometti or Michael Eisenkraft at Cohen Milstein, 88 Pine Street, 14th Floor,

New York, New York, 10005 (212) 838-7797; jlaitman@cohenmilstein.com; clometti@cohenmilstein.com; or meisenkraft@cohenmilstein.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **REMAIN A MEMBER OF THE CLASS.** | This is the only way to receive a payment. If you wish to obtain a payment as a member of the Settlement Class, you will need to file a proof of claim form (the "Proof of Claim Form"), which is included with this Notice, postmarked no later than November 14, 2014. |
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN SEPTEMBER 30, 2014.** | Receive no payment pursuant to this Settlement. If you exclude yourself from the Settlement Class, you may be able to seek recovery against the Defendants or other Released Parties through other litigation.  If, however, you have not brought suit yourself within three years of the offering date of the Certificates you purchased, your ability to bring claims under the federal Securities Act of 1933 may be barred by its statute of repose.  *See Police & Fire Ret. Sys. v. Indymac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013). |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN OCTOBER 14, 2014.** | Write to the Court and explain why you do not like the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses. You cannot object to the Settlement unless you are a member of the Settlement Class and do not validly exclude yourself. |
| **GO TO THE HEARING ON OCTOBER 28, 2014 AT 9:30 A.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN OCTOBER 14, 2014.** | Ask to speak in Court about the fairness of the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses. |
| **DO NOTHING.** | Receive no payment, remain a Class Member, give up your rights and be bound by the Order and Final Judgment entered by the Court if it approves the Settlement, including the Release of the Released Claims. |

### WHAT THIS NOTICE CONTAINS

Why Did I Get This Notice? ........................................................................ Page   5

What Is This Case About? What Has Happened So Far? ........................... Page   5

What Are The Plaintiffs' Reasons For The Settlement? ............................. Page   8

What Might Happen If There Were No Settlement? .................................. Page   9

How Do I Know If I Am Affected By The Settlement? ............................. Page   9

How Much Will My Payment Be? When Will I Receive It? ..................... Page   9

What Rights Am I Giving Up By Agreeing To The Settlement? ............... Page  12

What Payment Are The Attorneys For The Class Seeking?
   How Will The Lawyers Be Paid? ............................................................ Page  13

How Do I Participate in the Settlement? What Do I Need To Do? ........... Page  14

What If I Do Not Want To Be Part Of The Settlement?
   How Do I Exclude Myself? .................................................................... Page  14

When And Where Will The Court Decide Whether To Approve The Settlement?
   Do I Have To Come To The Hearing?
   May I Speak At The Hearing If I Don't Like The Settlement? ............... Page  14

What If I Bought Certificates On Someone Else's Behalf?            Page 16

Can I See The Court File? Who Should I Contact If I Have Questions?        Page 16

## WHY DID I GET THIS NOTICE?

8.     This Notice is being sent to you pursuant to an order of the United States District Court for the Southern District of New York (the "Court" or "District Court") because you or someone in your family may have purchased or otherwise acquired the Certificates described above. The Court has directed us to send you this Notice because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement of this case. Additionally, you have the right to understand how a class action lawsuit may generally affect your legal rights.

9.     A class action is a type of lawsuit in which the claims of a number of individuals are resolved together, thus providing the class members with both consistency and efficiency. In a class action lawsuit, the Court selects one or more people, known as class representatives or lead plaintiffs, to sue on behalf of all people with similar claims, commonly known as the class or the class members. Once the class is certified, the Court must resolve all issues on behalf of the class members, except for any persons who choose to exclude themselves from the class. (For more information on excluding yourself from the Class, please read "What If I Do Not Want To Be A Part Of The Settlement? How Do I Exclude Myself?" located below.) In the Action, the Court has directed that Plaintiffs and Lead Counsel have primary responsibility for prosecuting all claims against Defendants on behalf of investors in the Certificates described above.

10.     The Court in charge of this case is the United States District Court for the Southern District of New York, and the case is known as *New Jersey Carpenters Vacation Fund, et al., v. The Royal Bank of Scotland Group plc, et al.,* Civil Action No. 08 Civ. 5093 (LAP) (the "Action"). The Judge presiding over this case is the Honorable Loretta A. Preska, United States District Judge. The people who are suing are called plaintiffs, and those who are being sued are called defendants. In this case, the primary plaintiffs are referred to as the Plaintiffs, on behalf of themselves and the class, and the defendants are The Royal Bank of Scotland Group, plc, certain of its affiliates that underwrote and issued the Certificates, and certain officers and directors of those entities who signed the registration statements therefore. This Settlement is with all Defendants which includes: The Royal Bank of Scotland Group, plc, RBS Financial Products Inc. f/k/a Greenwich Capital Financial Products, Inc., RBS Acceptance Inc. f/k/a Greenwich Capital Acceptance, Inc., RBS Securities Inc. f/k/a Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, RBS Holdings USA Inc. f/k/a Greenwich Capital Holdings Inc., Robert J. McGinnis, Carol P. Mathis, Joseph N. Walsh, III, John C. Anderson and James M. Esposito.

11.     This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. The purpose of this Notice is to inform you of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement if you wish to do so. It also is being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness and adequacy of the proposed Settlement and the application by Lead Counsel for reimbursement of expenses incurred to date (the "Final Approval Hearing").

12.     The Final Approval Hearing will be held on October 28, 2014 at 9:30 a.m., before the Honorable Loretta A. Preska at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 12A, New York, New York 10007, to determine:

    (i)     whether the proposed Settlement on the terms and conditions provided for in the Stipulation and Agreement of Settlement (the "Stipulation") is fair, reasonable and adequate, and should be approved by the Court;

    (ii)     whether a judgment should be entered dismissing the Action, on the merits and with prejudice, and whether the release by the Settlement Class of the Released Claims should be ordered;

    (iii)     whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and

    (iv)     whether Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved by the Court.

13.     This Notice does not express any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. Any distribution will not be paid until after the completion of all claims processing. Please be patient.

## WHAT IS THIS CASE ABOUT? WHAT HAS HAPPENED SO FAR?

14. On May 14, 2008, the New Jersey Carpenters Vacation Fund filed a complaint against, *inter alia*, the Defendants, in the Supreme Court of the State of New York, County of New York, Index No. 601451/08, asserting claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l, and 77o (the "Securities Act").

15. On June 3, 2008, the Action was removed to the United States District Court for the Southern District of New York, Civ. No. 08-cv-5093.  The case was assigned to the Honorable Harold Baer, Jr.

16. On January 22, 2009, notice of the Action was published pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notifying eligible purchasers of their right to move for appointment as lead plaintiff. On June 30, 2009, the District Court appointed the New Jersey Carpenters Vacation Fund and Boilermaker Blacksmith National Pension Trust as Lead Plaintiffs and approved Lead Plaintiffs' selection of Cohen Milstein Sellers & Toll PLLC as lead counsel.

17. On May 19, 2009, Lead Plaintiffs filed the Consolidated First Amended Securities Class Action Complaint (the "First Amended Complaint").  The First Amended Complaint asserted claims concerning the purchase or sale of securities, issued in 15 residential mortgage-backed securities offerings[2] (the "Fifteen Original Offerings," each of which is sometimes referred to herein as an "Offering"), pursuant or traceable to two Registration Statements and accompanying Prospectuses filed with the Securities and Exchange Commission by Greenwich Capital Acceptance, Inc. on March 31, 2006 (No. 333-130961) and on March 23, 2007 (No. 333-140279), against The Royal Bank of Scotland Group, plc, RBS Financial Products Inc. f/k/a Greenwich Capital Financial Products, Inc., RBS Acceptance Inc. f/k/a Greenwich Capital Acceptance, Inc., RBS Securities Inc. f/k/a Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, and RBS Holdings USA Inc. f/k/a Greenwich Capital Holdings Inc. (collectively, the "RBS Defendants"), as well as Robert J. McGinnis, Carol P. Mathis, Joseph N. Walsh, III, John C. Anderson and James M. Esposito (collectively, the "Individual Defendants" and, together with the RBS Defendants, "Defendants").[3]

18. On July 15, 2009, Defendants moved to dismiss the First Amended Complaint.

19. On March 26, 2010, the Court issued a memorandum and order (the "March 26, 2010 Order") granting in part and denying in part Defendants' motions to dismiss.  In the March 26, 2010 Order, the Court found that Lead Plaintiffs adequately alleged violations of the Securities Act against the Defendants for the Offerings in which the Lead Plaintiffs purchased securities, namely the Harborview Series 2006-4 and Harborview Series 2007-7 Offerings, by alleging Defendants' failure to disclose that the mortgage originators systematically disregarded the applicable underwriting guidelines.  The Court dismissed all other offerings from the case on standing grounds.  The Court also dismissed claims based on the allegations that credit rating models were outdated, that credit enhancements were inadequate, and that Defendants purportedly omitted disclosure of material conflicts of interest with the Rating Agencies.[4]

20. On April 16, 2010, Defendants answered the First Amended Complaint.

21. On July 12, 2010, a joint motion to intervene was filed by Lead Plaintiffs, Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Counsel of Chicago and Vicinity ("Chicago Laborers"), and Midwest Operating Engineers Pension Trust Fund ("Midwest OE") seeking permission for Chicago Laborers and Midwest OE to intervene in the case to represent purchasers in certain of the Fifteen Original Offerings.  On July 30, 2010, a second joint motion to intervene was filed by Lead Plaintiffs and Iowa Public Employees' Retirement System ("IPERS") seeking permission for IPERS to intervene in the case to represent purchasers in certain of the Fifteen Original Offerings.  Lead Counsel also represents Chicago Laborers, Midwest OE, and IPERS in this Action.  On December 22, 2010, the District Court issued an opinion and order granting the motions to intervene, restoring six of the Fifteen Original Offerings to the Action (the "Intervenor Offerings").[5]

22. On July 15, 2010, Lead Plaintiffs moved to certify a class of purchasers of Certificates in the two Offerings in the case at that time, Harborview Mortgage Loan Trust, Series 2006-4 and 2007-7, to certify Lead Plaintiffs as

---

[2]   The Harborview Mortgage Loan Trust Series:  2006-4, 2006-5, 2006-6, 2006-7, 2006-8, 2006-9, 2006-10, 2006-11, 2006-12, 2006-13, 2006-14, 2007-1, 2007-2, 2007-5, and 2007-7 offerings.

[3]   The First Amended Complaint also asserted claims against Moody's Investors Service, Inc. and The McGraw-Hill Companies, Inc. ("Rating Agencies"), but the claims against them were dismissed by the Court and the dismissal of the Action with prejudice, as contemplated by this Settlement, will bring these claims to an end.

[4]   The District Court also dismissed claims against the Rating Agencies.

[5]   Harborview Mortgage Loan Trust Series 2006-7, 2006-9, 2006-10, 2006-11, 2006-12, and 2006-14 offerings.

Class Representatives and to appoint Cohen Milstein Sellers & Toll PLLC as Lead Counsel (the "First Class Certification Motion").

23. On January 3, 2011, Lead Plaintiffs filed the Consolidated Second Amended Securities Class Action Complaint, which, *inter alia*, added the claims of Chicago Laborers, Midwest OE, and IPERS.

24. On January 18, 2011, the District Court denied the First Class Certification Motion (the "First Class Certification Decision"). While the District Court found that Lead Plaintiffs had satisfied all of the Rule 23(a) factors, including numerosity, commonality, adequacy and typicality, it found pursuant to Rule 23(b)(3) that individual issues of knowledge predominated and that the class action device was not the superior method of adjudication, precluding class certification.

25. On January 21, 2011, Defendants moved to dismiss the claims asserted by Chicago Laborers, Midwest OE, and IPERS. On April 28, 2011, the District Court issued an order granting in part and denying in part Defendants' motion to dismiss the claims of Chicago Laborers, Midwest OE, and IPERS.

26. On February 1, 2011, Lead Plaintiffs filed a petition under Federal Rule of Civil Procedure 23(f) with the Second Circuit requesting interlocutory appeal of the District Court's First Class Certification Decision.

27. On April 29, 2011, the Second Circuit granted Lead Plaintiffs' Rule 23(f) motion for an interlocutory appeal of the District Court's First Class Certification Decision.

28. In a letter to the District Court dated May 5, 2011, Lead Counsel requested that the Court stay the Action pending the Second Circuit's decision on the appeal of the Court's First Class Certification Decision. On May 12, 2011, the District Court granted Lead Counsel's request to stay the proceedings.

29. On April 30, 2012, the Second Circuit affirmed the District Court's denial of class certification on the ground that individual issues of knowledge predominated "without prejudice to further motion practice in the District Court."

30. In light of the Second Circuit's decision, Lead Plaintiffs moved the District Court for permission to conduct additional discovery, and on May 7, 2012, the District Court granted that motion, setting an August 6, 2012 deadline for the submission of any additional class certification motions.

31. On August 6, 2012, Lead Plaintiffs filed their renewed motion for class certification as to the two Offerings they purchased (the "Second Class Certification Motion"). Lead Plaintiffs restricted the temporal scope of the class to encompass only purchases prior to any downgrades of the Certificates and eliminated the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation from the class definition.

32. On October 15, 2012, the Court granted in part the Second Class Certification Motion and appointed Lead Plaintiffs as the class representatives for the two Offerings they purchased (the "Second Class Certification Order"). The Court, however, further limited the class definition to those purchasers who bought the Certificates on the date of each initial offering directly from the issuers.

33. On November 5, 2012, Lead Plaintiffs sought reconsideration of the Second Class Certification Order, seeking to expand the class to include those purchasers who bought the Certificates up to ten trading days after the initial offering date, which Defendants opposed.

34. On November 16, 2012, Lead Plaintiffs sought reconsideration of the Court's March 26, 2010 Order dismissing claims as to those offerings in which no Lead Plaintiff purchased securities in light of *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"). Plaintiffs' reconsideration motion sought to reinstate claims with respect to twelve of the Fifteen Original Offerings that had previously been dismissed.

35. On November 16, 2012, Defendants filed a motion to dismiss the Intervenor Offerings as barred by the statute of repose.

36. On January 3, 2013, the District Court denied Defendants' motion to dismiss the Intervenor Offerings. In the same Order, the District Court denied Lead Plaintiffs' motion for reconsideration under *NECA-IBEW* without prejudice to renewal of the motion following a determination by the U.S. Supreme Court on whether or not to grant *certiorari* in *NECA-IBEW*. The District Court, also in the same Order, granted Lead Plaintiffs' application for modification of the class definition (the "Amended Second Class Certification Order").

37.     On October 31, 2012 and January 17, 2013, Defendants petitioned the Second Circuit for permission to appeal the District Court's Second Class Certification Order and Amended Second Class Certification Order pursuant to Federal Rule of Civil Procedure 23(f).  The Second Circuit denied both petitions on March 26, 2013.

38.     On April 30, 2013, following the U.S. Supreme Court's denial of the *certiorari* petition in *NECA-IBEW*, the Court granted Lead Plaintiffs' motion for reconsideration of the Court's March 26, 2010 Order.  After this decision, twelve of the Fifteen Original Offerings were restored to the case, resulting in a total of fourteen offerings being at issue ("Fourteen Remaining Offerings").[6]

39.     On May 10, 2013, Plaintiffs filed a Consolidated Third Amended Securities Class Action Complaint, and on May 13, 2013 filed a Corrected Consolidated Third Amended Securities Class Action Complaint ("Third Amended Complaint"), which asserted claims in relation to the Fourteen Remaining Offerings in the case.

40.     On June 10, 2013, Defendants answered the Third Amended Complaint.

41.     On June 25, 2013, Lead Plaintiffs filed a motion to modify the class to encompass the additional Offerings reinstated by *NECA-IBEW* and add IPERS and Midwest OE as Additional Class Representatives ("Lead Plaintiffs' Third Class Certification Motion.").

42.     On August 14, 2013, Defendants filed a motion for reconsideration seeking the dismissal of four of the Reinstated Offerings on statute of repose grounds based on the Second Circuit's decision in *Police & Fire Retirement System of Detroit v. IndyMac MBS, Inc*, 721 F.3d 95 (2d Cir. 2013).  On December 18, 2013, the District Court granted in part and denied in part Defendants' motion, dismissing two Offerings from the case.

43.     On December 27, 2013, the District Court granted Lead Plaintiffs' Third Class Certification Motion, expanding the class to encompass the Fourteen Remaining Offerings and appointing Midwest OE and IPERS as additional Class Representatives.

44.     On or around September 2013, Lead Counsel and Defendants began mediation under the auspices of Judge Layn Phillips, a former Federal District Court Judge.  The Settling Parties reached an agreement in principle on February 14, 2014 with respect to the Settlement Amount of $275 million and certain related terms.  The same day, Lead Counsel and Defendants' Counsel notified the District Court and Second Circuit of the agreement in principle to settle the Action.

45.     On February 24, 2014, the Settling Parties executed a term sheet setting forth certain terms of the Settlement subject to the completion of definitive documentation and Court approval.

46.     Lead Counsel has conducted extensive discovery relating to the claims and the underlying events and transactions alleged in the Third Amended Complaint.  Lead Counsel has analyzed evidence adduced in discovery, including reviewing over 5.8 million pages of documents produced by Defendants and third parties, taking and defending a number of depositions, and gathering and closely examining thousands of loan files.  Lead Counsel researched the applicable law with respect to the claims of Plaintiffs and the Settlement Class against the Defendants, as well as the potential defenses thereto, retained and consulted with numerous experts in the areas of damages, loan reunderwriting and due diligence, among others, and has actively litigated this case for the past six years.

47.     On June 18, 2014, the case was reassigned to the Honorable Loretta A. Preska. On July 17, 2014, the Court authorized this Notice to be sent to potential Class Members, certified the Settlement Class for purposes of the Settlement and scheduled the Final Approval Hearing to consider whether to grant final approval of the Settlement.

## WHAT ARE THE PLAINTIFFS' REASONS FOR THE SETTLEMENT?

48.     Plaintiffs and Lead Counsel believe that the claims asserted against the Defendants have merit.  Plaintiffs and Lead Counsel recognize, however, the expense and length of continued proceedings necessary to pursue their claims against the Defendants through continued discovery, trial and appeals, as well as the difficulties in establishing liability. Plaintiffs and Lead Counsel have considered the uncertain outcome of trial and appellate risk in complex lawsuits like this one.

---

[6]     The Harborview Mortgage Loan Trust, Series 2006-4, 2006-5, 2006-6, 2006-7, 2006-8, 2006-9, 2006-10, 2006-11, 2006-12, 2006-14, 2007-1, 2007-2, 2007-5, and 2007-7 offerings.

49. In light of the risks of continued litigation, Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class. Plaintiff and Lead Counsel also believe that the Settlement provides a substantial benefit now, namely Defendants' payment of $275 million U.S. dollars (less the various deductions described in this Notice), as compared to the risk that the claims would produce a similar, smaller, or no recovery after summary judgment, trial and appeals, possibly years in the future.

50. The Defendants have denied and continue to deny each and all of the claims alleged by Plaintiffs in the Action. The Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any and all of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. The Defendants have also contended by way of defense, among other things, that all or a portion of the alleged damages to the Settlement Class were caused by economic conditions or factors other than the allegedly false or misleading statements or omissions asserted in the Action and that such damages are not recoverable. The Defendants have further contended, among other things, that the claims are barred by the statute of limitations as to all or some of the members of the Settlement Class. The Defendants also have denied and continue to deny, among other things, the allegations that Plaintiffs or the Settlement Class have suffered any damage, or that Plaintiffs or the Settlement Class were harmed by the conduct alleged in the Action. The Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in a complex case such as this. Nonetheless, the Defendants have concluded that further conduct of the Action would be protracted and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

51. If there were no Settlement and Plaintiffs failed to establish any essential legal or factual element of their claims against the Defendants, neither Plaintiffs nor members of the Settlement Class would recover anything from the Defendants. Also, if the Defendants were successful in proving any of their defenses, the Settlement Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all.

## HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT?

52. If you are a member of the Settlement Class, you are subject to the Settlement unless you timely request to be excluded. The Settlement Class consists of: all persons and entities who purchased or otherwise acquired an interest in any Certificate, except those Persons that timely and validly request exclusion from the class pursuant to and in accordance with the terms of the Preliminary Approval Order. Also excluded from the Settlement Class are (i) the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Federal Housing Finance Agency acting as conservator for either such entity; and (ii) each Defendant, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest, except for any Investment Vehicle.

53. RECEIPT OF THIS NOTICE DOES NOT NECESSARILY MEAN THAT YOU ARE A CLASS MEMBER OR THAT YOU ARE ELIGIBLE TO RECEIVE PROCEEDS FROM THE SETTLEMENT. IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU MUST SUBMIT THE ENCLOSED CLAIM FORM POSTMARKED NO LATER THAN NOVEMBER 14, 2014.

## HOW MUCH WILL MY PAYMENT BE?  WHEN WILL I RECEIVE IT?

## I.    THE PROPOSED PLAN OF ALLOCATION: GENERAL PROVISIONS

54. The Defendants have agreed to pay the Settlement Amount in cash no later than ten (10) business days after preliminary approval of the Settlement by the District Court. At this time, it is not possible to make any determination as to how much individual Class Members may receive from the Settlement.

55. The $275 million settlement amount, and the interest earned thereon while it is held in escrow before distribution, shall be the Settlement Fund. The Settlement Fund, less all Taxes, Tax Expenses, Notice and Administration Costs, and attorneys' fees and Litigation Expenses awarded to Lead Counsel (the "Net Settlement Fund"), shall be distributed based on the acceptable Proof of Claim Forms submitted by members of the Settlement Class ("Authorized Claimants"). The Net Settlement Fund will be distributed to Authorized Claimants who timely submit acceptable Proof of Claim Forms under the Plan of Allocation described below, or as otherwise ordered by the Court.

56. Your share of the Net Settlement Fund will depend on the aggregate number of Certificates (represented by valid and acceptable Proof of Claim Forms) that members of the Settlement Class submit to the Claims Administrator, relative to the Net Settlement Fund; which Certificates you purchased and when you purchased them; how many Certificates you purchased; whether the claims related to those Certificates have been dismissed; whether you held or sold those Certificates; the date on which you sold those Certificates; and the price at which you sold them, among other factors.  At this time, it is not possible to determine how much individual Settlement Class Members may receive from the Settlement.

57. A payment to any Authorized Claimant that would amount to less than $10.00 in total will not be included in the calculation of the Net Settlement Fund, and no payment to those members of the Settlement Class will be made.

58. To determine the amount that an Authorized Claimant may recover under the Plan of Allocation, Lead Counsel conferred with a valuation consultant who estimated the values of the Certificates.  The proposed Plan of Allocation is generally based upon the statutory measure of damages for claims asserted with respect to material misrepresentations or omissions in the offering documents issued in connection with the Certificates. This Plan of Allocation concerns damages under §11 of the federal Securities Act of 1933. Section 11 concerns liability for untrue statements and omissions in a registration statement, under which losses are calculated as the "difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof at the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought."  Securities Act of 1933, Section 11(e).

59. For each Authorized Claimant, a "Recognized Claim" will be calculated. The calculation of a "Recognized Claim," as defined in ¶ 69 below, is not intended to be an estimate of, nor does it indicate, the amount that a Settlement Class Member might have been able to recover after a trial. Nor is the calculation of a Recognized Claim pursuant to the Plan of Allocation an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement, which would depend on the total amount of all Recognized Claims. The Recognized Claim formula provides the basis for proportionally allocating the Net Settlement Fund to Authorized Claimants. That computation is only a method to weigh Settlement Class Members' claims against one another. Each Authorized Claimant will receive a pro rata share of the Net Settlement Fund based on his, her or its Recognized Claim.

60. The District Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the claim of any member of the Class.  The Court may approve this Plan of Allocation as proposed or it may modify it without further notice.

## II.   CALCULATION OF RECOGNIZED LOSS OR GAIN AMOUNTS

61. A "Recognized Loss or Gain Amount" should be calculated for each purchase or acquisition of a Certificate. The calculation of the Recognized Loss or Gain Amount will depend on several factors, including (i) which Certificate was purchased or acquired; (ii) when the Certificate was purchased or acquired; (iii) whether it was sold, and if so, when it was sold (*i.e.*, before or after suit) and for how much; and (iv) the value of the Certificate on its applicable "Date of First Suit".[7]

62. The Recognized Loss or Gain Amount will be calculated solely on the outstanding "Face Value" (*i.e.,* the principal amount) for each Certificate at the time of sale, or if not sold, the outstanding Face Value as of the applicable Date of First Suit *i.e.,* Authorized Claimants will not be allocated damages related to principal and interest payments they received prior to the Date of First Suit. In each calculation of Recognized Loss or Gain Amount, the Face Value Sold will be limited to 100% of the Face Value Purchased.

63. The percentage of the original aggregate principal balance that remains to be distributed in a mortgage-backed security is known as the "Mortgage Factor." We also define the percentage of the original aggregate principal balance that has been written off as the "Distribution Factor." The Factor and Distribution Factor for a specific Certificate on any date will be calculated as follows:

> *Mortgage Factor = (Certificate's Outstanding Aggregate Principal Balance/Certificate's Original Aggregate Principal Balance)*

---

[7] The Date of First Suit is the date on which a specific Certificate was first included in the Action.  A table listing the Date of First Suit for every Offering and CUSIP can be found at www.HarborviewMBSSettlement.com.

*Distribution Factor = (Certificate's Cumulative Principal Distributions/Certificate's Original Aggregate Principal Balance)*

The *Mortgage Factor* and *Distribution Factor* for each Certificate for each month and on the applicable Date of First Suit is set forth on the settlement website, www.HarborviewMBSSettlement.com.

64. For each calculation of the Recognized Loss or Gain Amount, the purchase price used for the calculation may not exceed the price at which the Certificate was offered to the public. Thus, if the actual purchase price exceeds the price at which the Certificate was offered to the public, the price at which it was offered to the public will be used as the purchase price. If the sales price or the value as of the applicable Date of First Suit exceeds the purchase price, then the calculation will result in a "Recognized Gain Amount" for that Certificate. If you have a Recognized Gain Amount for a Certificate, you will not receive recovery in this Settlement for that Certificate.

65. The "Recognized Loss Amount" for each Certificate is to be calculated in a manner consistent with the calculation of losses embodied in §11 of the Securities Act. In no case will the Recognized Loss Amount exceed the loss calculated as of the applicable Date of First Suit.

    a. The Recognized Loss is zero if the price at which the Certificate was sold or otherwise disposed is greater than the price at which the Certificate was offered to the public or the price at which it was purchased or acquired.

    b. The loss or gain of the Certificate's value on the applicable Date of First Suit is calculated as follows:

*Sale Proceeds that would have been realized on the applicable Date of First Suit*

| | |
|---|---|
| <u>Less</u> | *the Purchase Amount* |
| <u>Plus</u> | *the cumulative principal distributions between the time of the purchase and the applicable Date of First Suit.* |
| <u>Equals</u> | *[Face Value at applicable date of First Suit x (Value at applicable date of First Suit) / 100]* |
| <u>Less</u> | *[Face Value at the purchase date x (Purchase Price / 100)]* |
| <u>Plus</u> | *cumulative principal distributions between the date of purchase and date of First Suit*[8] |

    c. For Certificates sold whether prior to or after the applicable Date of First Suit, the loss or gain of the Certificate's value is calculated as follows:

*Sale Proceeds*

| | |
|---|---|
| <u>Less</u> | *the Purchase Amount* |
| <u>Plus</u> | *the cumulative principal distributions between the time of the purchase and sale.* |
| <u>Equals</u> | *[Face Value on the sale date x (Sale Price) / 100]* |
| <u>Less</u> | *[Face Value at the purchase date x (Purchase Price / 100)]* |
| <u>Plus</u> | *cumulative principal distributions between the date of purchase and sale date*[9] |

If a sale did not result in a complete disposition of an investor's ownership in a particular Certificate (*i.e.*, only a portion of the investor's ownership in the Certificate was sold), a Recognized Loss or Gain Amount, if any, related to the remaining portion of the Certificate would be calculated separately.

    d. For Certificates sold prior to the applicable Date of First Suit, the Recognized Loss or Gain Amount is calculated as the loss or gain of the Certificate's value upon sale (i.e., 65(c) above).

    e. For Certificates sold after the applicable Date of First Suit, the Recognized Loss Amount is calculated as the lesser (in absolute value) of the loss of the Certificate's value on the applicable Date of First Suit (i.e., 65(b) above) or the loss of the Certificate's value upon sale (i.e., 65(c) above). For Certificates sold prior to or after the applicable Date of First Suit, the Recognized Gain Amount is calculated as the greater of the gain of the Certificate's value on the applicable Date of First Suit (i.e., 65(b) above) or the gain of the Certificate's value upon sale (i.e., 65(c) above).

---

[8] The *Face Value at applicable date of First Suit* is equal to the original face value of the Certificates purchased times the *Mortgage Factor* on the date of the First Suit. *Cumulative Principal Distributions* between the date of purchase and date of First Suit are calculated based on the change in the *Distribution Factor* between the purchase date and the date of the First Suit times the original face value of the Certificates purchased and sold.

[9] The *Face Value at applicable purchase or sale date* is equal to the original face value of the Certificates purchased times the *Mortgage Factor* on the purchase or sale date, respectively. *Cumulative Principal Distributions* between the purchase and sale date are calculated based on the change in the *Distribution Factor* between the purchase date and the sale date times the original face value of the Certificates purchased and sold.

    f.    For Certificates that were not sold and have been retained, the Recognized Loss or Gain Amount is loss or gain of the Certificate's value on the applicable Date of First Suit calculated in 65(b), above.

66.    Notwithstanding the above provisions, the Recognized Loss or Gain Amount for any Certificate purchases or acquisitions that occurred after the Date of First Suit is zero.

67.    Prior to the date of the Settlement, claims relating to Certificates for two of the fourteen Harborview trusts included in the Settlement had been dismissed from the case by the District Court ("Dismissed Certificates")[10] and, for Certificates in the remaining twelve Harborview trusts, the District Court had excluded from the class those persons and entities who purchased those Certificates more than 10 trading days after they were first publicly offered. Thus, at the time of settlement, the only certified class consisted of purchasers of Certificates in the twelve Harborview trusts who bought within ten trading days of each specific date on which the Certificates were first publicly offered. Accordingly, the Plan of Allocation distinguishes amongst three groups:

> Group 1 will be composed of those Certificate holders (the "Ten Trading Day Claimants") who purchased or acquired Certificates in any one of the following twelve Harborview trusts – Harborview 2006-4, 2006-5, 2006-6, 2006-7, 2006-9, 2006-11, 2006-12, 2006-14, 2007-1, 2007-2, 2007-5 and 2007-7 – directly from Defendants or their agents within ten trading days of the date when their Certificates were first publicly offered (the "Ten Trading Day Period");

> Group 2 will be composed of those Certificate holders (the "General Claimants") who purchased or acquired Certificates in any one of the following twelve Harborview trusts - Harborview 2006-4, 2006-5, 2006-6, 2006-7, 2006-9, 2006-11, 2006-12, 2006-14, 2007-1, 2007-2, 2007-5 and 2007-7 – but who either did not purchase their Certificates directly from Defendants or their agents, or who purchased their Certificates outside the Ten Day Trading Period, or both;

> Group 3 will be composed of those Certificate holders (the "Dismissed Claimants") who purchased or acquired Certificates in either of the following two Harborview Trusts – Harborview 2006-8 and 2006-10.

> Of the Settlement Amount, approximately 88.18% or $242.5 million, will be allocated to the Ten Trading Day Claimants; approximately 10.45% of the Settlement Amount, or $28.75 million, will be allocated to the General Claimants, and approximately 1.36% of the Settlement Amount, or $3.75 million, will be allocated to the Dismissed Claimants.

68.    A "Total Recognized Loss by CUSIP" will be calculated for each Authorized Claimant on a CUSIP by CUSIP basis. Accordingly, multiple transactions by an Authorized Claimant in a single CUSIP will be netted; *i.e.*, the total Recognized Gain or Loss Amounts for that CUSIP shall be calculated by (1) totaling the Recognized Loss Amounts for that CUSIP; and (2) subtracting from that total Recognized Loss Amount the total of all Recognized Gain Amounts for that CUSIP. A Total Recognized Loss for a CUSIP cannot be less than zero.

69.    Each Authorized Participant's "Recognized Claim" is the sum of all that Authorized Claimant's Total Recognized Loss by CUSIPs.

## III.   DISTRIBUTION OF THE NET SETTLEMENT FUND

70.    The "Recognized Claim" will be used solely to calculate the relative amount of the Net Settlement Fund for each Authorized Claimant and does not reflect the actual amount an Authorized Claimant may expect to recover from the Net Settlement Fund. The combined Recognized Claims of all Authorized Claimants may be greater than the Net Settlement Fund. If this is the case, and subject to the $10.00 minimum payment requirement described in ¶ 57 above, each Authorized Claimant shall receive his, her or its pro rata share of the Net Settlement Fund, which shall be his, her or its Recognized Claim divided by the total of all Recognized Claims to be paid, multiplied by the total amount in the Net Settlement Fund.

71.    Payment pursuant to the Plan of Allocation shall be conclusive against all Authorized Claimants. No Person shall have any claim based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further order(s) of the Court against Lead Counsel, Plaintiffs, Settlement Class Members, the Claims Administrator, Defendants and the Released Parties (defined below), or any person designated by Lead Counsel. All members of the Settlement Class who fail to timely submit an acceptable Proof of Claim Form by the deadline set by the Court, or such other deadline as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Settlement, but will in all other respects be subject to and bound by the terms of the Settlement, including the release of the Released Claims.

---

[10]    The Certificates in the Harborview 2006-8 and 2006-10 trusts.

72.     The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the claim of any member of the Settlement Class.

73.     The Plan of Allocation set forth herein is the proposed plan submitted by Plaintiffs and Lead Counsel for the Court's approval. The Court may approve this plan as proposed or it may modify it without further notice to the Settlement Class.

### WHAT RIGHTS AM I GIVING UP BY AGREEING TO THE SETTLEMENT?

74.     If the Settlement is approved, the Court will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims in the Action and will provide that Plaintiffs and all other Class Members, on behalf of themselves and any of their personal representatives, spouses, domestic, partners, trustees, heirs, executors, administrators, successors or assigns shall be deemed to have – and by operation of the Judgment shall have – fully and finally released, dismissed and forever discharged the Released Claims, and shall forever be enjoined from pursuing any or all Released Claims (including, without limitation, instigating, voting in favor of or otherwise supporting the assertion of any claim asserting contractual repurchase (or other "putback") rights with respect to any residential mortgage loan included in any of the Fourteen Remaining Offerings other than in any action filed prior to February 14, 2014), whether directly or indirectly, whether on their own behalf or otherwise, and regardless of whether or not such Settlement Class Member executes and delivers a Proof of Claim Form (except that the foregoing provision shall not apply to any such representative, spouse, domestic partner, trustee, heir, executor, administrator, successor or assign who independently would be a member of the Settlement Class and timely excludes himself, herself or itself).

75.     There is a risk that Plaintiffs and Settlement Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly fully, finally and forever settle and release – and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have fully, finally and forever settled and released – any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs acknowledge, and Class Members by law and operation of the Judgment shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" (defined below) in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

76.     The Judgment also will provide that the Defendants and each of the other Released Parties will be deemed to have released, dismissed and forever discharged Plaintiffs, each and all of the Settlement Class Members, and Lead Counsel from all claims (including, without limitation, unknown claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, Settlement or resolution of the Action or the Released Claims.

77.     "Released Claims" means any and all claims (including "Unknown Claims," as defined below), demands, rights, liabilities, and causes of action of every nature and description, known or unknown, suspected or unsuspected, contingent or non-contingent, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed, whether arising under federal, state, common or foreign law or at equity, that Plaintiffs or any Settlement Class Member (a) asserted in this Action, or (b) could have asserted in the Action or in any other proceeding or forum arising from or related in any way to the acts, failures to act, transactions, facts, events, matters, disclosures, statements, occurrences, representations, or omissions asserted or that could have been asserted in the Action against any Released Party (defined below); provided, however, that "Released Claims" shall not include a claim, if any, filed prior to February 14, 2014 solely and exclusively to the extent such claim asserted contractual repurchase rights with respect to any residential mortgage loan including in any of the following Harborview trusts:  Harborview 2006-4, Harborview 2006-5, Harborview 2006-6, Harborview 2006-7, Harborview 2006-8, Harborview 2006-9, Harborview 2006-10, Harborview 2006-11, Harborview 2006-12, Harborview 2006-14, Harborview 2007-1, Harborview 2007-2, Harborview 2007-5, and Harborview 2007-7.

78.     "Released Parties" means (i) each Defendant and his, her or its parents, subsidiaries, and affiliates and all of their respective past, current, and future respective directors, officers, employees, partners, insurers, co-insurers, reinsurers, agents, controlling shareholders, shareholders, attorneys, accountants, auditors, advisors, investment advisors, personal or legal representatives, predecessors, successors, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities, and (ii) any entity in which any Defendant has a controlling interest, and all of their respective property.

| WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING? HOW WILL THE LAWYERS BE PAID? |
|---|

79. Lead Counsel has not received any payment for its services in pursuing claims against Defendants on behalf of the Settlement Class, nor has Lead Counsel been reimbursed for its out-of-pocket expenses. Before final approval of the Settlement, Lead Counsel intends to apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 19% of the Settlement Fund (or $52,250,000.00), net of Court-approved Litigation Expenses, plus interest at the same rate and for the same time period as earned by the Settlement Fund. At the same time, Lead Counsel also intends to apply for the reimbursement of certain Litigation Expenses in an amount not to exceed $3,000,000.00, plus interest at the same rate and for the same time period as earned by the Settlement Fund. Litigation Expenses may include reimbursements for, among other things, lost wages and litigation related expenses of Plaintiffs in accordance with 15 U.S.C. § 77z-1a(4). The sums approved by the Court will be paid from the Settlement Fund. Members of the Settlement Class are not personally liable for the payment of these sums.

80. Defendants take no position on the request by Lead Counsel for attorneys' fees and reimbursement of Litigation Expenses or on the allocation of attorneys' fees and expenses among counsel representing the Settlement Class.

| HOW DO I PARTICIPATE IN THE SETTLEMENT? WHAT DO I NEED TO DO? |
|---|

81. If you purchased Certificates described above, and you are not excluded by the definition of the Settlement Class and you do not timely exclude yourself from the Settlement Class in the manner provided in this Notice, then you are a member of the Settlement Class and you will be bound by the proposed Settlement if the Court approves it, and by any judgment or determination of the Court affecting the Settlement Class. If you are a member of the Settlement Class, you must submit a Proof of Claim Form and supporting documentation to establish your entitlement to share in the Settlement. A Proof of Claim Form is included with this Notice, or you may go to the website maintained by the Claims Administrator for the Settlement to request that a Proof of Claim Form be mailed to you. The website is www.HarborviewMBSSettlement.com. You may also request a Proof of Claim Form by calling toll-free 1-866-893-8437 or emailing info@HarborviewMBSSettlement.com. Copies of the Proof of Claim Form can also be downloaded from Lead Counsel's website at www.cohenmilstein.com. Those who exclude themselves from the Settlement Class, and those who do not submit timely and valid Proof of Claim Forms with adequate supporting documentation will not be eligible to share in the Settlement. Please retain all records of your ownership of, or transactions in the Certificates, as they may be needed to document your claim.

82. As a Settlement Class Member, you are represented by Plaintiffs and Lead Counsel unless you enter an appearance through counsel of your own choice at your own expense. You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her notice of appearance on the attorneys listed in the section below entitled, "When and Where Will the Court Decide Whether to Approve the Settlement?"

83. If you do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section below entitled, "What If I Do Not Want To Be A Part Of The Settlement? How Do I Exclude Myself?"

84. If you wish to object to the Settlement or any of its terms, the proposed Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section below entitled, "When and Where Will the Court Decide Whether to Approve the Settlement?"

| WHAT IF I DO NOT WANT TO BE A PART OF THE SETTLEMENT? HOW DO I EXCLUDE MYSELF? |
|---|

85. Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, including those concerning the Settlement, whether favorable or unfavorable, unless such person or entity mails, by first class mail (or its equivalent outside the U.S.), or otherwise delivers a written Request for Exclusion from the Settlement Class, addressed to Harborview MBS Claims Administrator, P.O. Box 43253, Providence, RI 02940-3253. The exclusion request must be received no later than September 30, 2014. Each Request for Exclusion must clearly indicate the name, address and telephone number of the person seeking exclusion, that the sender requests to be excluded from the Settlement Class in the New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group plc, et al., Civil Action No. 08 Civ. 5093 (LAP), and must be signed by such person. Such persons requesting exclusion are also directed to provide the following information: (i) the identity and original face value of Certificates purchased (or otherwise acquired) or sold; (ii) the prices or other consideration paid or received for

such Certificates; (iii) the date of each purchase or sale transaction; and (iv) proper evidence of the transactions. Requests for Exclusion will not be valid if they do not include the information set forth above and are not received within the time stated above, unless the Court otherwise determines.

86.  If a person or entity requests to be excluded from the Settlement Class, that person or entity will not receive any benefit provided for in the Stipulation.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**
**DO I HAVE TO COME TO THE HEARING?**
**MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

---

87.  **If you do not wish to object in person to the proposed Settlement and/or the application for reimbursement of litigation expenses, you do not need to attend the Final Approval Hearing. You can object to or participate in the Settlement without attending the Final Approval Hearing.**

88.  The Final Approval Hearing will be held on October 28, 2014, at 9:30 a.m., before the Honorable Loretta A. Preska, at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 12A, New York, New York 10007. The Court reserves the right to approve the Settlement at or after the Final Approval Hearing without further notice to the members of the Settlement Class. The Court has the right to approve the Settlement, the Plan of Allocation or the request for attorneys' fees and reimbursement of Litigation Expenses at or after the Final Approval Hearing without further notice to the members of the Settlement Class.

89.  Any Settlement Class Member who does not request exclusion in accordance with ¶¶ 85-86 above may object to the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses. Objections or oppositions must be in writing. You must file any written objection or opposition, together with copies of all other supporting papers and briefs, with the Clerk's Office at the United States District Court for the Southern District of New York at the address set forth below on or before October 14, 2014. You must also serve the papers on Lead Counsel for the Settlement Class and counsel for the Defendants at the addresses set forth below so that the papers are *received* on or before October 14, 2014.

| Clerk's Office | Lead Counsel for the Class | Counsel For Defendants |
|---|---|---|
| UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK 500 Pearl Street New York, NY 10007 | COHEN MILSTEIN SELLERS & TOLL PLLC Joel P. Laitman Christopher Lometti Michael Eisenkraft Kenneth M. Rehns 88 Pine Street, 14th Floor New York, NY 10005 <br><br> Steven J. Toll 1100 New York Ave, N.W. Ste 500 West Washington, D.C. 20005 | SIMPSON THACHER & BARTLETT LLP Thomas C. Rice Alan Turner 425 Lexington Avenue New York, NY 10017 |

90.  Any objection must include: (a) the full name, address, and phone number of the objecting Settlement Class Member; (b) a list and documentation evidencing all of the Settlement Class Member's transactions involving the Certificates, including brokerage confirmation receipts or other competent documentary evidence of such transactions, including the amount and date of each purchase or sale and the prices paid and/or received; (c) a written statement of all grounds for the objection accompanied by any legal support for the objection; (d) copies of any papers, briefs or other documents upon which the objection is based; (e) a list of all persons who will be called to testify in support of the objection; (f) a statement of whether the objector intends to appear at the Final Approval Hearing; (g) a list of other cases in which the objector or the objector's counsel have appeared either as settlement objectors or as counsel for objectors in the preceding five years; and (h) the objector's signature, even if represented by counsel. Persons who intend to object to the Settlement, the Plan of Allocation and/or to Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses, and who desire to present evidence at the Final Approval Hearing, must include in their written objections the exhibits they intend to introduce into evidence at the Final Approval Hearing.

91.  You may not object to the Settlement, or any aspect of it, if you are not a member of the Settlement Class or if you excluded yourself from the Settlement Class.

92. If you wish to be heard orally at the Final Approval Hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you have filed and served a timely written objection as described above, you also must notify the above counsel on or before October 14, 2014, concerning your intention to appear.  Persons who intend to object and desire to present evidence at the Final Approval Hearing must include in their written objections, the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.

93. You may file a written objection without having to appear at the Final Approval Hearing. You may not appear at the Final Approval Hearing to present your objection, however, unless you first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

94. You are not required to hire an attorney to represent you in making written objections or in appearing at the Final Approval Hearing. If you decide to hire an attorney, which will be at your own expense, however, he or she must file a notice of appearance with the Court and serve it on Lead Counsel so that the notice is received on or before October 14, 2014.

95. If you object to the Settlement, the Plan of Allocation and/or Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses, or otherwise request to be heard at the Final Approval Hearing in the manner stated above, you are submitting to the jurisdiction of the Court with respect to the subject matter of the Settlement, including, but not limited to, the release of the Released Claims contained in the Judgment.  If the Court overrules your objection and approves the Settlement or the part of the Settlement to which you have objected, you only will potentially share in the Net Settlement Fund if you file a Proof of Claim Form in the manner stated in ¶ 81 above and the Claims Administrator approves your claim.

96. The Settlement Hearing may be adjourned by the Court without further written notice to the Settlement Class. If you intend to attend the Final Approval Hearing, you should confirm the date and time with Lead Counsel.

   **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and will be forever foreclosed from making any objection to the proposed Settlement or Lead Counsel's request for reimbursement of expenses. Settlement Class Members do not need to appear at the hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT CERTIFICATES ON SOMEONE ELSE'S BEHALF?

97. If you purchased or otherwise acquired the Certificates for the beneficial interest of a person or organization other than yourself, you must either (i) send a copy of this Notice to the beneficial owner of such Certificates, postmarked no later than fourteen (14) days after you receive this Notice, or (ii) provide to Harborview MBS Claims Administrator, P.O. Box 43253, Providence, RI 02940-3253, the names and addresses of such persons no later than fourteen (14) days after you receive this Notice. If you choose the second option, the Claims Administrator will send a copy of the Notice to the beneficial owner. Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Copies of this Notice may also be obtained by calling Lead Counsel at (212) 838-7797 and may be downloaded from the settlement website, www.HarborviewMBSSettlement.com or from Lead Counsel's website, www.cohenmilstein.com.

## CAN I SEE THE COURT FILE? WHO SHOULD I CONTACT IF I HAVE QUESTIONS?

98. This Notice contains only a summary of the terms of the proposed Settlement. More detailed information about the matters involved in the Action is available at www.HarborviewMBSSettlement.com, including, among other documents, copies of the Stipulation and the Third Amended Complaint. All inquiries concerning this Notice should be directed to:

HARBORVIEW MBS
CLAIMS ADMINISTRATOR
P.O. Box 43253
Providence, RI  02940-3253
Toll-Free: 1-866-893-8437

**OR**

Joel P. Laitman, Esq.
Christopher Lometti, Esq.
Michael Eisenkraft, Esq.
Kenneth M. Rehns, Esq.

COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor

info@HarborviewMBSSettlement.com

New York, NY 10005
(212) 838-7797

jlaitman@cohenmilstein.com
clometti@cohenmilstein.com
meisenkraft@cohenmilstein.com
krehns@cohenmilstein.com

**Lead Counsel**

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE
OF THE CLERK OF COURT REGARDING THIS NOTICE.**

Dated:  July 17, 2014

By Order of the Clerk of Court
United States District Court
for the Southern District of New York

<table>
<tr><td>

**MUST BE
POSTMARKED
NO LATER THAN
NOVEMBER 14, 2014**

</td><td>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
*NEW JERSEY CARPENTERS VACATION FUND, et al., v.
THE ROYAL BANK OF SCOTLAND GROUP, PLC, et al.*
Case No. 08-cv-5093-LAP
www.HarborviewMBSSettlement.com

</td><td>



</td></tr>
</table>

## PROOF OF CLAIM FORM AND RELEASE

### INSTRUCTIONS FOR COMPLETING PROOF OF CLAIM AND RELEASE FORM

## GENERAL

1. To recover as a member of the Settlement Class based on your claims in the action entitled *New Jersey Carpenters Vacation Fund, et al., v. The Royal Bank of Scotland Group, plc, et al.,* Civ. No. 08-cv-5093-LAP (the "Action"),[1] you must complete and, on page 6 hereof, sign this Proof of Claim and Release Form ("Proof of Claim Form"). If you fail to file a properly addressed (as set forth in paragraph 3 below) Proof of Claim Form, your claim may be rejected and you may be precluded from any recovery from the Settlement Fund created in connection with the proposed Settlement of the Action.

2. Submission of this Proof of Claim Form, however, does not assure that you will share in the proceeds of the Settlement of the litigation.

3. YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM FORM POSTMARKED ON OR BEFORE NOVEMBER 14, 2014, ADDRESSED AS FOLLOWS:

    **Harborview MBS Claims Administrator**
    P.O. Box 43253
    Providence, RI  02940-3253

4. If you are NOT a member of the Settlement Class (as defined in the Notice of Pendency of Class Action, Preliminary Approval Order, and Proposed Settlement, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice")) DO NOT submit a Proof of Claim Form.

5. If you are a member of the Settlement Class and you did not timely and validly request exclusion in connection with the proposed Settlement, you are bound by the terms of any judgment entered in the Action, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM FORM.

## CLAIMANT IDENTIFICATION

6. If you purchased or acquired Certificates and held the certificate(s) in your name, you are the beneficial purchaser as well as the record purchaser. If, however, you purchased or acquired Certificates and the certificate(s) were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser and the third party is the record purchaser.

7. Use Part I of this form entitled "Claimant Identification" to identify each purchaser of record ("nominee"), if different from the beneficial purchaser of Certificates which form the basis of this claim. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER(S), OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER(S), OF THE CERTIFICATES UPON WHICH THIS CLAIM IS BASED.

8. All joint beneficial purchasers must sign this claim. Executors, administrators, guardians, conservators, and trustees must complete and sign this claim on behalf of beneficial purchasers represented by them and their authority must accompany this claim and their titles or capacities must be stated. The last four digits of the Social Security (or taxpayer identification) number and telephone number of the beneficial purchaser(s) may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## IDENTIFICATION OF TRANSACTION(S)

9. Use Part II of this form entitled "Schedule of Transactions in Harborview Certificates" to supply all required details of your transaction(s) regarding the Certificates. If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

10. On the schedules, provide all of the requested information with respect to *all* of your purchases or acquisitions of the Certificates, and all sales and dispositions thereof, whether such transactions resulted in a profit or a loss. Failure to report all such transactions may result in the rejection of your claim.

11. List each transaction separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list.

12. Copies of broker confirmations or other documentation of your transaction(s) in the Certificates should be attached to your claim. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

---

[1]   This Proof of Claim Form incorporates by reference the definitions in the Stipulation of Settlement, dated April 17, 2014 ("Settlement Agreement"), and all capitalized terms used, but not defined herein, shall have the same meanings as in the Settlement Agreement. The Settlement Agreement can be obtained at www.HarborviewMBSSettlement.com.

# PROOF OF CLAIM FORM

<table>
<tr>
<td>

**MUST BE
POSTMARKED
NO LATER THAN
NOVEMBER 14, 2014**

</td>
<td>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
*NEW JERSEY CARPENTERS VACATION FUND, et al., v.*
*THE ROYAL BANK OF SCOTLAND GROUP, PLC, et al.*
Case No. 08-cv-5093-LAP
www.HarborviewMBSSettlement.com

</td>
<td>

**HMB**

</td>
</tr>
</table>

## PART I: CLAIMANT IDENTIFICATION

Beneficial Purchaser's Name (First, Middle, Last)

Record Purchaser's Name (if different from beneficial purchaser listed above)

Address Line 1 (Number and Street or P.O. Box)

Address Line 2 (if needed)

| City | State or Province | Zip Code |
|---|---|---|

| Country Name | Email |
|---|---|

| Telephone Number (Work) | Telephone Number (Home) |
|---|---|

Last Four Digits of Social Security Number (for individuals)     **OR**     Last Four Digits of Taxpayer Identification Number
(for estates, trusts, corporations, etc.)

## PART II: SCHEDULE OF TRANSACTIONS IN HARBORVIEW CERTIFICATES

A. **Purchases and Acquisitions:** List all purchases and acquisitions of the Certificates listed on www.HarborviewMBSSettlement.com. Be sure to attach the required documentation.

| Trade Date (List Chronologically) (Month/Day/Year) | CUSIP | Face Value | Price | Purchased From RBS or Broker? | Total Cost (excluding accrued interest, commissions, taxes & fees) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

B. **Sales and dispositions:** List all sales and dispositions of the Certificates listed on www.HarborviewMBSSettlement.com. Be sure to attach the required documentation.

| Trade Date (List Chronologically) (Month/Day/Year) | CUSIP | Face Value | Price | Total Proceeds (excluding accrued interest, commissions, taxes & fees) |
|---|---|---|---|---|
| | | | | |
| | | | | |

C. **Certificates Held:** List all Certificates Held on the "Date of First Suit." Include documentation if available.

| CUSIP | Face Value | Date of First Suit |
|---|---|---|
| | | |
| | | |
| | | |

| Offering | Date of First Suit | Offering | Date of First Suit |
|---|---|---|---|
| Harborview Series 2006-4 | May 14, 2008 | Harborview Series 2006-11 | May 19, 2009 |
| Harborview Series 2006-5 | May 14, 2008 | Harborview Series 2006-12 | May 19, 2009 |
| Harborview Series 2006-6 | May 19, 2009 | Harborview Series 2006-14 | May 19, 2009 |
| Harborview Series 2006-7 | May 19, 2009 | Harborview Series 2007-1 | May 19, 2009 |
| Harborview Series 2006-8 | May 19, 2009 | Harborview Series 2007-2 | May 19, 2009 |
| Harborview Series 2006-9 | May 14, 2008 | Harborview Series 2007-5 | May 19, 2009 |
| Harborview Series 2006-10 | May 19, 2009 | Harborview Series 2007-7 | May 19, 2009 |

For a listing of "Date of First Suit" by CUSIP, please visit www.HarborviewMBSSettlement.com

**If you require additional space to list your transactions, use photocopies of this page and check this box.**

YOU MUST READ THE RELEASE.  YOUR SIGNATURE ON PAGE 6
WILL CONSTITUTE YOUR ACKNOWLEDGMENT OF THE RELEASE.

## PART III: SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I (WE) SUBMIT THIS PROOF OF CLAIM FORM UNDER THE TERMS OF THE SETTLEMENT AGREEMENT DESCRIBED IN THE NOTICE.  I (WE) ALSO SUBMIT TO THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK WITH RESPECT TO MY (OUR) CLAIM AS A CLASS MEMBER AND FOR PURPOSES OF ENFORCING THE RELEASE SET FORTH HEREIN.  I (WE) FURTHER ACKNOWLEDGE THAT I AM (WE ARE) BOUND BY AND SUBJECT TO THE TERMS OF ANY JUDGMENT THAT MAY BE ENTERED IN THE ACTION.  I (WE) AGREE TO FURNISH ADDITIONAL INFORMATION TO THE CLAIMS ADMINISTRATOR TO SUPPORT THIS CLAIM IF REQUESTED TO DO SO. I (WE) HAVE NOT SUBMITTED ANY OTHER CLAIM COVERING THE SAME PURCHASES OR SALES OF THE CERTIFICATES AND KNOW OF NO OTHER PERSON HAVING DONE SO ON MY (OUR) BEHALF.

## PART IV: RELEASE

1. I (WE) HEREBY ACKNOWLEDGE FULL AND COMPLETE SATISFACTION OF, AND DO HEREBY FULLY, FINALLY, AND FOREVER SETTLE, RELEASE, AND DISCHARGE FROM THE RELEASED CLAIMS EACH AND ALL OF THE "RELEASED PARTIES," DEFINED AS EACH AND ALL OF DEFENDANTS AND EACH AND ALL OF THEIR RESPECTIVE PRESENT OR FORMER PARENTS, SUBSIDIARIES, AFFILIATES (AS DEFINED IN 17 C.F.R. §210.1-02(B)), INSURERS, CO-INSURERS, REINSURERS, SUCCESSORS AND ASSIGNS, PREDECESSORS, AND EACH AND ALL OF THE RESPECTIVE PRESENT OR FORMER OFFICERS, DIRECTORS, EMPLOYEES, EMPLOYERS, MEMBERS, SHAREHOLDERS, ATTORNEYS, ACCOUNTANTS, FINANCIAL ADVISORS, AUDITORS, COMMERCIAL BANK LENDERS, INVESTMENT BANKERS, REPRESENTATIVES, AGENTS, GENERAL AND LIMITED PARTNERS AND PARTNERSHIPS, JOINT VENTURES, DIVISIONS, ANY PERSON, FIRM, TRUST, CORPORATION, OFFICER, DIRECTOR, OR OTHER INDIVIDUAL OR ENTITY IN WHICH THEY HAVE A CONTROLLING INTEREST AND ANY TRUST OF WHICH ANY DEFENDANT IS A SETTLOR, TRUSTEE OR BENEFICIARY, SPOUSE, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, AFFILIATES, AND ASSIGNS OF EACH OF THEM.

2. "RELEASED CLAIMS" MEANS ANY AND ALL CLAIMS (INCLUDING "UNKNOWN CLAIMS," AS DEFINED BELOW), DEMANDS, RIGHTS, LIABILITIES, AND CAUSES OF ACTION OF EVERY NATURE AND DESCRIPTION, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, CONTINGENT OR NON-CONTINGENT, MATURED OR UNMATURED, WHETHER OR NOT CONCEALED OR HIDDEN, WHICH NOW EXIST, OR HERETOFORE HAVE EXISTED, OR CAN, SHALL OR MAY EXIST, WHETHER ARISING UNDER FEDERAL, STATE, COMMON OR FOREIGN LAW OR AT EQUITY, THAT PLAINTIFFS OR ANY SETTLEMENT CLASS MEMBER (A) ASSERTED IN THIS ACTION, OR (B) COULD HAVE ASSERTED IN THE ACTION OR IN ANY OTHER PROCEEDING OR FORUM ARISING FROM OR RELATED IN ANY WAY TO THE ACTS, FAILURES TO ACT, TRANSACTIONS, FACTS, EVENTS, MATTERS, DISCLOSURES, STATEMENTS, OCCURRENCES, REPRESENTATIONS, OR OMISSIONS ASSERTED OR THAT COULD HAVE BEEN ASSERTED IN THE ACTION AGAINST ANY RELEASED PARTY; PROVIDED, HOWEVER, THAT "RELEASED CLAIMS" SHALL NOT INCLUDE A CLAIM, IF ANY, FILED PRIOR TO FEBRUARY 14, 2014, SOLELY AND EXCLUSIVELY TO THE EXTENT SUCH CLAIM ASSERTED CONTRACTUAL REPURCHASE RIGHTS WITH RESPECT TO ANY RESIDENTIAL MORTGAGE LOAN INCLUDING IN ANY OF THE FOLLOWING HARBORVIEW TRUSTS:  HARBORVIEW 2006-4, HARBORVIEW 2006-5, HARBORVIEW 2006-6, HARBORVIEW 2006-7, HARBORVIEW 2006-8, HARBORVIEW 2006-9, HARBORVIEW 2006-10, HARBORVIEW 2006-11, HARBORVIEW 2006-12, HARBORVIEW 2006-14, HARBORVIEW 2007-1, HARBORVIEW 2007-2, HARBORVIEW 2007-5, AND HARBORVIEW 2007-7.

3. "UNKNOWN CLAIMS" MEANS ANY AND ALL RELEASED CLAIMS WHICH PLAINTIFFS OR ANY SETTLEMENT CLASS MEMBER DOES NOT KNOW OR SUSPECT, OR SHOULD HAVE KNOWN OR SUSPECTED, TO EXIST IN HIS, HER OR ITS FAVOR AT THE TIME OF THE RELEASE OF THE RELEASED PERSONS WHICH, IF KNOWN BY HIM, HER OR IT, MIGHT HAVE AFFECTED HIS, HER OR ITS SETTLEMENT WITH AND RELEASE OF THE RELEASED PARTIES, OR MIGHT HAVE AFFECTED HIS, HER OR ITS DECISION NOT TO OBJECT TO THIS SETTLEMENT.  WITH RESPECT TO ANY AND ALL RELEASED CLAIMS, THE SETTLING PARTIES STIPULATE AND AGREE THAT, UPON THE EFFECTIVE DATE, PLAINTIFFS SHALL EXPRESSLY WAIVE, AND EACH OF THE SETTLEMENT CLASS MEMBERS SHALL BE DEEMED TO HAVE WAIVED, AND BY OPERATION OF THE JUDGMENT SHALL HAVE EXPRESSLY WAIVED, TO THE FULLEST EXTENT PERMITTED BY LAW THE PROVISIONS, RIGHTS, AND BENEFITS OF CALIFORNIA CIVIL CODE §1542, WHICH PROVIDES:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

PLAINTIFFS SHALL EXPRESSLY, AND EACH SETTLEMENT CLASS MEMBER SHALL BE DEEMED TO HAVE, AND BY OPERATION OF THE JUDGMENT SHALL HAVE, EXPRESSLY WAIVED ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY ANY LAW OF ANY STATE OR TERRITORY OF THE UNITED STATES, OR PRINCIPLE OF COMMON LAW, WHICH IS SIMILAR, COMPARABLE, OR EQUIVALENT TO CALIFORNIA CIVIL CODE §1542.  PLAINTIFFS AND SETTLEMENT CLASS MEMBERS MAY HEREAFTER DISCOVER FACTS IN ADDITION TO OR DIFFERENT FROM THOSE WHICH HE, SHE OR IT NOW KNOWS OR BELIEVES TO BE TRUE WITH RESPECT TO THE SUBJECT MATTER OF THE RELEASED CLAIMS, BUT LEAD PLAINTIFF SHALL EXPRESSLY, AND EACH CLASS MEMBER, UPON THE EFFECTIVE DATE, SHALL BE DEEMED TO HAVE, AND BY OPERATION OF THE JUDGMENT SHALL HAVE, FULLY, FINALLY, AND FOREVER SETTLED AND RELEASED ANY AND ALL RELEASED CLAIMS, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, CONTINGENT OR NON-CONTINGENT, WHETHER OR NOT CONCEALED OR HIDDEN, WHICH NOW EXIST, OR HERETOFORE HAVE EXISTED, UPON ANY THEORY OF LAW OR EQUITY NOW EXISTING OR COMING INTO EXISTENCE IN THE FUTURE, INCLUDING, BUT NOT LIMITED TO, CONDUCT THAT IS NEGLIGENT, RECKLESS, INTENTIONAL, WITH OR WITHOUT MALICE, OR A BREACH OF ANY DUTY, LAW, OR RULE, WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS.  PLAINTIFFS ACKNOWLEDGE, AND THE SETTLEMENT CLASS MEMBERS SHALL BE DEEMED BY LAW AND OPERATION OF THE JUDGMENT TO HAVE ACKNOWLEDGED, THAT THE FOREGOING WAIVER AND INCLUSION OF "UNKNOWN CLAIMS" WAS SEPARATELY BARGAINED FOR AND A MATERIAL ELEMENT OF THE SETTLEMENT OF WHICH THIS RELEASE IS A PART.

4.   THIS RELEASE SHALL BE OF NO FORCE OR EFFECT UNLESS AND UNTIL THE COURT APPROVES THE SETTLEMENT AGREEMENT AND THE SETTLEMENT AGREEMENT BECOMES EFFECTIVE ON THE EFFECTIVE DATE (AS DEFINED IN THE SETTLEMENT AGREEMENT).

5.   I (WE) HEREBY WARRANT AND REPRESENT THAT I (WE) HAVE NOT ASSIGNED OR TRANSFERRED OR PURPORTED TO ASSIGN OR TRANSFER, VOLUNTARILY OR INVOLUNTARILY, ANY MATTER RELEASED PURSUANT TO THIS RELEASE OR ANY OTHER PART OR PORTION THEREOF.

6.   I (WE) HEREBY WARRANT AND REPRESENT THAT I (WE) HAVE INCLUDED INFORMATION ABOUT ALL OF MY (OUR) PURCHASES AND SALES OF THE CERTIFICATES.

7.   I (WE) HEREBY WARRANT AND REPRESENT THAT I AM (WE ARE) NOT EXCLUDED FROM THE CLASS AS DEFINED HEREIN AND IN THE NOTICE.

8.   I (WE) CERTIFY THAT I AM (WE ARE) NOT SUBJECT TO BACKUP WITHHOLDING UNDER THE PROVISIONS OF SECTION 3406(A)(1)(C) OF THE INTERNAL REVENUE CODE.

**NOTE: IF YOU HAVE BEEN NOTIFIED BY THE INTERNAL REVENUE SERVICE THAT YOU ARE SUBJECT TO BACKUP WITHHOLDING, PLEASE STRIKE OUT THE LANGUAGE THAT YOU ARE NOT SUBJECT TO BACKUP WITHHOLDING IN THE CERTIFICATION ABOVE.**

**I (WE) DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING INFORMATION SUPPLIED BY THE UNDERSIGNED IS TRUE AND CORRECT.**

Executed this _____ day of _____, in _____. _____
                            (Month/Year)                 (City)                (State/Country)

| | |
|---|---|
| Signature of Claimant | Signature of Joint Claimant, if any |
| Print Name of Claimant | Print Name of Joint Claimant, if any |
| Date | Date |

***If Claimant is other than an individual, or is not the person completing this form, the following also must be provided:***

| | |
|---|---|
| Signature of Person Completing Form | Date |
| Print Name of Person Completing Form | Capacity of Person(s) Signing, (e.g., Beneficial Purchaser, Executor or Administrator) |

**REMINDER CHECKLIST**

1. Please be sure to sign this Proof of Claim Form.

2. Remember to attach supporting documentation, if available.

3. **DO NOT SEND ORIGINALS OF ANY SUPPORTING DOCUMENTS.**

4. Keep a copy of your Proof of Claim Form for your records.

5. The Claims Administrator will acknowledge the receipt of your Proof of Claim Form by postcard within 60 days of receipt. If you do not receive such acknowledgment within 60 days, please contact the Claims Administrator. **Your claim is not deemed filed unless a postcard is received.**

6. If you move, please send your new address to the Claims Administrator at the address below:

**Harborview MBS Claims Administrator**
P.O. Box 43253
Providence, RI  02940-3253

7. **Do not use highlighter on the Proof of Claim Form or supporting documentation.**

# Exhibit  B

**Carla Peak**

---

| | |
|---|---|
| **From:** | sfhubs@prnewswire.com |
| **Sent:** | Wednesday, July 30, 2014 9:01 AM |
| **To:** | Carla Peak |
| **Subject:** | PR Newswire: Press Release Clear Time Confirmation for Cohen Milstein Sellers & Toll PLLC. ID#1117510-1-1 |

# PR NEWSWIRE EDITORIAL

Hello

Here's the clear time* confirmation for your news release:

Release headline: Notice Of Pendency Of Class Action And Proposed Settlement, Settlement Fairness Hearing And Motion For Reimbursement Of Litigation Expenses Announced By Cohen Milstein Sellers & Toll PLLC By Order Of The United States District Court For The Southern District Of New York
Word Count: 1059
Product Summary:
US1
ReleaseWatch
Complimentary Press Release Optimization
PR Newswire's Editorial Order Number: 1117510-1-1

Release clear time: 30-Jul-2014 09:00:00 AM ET

* Clear time represents the time your news release was distributed to the newswire distribution you selected.

Thank you for choosing PR Newswire!
*********************************************************************
COMPLIMENTARY SERVICES FOR MEMBERS


Get the most out of your PR Newswire membership! In addition to distributing your news through the industry's largest network, as a PR Newswire member you get Visibility Reports detailing release performance, and complimentary educational and training resources. Visit the Online Member Center to learn more.


For more information, please contact our Information Desk at 888-776-0942, or email PRNCS@prnewswire.com

For a list of worldwide offices, please visit http://prnewswire.mediaroom.com/index.php?s=29545

THE WALL STREET JOURNAL.                                    Wednesday, July 30, 2014

# COMMODITIES & CREDIT MARKETS
WSJMarkets.com



ADVERTISEMENT

## Legal Notices
To advertise: 800-366-3975 or WSJ.com/classifieds

THE WALL STREET JOURNAL.

## LEGAL NOTICES
ADVERTISE TODAY
(800) 366-3975
sales.legalnotices@wsj.com
Place an ad at
wsj.com/classifieds

DOW JONES

# Exhibit  C

**Harborview MBS Settlement**
**Exhibit C**
**List of Exclusion Requests Received through September 29, 2014**

**Texas County and District Retirement System**
**FDIC as Receiver for United Western Bank**
**Federal Home Loan Bank of San Francisco**
**AIG Asset Management**
      American General Life Insurance Company
      American Home Assurance Company
      National Union Fire Insurance Co. of Pittsburgh, Pa.
      The Variable Annuity Life Insurance Company"
**Federal Home Loan Bank of Boston**
**NCUA (as Liquidating Agent)**
      U.S. Central Federal Credit Union
      Members United Corporate Federal Credit Union
      Western Corporate Federal Credit Union
**Federal Home Loan Bank of Seattle**
**Dexia Credit**
      Dexia SA/NV
      Dexia Holdings, Inc.
      Dexia Credit Local, SA
      Dexia Credit Local, New York Branch
      FSA Asset Management
**Deutsche Zentral-Genossenschaftsbank AG (DZ Bank AG)**
**Massachusetts Mutual Life Insurance Company**
**PIMCO**
      Equity Trustees Limited as responsible entity for PIMCO Global Bond Fund
      PIMCO Cayman Trust: PIMCO Cayman Global Bond (NZD-Hedged) Fund
      PIMCO Funds: Global Investors Series plc, Low Average Duration Fund
      PIMCO Funds: Global Investors Series plc, Total Return Bond Fund
      PIMCO Funds: PIMCO Total Return Fund
      PIMCO Global Credit Opportunity Master Fund LDC
      Equity Trustees Limited as responsible entity for PIMCO Australian Bond Fund
      Equity Trustees Limited as responsible entity for PIMCO Global Credit Fund
      PCM Fund, Inc.
      PIMCO Absolute Return Strategy 3D Offshore Fund Ltd.
      PIMCO Absolute Return Strategy IV Master Fund LDC
      PIMCO Absolute Return Strategy V Master Fund LDC
      PIMCO Bermuda Trust II:  PIMCO Bermuda Emerging Markets Bond Fund (M)
      PIMCO Bermuda Trust II:  PIMCO Emerging Bond Income Fund (M)
      PIMCO Bermuda Trust II: PIMCO Bermuda Emerging Markets Bond Fund II
      PIMCO Bermuda Trust II: PIMCO Bermuda Income Fund (M)
      PIMCO Bermuda Trust II: PIMCO Bermuda U.S. High Yield Fund (M)
      PIMCO Bermuda Trust II: PIMCO Bermuda U.S. High Yield Fund II (M)

PIMCO Bermuda Trust IV: PIMCO Bermuda Developing Local Markets Fund
PIMCO Bermuda Trust IV: PIMCO Bermuda Global Bond Ex-Japan Fund
PIMCO Bermuda Trust IV: PIMCO Emerging Bond Strategy Fund
PIMCO Bermuda Trust IV: PIMCO Global High Yield Strategy Fund
PIMCO Bermuda Trust:  PIMCO Emerging Markets Bond Fund (M)
PIMCO Cayman Trust - PIMCO Cayman Global High Income Fund
PIMCO Cayman Trust : PIMCO Cayman Global Ex-Japan Bond Fund
PIMCO Cayman Trust: PIMCO Cayman Australian Multi-Sector Fund
PIMCO Cayman Trust: PIMCO Cayman Global Aggregate Bond Fund
PIMCO Cayman Trust: PIMCO Cayman Global Aggregate Ex-Japan (Yen-Hedged)
        Income Fund
PIMCO Cayman Trust: PIMCO Cayman Global Aggregate Ex-Japan Income Fund
PIMCO Cayman Trust: PIMCO Cayman Global Ex-Japan (Yen-Hedged) Bond Fund
PIMCO Cayman Trust: PIMCO Cayman U.S. Total Return Fund
PIMCO Combined Alpha Strategies Master Fund LDC
PIMCO Distressed Mortgage Fund II, L.P.
PIMCO Distressed Senior Credit Opportunities Fund II, L.P.
PIMCO Dynamic Income Fund
PIMCO Equity Series: PIMCO Balanced Income Fund
PIMCO Funds: Global Investors Series plc, Diversified Income Fund
PIMCO Funds: Global Investors Series plc, Euro Bond Fund
PIMCO Funds: Global Investors Series plc, Global Bond Ex-US Fund
PIMCO Funds: Global Investors Series plc, Global Bond Fund
PIMCO Funds: Global Investors Series plc, Global High Yield Bond Fund
PIMCO Funds: Global Investors Series plc, High Yield Bond Fund
PIMCO Funds: Global Investors Series plc, Income Fund
PIMCO Funds: Global Investors Series plc, Strategic Income Fund
PIMCO Funds: PIMCO CommodityRealReturn Strategy Fund®
PIMCO Funds: PIMCO Diversified Income Fund
PIMCO Funds: PIMCO Emerging Local Bond Fund
PIMCO Funds: PIMCO Emerging Markets Bond Fund
PIMCO Funds: PIMCO Extended Duration Fund
PIMCO Funds: PIMCO Floating Income Fund
PIMCO Funds: PIMCO Foreign Bond Fund (U.S. Dollar-Hedged)
PIMCO Funds: PIMCO Foreign Bond Fund (Unhedged)
PIMCO Funds: PIMCO Global Bond Fund (U.S. Dollar-Hedged)
PIMCO Funds: PIMCO Global Bond Fund (Unhedged)
PIMCO Funds: PIMCO High Yield Fund
PIMCO Funds: PIMCO Income Fund
PIMCO Funds: PIMCO Inflation Response Multi-Asset Fund
PIMCO Funds: PIMCO Investment Grade Corporate Bond Fund
PIMCO Funds: PIMCO Long Duration Total Return Fund
PIMCO Funds: PIMCO Moderate Duration Fund
PIMCO Funds: PIMCO Real Return Asset Fund
PIMCO Funds: PIMCO Short-Term Fund
PIMCO Funds: PIMCO Unconstrained Bond Fund

PIMCO Funds: Private Account Portfolio Series Asset-Backed Securities Portfolio
PIMCO Funds: Private Account Portfolio Series Developing Local Markets Portfolio
PIMCO Funds: Private Account Portfolio Series Emerging Markets Portfolio
PIMCO Funds: Private Account Portfolio Series High Yield Portfolio
PIMCO Funds: Private Account Portfolio Series Mortgage Portfolio
PIMCO Funds: Private Account Portfolio Series Short-Term Portfolio
PIMCO Global StocksPLUS & Income Fund
PIMCO High Income Fund
PIMCO Income Opportunity Fund
PIMCO Monthly Income Fund (Canada)
PIMCO Variable Insurance Trust:  PIMCO Global Bond Portfolio (Unhedged)
PIMCO Variable Insurance Trust:  PIMCO High Yield Portfolio
PIMCO Variable Insurance Trust: PIMCO Short-Term Portfolio
StocksPLUS, L.P. Fund B